UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMARA EMUWA, ET AL, )<br><br>            Plaintiffs,   )<br><br>        v.             )<br><br>UNITED STATES DEPARTMENT OF )<br>HOMELAND SECURITY,   )<br><br>            Defendant.   ) | Civil Action No. 20-1756 (TNM) |

## **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs, Amara Emuwa, at al, pursuant to Fed. R. Civ. P. 23, hereby move this Court to certify this case as a class action. As shown in the attached memorandum, plaintiffs have satisfied all of the requirements of Civil Rule 23.

Defendant DHS has treated a large number of FOIA requesters in exactly the same way: DHS has wrongfully withheld the entire asylum office assessment from all requesters, from June 30, 2016 to the present.

Dated: September 28, 2020

Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiffs
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684  <1949.david@gmail.com>

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| AMARA EMUWA, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1756 (TNM) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

TABLE OF CONTENTS                              Page

Table of Cases and Other Authorities…………………………3

The Prerequisites of Rule 23(a) are satisfied…………….…7

Certification is Appropriate under Rule 23(b)(2)……………11

Certification is Appropriate under Rule 23(b)(3)……………11

Plaintiffs' Proposals Concerning Notice to the Class………...12

Conclusion…………………………………………………13

TABLE OF CASES AND OTHER AUTHORITIES          Page

*Amchem Prods. v. Windsor,* 521 U.S. 591, 625-26 (1997)…………………………..10

*Burton v. District of Columbia,* 277 F.R.D. 224, 230 (D.D.C. 2011)……………..9

*Bynum v. District of Columbia,* 214 F.R.D. 27, 33 (D.D.C. 2003)……………… 7 ,9

*In re DC Water & Sewer Authority,* 561 F.3d 494, 495, n. 1 (D.C. Cir. 2009)……..11

*DL v. District of Columbia,* 302 F.R.D. 1 (D.D.C. November 8, 2013)……………..6

*DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013)……………...…..9

*Ido v. Att'y Gen.,* 480 Fed Appx. 972 (11th Cir. 2012)……………………………5

*\*J.D. v. Azar,* 925 F.3d 1291, 1323 (D.C. Cir. 2019)………………………………...7

*Judicial Watch v. U.S. Dep't of Commerce,* 375 F. Supp. 3d 93, 100 (D.D.C. 2019).. 4

*Love v. Johanns,* 439 F.3d 723, 727 (D.C. Cir. 2006)……………………….…..7

*National Ass'n for Mental Health v. Califano,*
 717 F.2d 1451, 1458 (D.C. Cir. 1983)…………………………………………….10

*Olson v. Brown,* 284 F.R.D. 398, 408 (N.D. Ind. 2012)………………………………..8

*Padilla v. Kentucky,* 559 U.S. 356, 371, n. 11 (2010)…………………………………..4

*Rannis v. Recchia,*  380 Fed App'x 646, 651 (9th Cir. 2010)…………….…………..7

*Ren v. Holder,* 648 F.3d 1079, 1086 (9th Cir. 2011). …………………………………..4

*Richards v. Delta Airlines,* 453 F.3d 525, 530 (D.C. Cir. 2006)……………………….11

*Taylor v. D.C. Water & Sewer Auth,,* 241 F.R.D. 33, 37 (D.D.C. 2007). ………………9

*Thorpe v. District of Columbia,* 303 F.R.D. 120, 143 (D.D.C. 2014),………………..…6

*Wagner v. Taylor,* 836 F.2 57, 591 (D.C. Cir. 1987)…………………………………….10

INTRODUCTION

The DHS has a policy and practice of never providing the entire asylum office assessment, in response to FOIA requests by asylum applicants. The DHS answers requests for Assessments with boilerplate: each letter is almost identical.  Each letter is signed by the same person: Jill A. Eggleston.

The persistent use of computerized boilerplate indicates the agency is making only a perfunctory attempt at compliance with the law. It indicates the agency does not give individualized attention to requests.

The Freedom of Information Act [FOIA] was enacted over 50 years ago. It was amended, effective June 30, 2016, to add a new sub-section: 552(a)(8)(A). This amendment allows an agency to withhold a record only if the agency "reasonably foresees harm" upon disclosure. This amendment imposes a "meaningful and independent burden" on agencies. *Judicial Watch v. U.S. Dep't of Commerce,* 375 F. Supp. 3d 93, 100 (D.D.C. 2019).  This new sub-section changes the law: even if a record is otherwise exempt, it still must be disclosed, unless the agency can show it will suffer "harm" upon release.

BACKGROUND: ASYLUM PROCEEDINGS AND ASSESSMENTS

A person from a foreign country who arrives in the United States may be granted asylum if he can show he has suffered harm on account of a protected ground, such as expressing his political opinion about a dictator.  The "stakes in asylum proceedings are high." *Ren v. Holder,* 648 F.3d 1079, 1086 (9th Cir. 2011). Upon deportation, "the client and his family might well be killed due to circumstances in the client's home country…." *Padilla v. Kentucky,* 559 U.S. 356, 371, n. 11 (2010).

An asylum applicant is interviewed by an asylum officer; that officer writes a preliminary Assessment; the officer submits it to a Supervisory Asylum Officer, [SAO], who makes the officer re-write it until it satisfies the SAO. At that time, the SAO initials the Assessment. That Assessment is the final Assessment and the final decision of the office. When the applicant has a hearing in immigration court, the DHS at times will use the entire assessment as evidence against the applicant. *Ido v. U.S. Att'y Gen.,* 480 Fed. Appx. 972 (11th Cir. 2012).  Assessments may contain mistakes or citation to unreliable sources; therefore, the applicant needs to read it before his immigration court hearing, so that he may gather evidence to rebut it. The applicant would like to avoid surprise and ambush in the Immigration Court.

There is no discovery in Immigration Court.  Therefore, it is easy for DHS to ambush the asylum applicant, by showing him, and the Immigration Judge, the assessment, for the first time, in the middle of the court proceedings. The DHS does not claim it suffers harm when assessments are used in immigration court against applicants. But, the DHS will soon tell this Court that it will suffer great harm if the Assessment is disclosed to plaintiff and her class members, now, during FOIA proceedings.

It is unfair for DHS to withhold an assessment now, under FOIA, when it later discloses the assessment in Immigration Court. DHS's acts show it suffers no harm upon release.

THE REMEDIAL PURPOSES OF CLASS ACTIONS

Civil Rule 23 helps individuals who are ignorant or are too poor to file individual suits. Without class actions, many claims would go unaddressed. The class members in this case are asylum applicants: they are recently-arrived immigrants who suffered in their home countries. The Court can take judicial notice that such persons are not wealthy, are not knowledgeable about their rights, and will often be reluctant to sue a government that they hope will give them

asylum. They are not seeking money damages; most of them do not have English as a native language; most fear all governments. Very few lawyers have experience in asylum and also in FOIA. Without a class action, most of these asylum applicants will not see justice.

This class action is simple: asylum applicants were wrongly denied their Assessments. Courts have certified far more complex class actions:

In *Thorpe v. District of Columbia,* 303 F.R.D. 120, 143 (D.D.C. 2014), a class was certified of disabled persons in nursing homes who claimed they were unnecessarily segregated and isolated from their communities by being confined to nursing facilities. The Court stated that a "principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner." There are many different kinds of disabilities; there are many kinds of nursing homes; there are many different ways to segregate and isolate people. Yet, the Court found that class certification was proper.

In *DL v. District of Columbia,* 302 F.R.D. 1 (D.D.C. November 8, 2013), a class was certified of children with various disabilities, who were not provided with "free appropriate public education." Four sub-classes were certified: 1] children who were not "identified" as needing special education; 2] children who did not receive a timely "initial evaluation;" 3] children who did not receive a timely "determination of eligibility;" and 4] children in "early intervention programs" who did not have a "smooth and effective" transition to a preschool program. Each of the above phrases in quotation marks had a special meaning. The *DL* court recognized that where many class members were indigent and unable to obtain legal services, there is "the economic reality that petitioner's suit must proceed as a class action or not at all." *Id.* at 11 (punctuation, alterations, citations omitted).

Disabled children, in different programs, will of course be different from one another. If such a group can be certified under Rule 23, then all the more should asylum applicants, who made the same request to the same person [Jill Eggleston], be certified under Rule 23.

**THE PREREQUISITES OF RULE 23(a) ARE SATISFIED**

To justify class certification, the plaintiffs must satisfy the four requirements in FRCP 23(a): 1) the class is so numerous that joinder of all members is impracticable 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. *See Love v. Johanns,* 439 F.3d 723, 727 (D.C. Cir. 2006)

**A. Numerosity : Rule 23(a)(1)**

If the class is so large that joinder of all parties is impracticable, the prerequisite of numerosity is satisfied. "This element does not require plaintiffs to prove the exact number of potential class members; rather, they need only provide a reasonable basis for their estimate of the putative class size." *Bynum v. District of Columbia,* 214 F.R.D. 27, 33 (D.D.C. 2003). Factors that might make joinder impracticable, such as "the dispersion of class members across the country, and their limited resources" [should be considered] …Classes have been certified in like circumstances even if they have fewer than 20 members." *J.D. v. Azar,* 925 F.3d 1291, 1323 (D.C. Cir. 2019). *Accord*: class of 20 is sufficient: *Rannis v. Recchia,* 380 Fed App'x. 646, 651 (9th Cir. 2010).

There are four plaintiffs individually named in the complaint. Hundreds of asylum applicants have made, and will make, FOIA requests for their assessments; the Court can reasonably conclude that they are sufficiently "numerous."

Plaintiffs request the opportunity to take discovery of DHS to obtain further information.

The Court can take judicial notice that the DHS received over 100,000 FOIA requests each year, from 2016 to the present. During the five years of 2016-2020, the DHS received over 500,000 FOIA requests.  Not all of them were requests from asylum applicants, admittedly. But certainly thousands, or hundreds, or dozens, of them were.

*It is impracticable to join all the members of this class*

"Several of the relevant factors to impracticability—'financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members,'…—are present here." *DL v. District of Columbia,* 302 F.R.D. 1, 11 (D.D.C. November 8, 2013)

Moreover, the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join. *See, e.g., Olson v. Brown,* 284 F.R.D. 398, 408 (N.D.Ind.2012) ("[F]uture members make joinder inherently impracticable because there is no way to know who they will be").

The websites of DHS and its components reveal this information, as stated in the Complaint:

¶ 272: during Fiscal Year 2016, US-CIS received over 100,000 asylum cases, and adjudicated over 26, 000 of them. For each case adjudicated, an assessment is written.

¶ 273: FY 2017:  US-CIS received over 142,000 asylum cases; and adjudicated over 34,000.

¶ 280: FY 2018: US-CIS received over 108,000 asylum cases; and adjudicated over 72,000.

¶ 286: FY 2019: US-CIS received over 82,000 asylum cases; and adjudicated over 72,000.

¶ 295: FY 2020, first two quarters: US-CIS referred over 25,000 asylum cases to Immigration Court.

If you add up the number of adjudicated asylum cases in the above paragraphs, you get 229,000. This means there are 229,000 assessments. If one percent of those asylum applicants filed a FOIA request, then 2,229 requests were made. If one tenth of the one percent made a FOIA request, then 222 requests were made. This easily satisfies the numerosity requirement of Rule 23.

The records of DHS will reveal any more information that is needed.

*Alternatively, the plaintiffs are entitled to pre-certification discovery*

In the event that this Court determines that plaintiffs' current estimate lacks a sufficiently reasonable basis, the Court should allow limited discovery on this issue. Other courts have allowed limited pre-certification discovery: *Burton v. District of Columbia,* 277 F.R.D. 224, 230 (D.D.C. 2011)

**B. Commonality: Rule 23(a)(2)**

Commonality requires that a plaintiff raise claims which rest on questions of law or fact common to the class. *Taylor v. D.C. Water & Sewer Auth,,* 241 F.R.D. 33, 37 (D.D.C. 2007). As stated in ¶ 311 of the complaint, the DHS "has a policy and practice of not providing" entire asylum office Assessments. Each applicant who makes a FOIA request gets a standardized letter written by the same DHS employee: Jill A. Eggleston. There is great commonality for this class. As the D.C. Circuit recently explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members." *DL v. District of Columbia,* 713 F.3d 120, 128 (D.C. Cir. 2013)

There are no important factual variations of the members of this class. Even if there were, "…[F]actual variations among the class members will not defeat the commonality requirements." *Bynum v. District of Columbia,* 217 F.R.D. 43, 46. (D.D.C. August 11, 2013)(inmates challenged the District's policy of conducting suspicionless strip searches of inmates returning form judicial proceedings.)

### C. Typicality: Rule 23(a)(3)

Typicality requires that a plaintiff must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The named plaintiffs are asylum applicants whose request for their assessments were denied.  Each was injured in the same way. Typicality is easily satisfied.  *Wagner v. Taylor,* 836 F.2d 578, 591 (D.C. Cir. 1987).

### D. Adequacy of Representation: Rule 23(a)(4)

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods. v. Windsor,* 521 U.S. 591, 625-26 (1997). There are no conflicts here.

In determining whether the named plaintiffs will fairly and adequately protect the interests of the class members, the court should consider two requirements: 1) the named representative must not have antagonistic or conflicting interests with unnamed members of the class; and 2) the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel. *National Ass'n for Mental Health v. Califano,* 717 F.2d 1451, 1458 (D.C. Cir. 1983).

In the case at bar, the named representatives do not have an antagonistic or conflicting interests with the class members. Plaintiff Louise Trauma Center LLC is qualified to be a class

representative. Undersigned counsel is vigorously prosecuting this case. Plaintiffs have satisfied all the requirements of Rule 23(a)(4).

**CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(2)**

Rule 23(b)(2) authorizes class certification where the party opposing the class has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *In re DC Water & Sewer Authority,* 561 F.3d 494, 495, n. 1 (D.C. Cir. 2009). The plaintiff need not establish that a class action would be superior to individual actions or that common legal and factual questions predominate. *Richards v. Delta Airlines,* 453 F.3d 525, 530 (D.C. Cir. 2006)

As stated in ¶ 311 of the complaint, the DHS "has a policy and practice of not providing entire assessments to FOIA requesters." The Court should declare this policy to be unlawful.

**CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3)**

Rule 23(b)(3) requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Hundreds of asylum applicants have made FOIA requests for their entire assessments. Each one has been rebuffed. Therefore, the questions of law and also fact are "common" to the class members. A class action is superior to other methods, because it avoids numerous mini-trials for each applicant. A class action will save time and money.

The Court should also consider the four factors listed in Rule 23(b)(3)(A)-(D):

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

Here, there is no evidence that any class member is desirous of individually controlling the case.

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

There is no litigation already begun.

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

This district court is an excellent forum.

(D)     the likely difficulties in managing a class action.

This is a simple class action. There will be no difficulties.

**PLAINTIFFS' PROPOSALS CONCERNING NOTICE TO THE CLASS**

Rule 23(c) (2)(B) provides that for any class certified under rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort." Plaintiffs propose that:

-1] after the class is certified, DHS notify the class members via a notice posted on its website. Also, plaintiffs will send emails to each class member who has an email address. *See* Local Civil Rule 23.1 (c) "Provisions as to Notice"

-2] DHS pays for posting a notice on its website;

-3] plaintiffs pay for sending email notice;

-4] each response to the notice shall be sent to counsel for plaintiffs.

Because no discovery has been done, it is difficult to make a determination of these matters. Plaintiffs propose that after discovery, plaintiffs will make new proposals for notice.

**. THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

Rule 23(g)(1) requires a court that certifies a class to appoint class counsel. The Court should consider "(i) the work counsel has done in identifying or investigating potential claims in th[is] action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Plaintiffs' counsel has knowledge, experience, and resources. He should be appointed as class counsel.

CONCLUSION

Certification of the proposed class will advance the broad remedial purposes of FOIA. Asylum applicants who go to Immigration Court will be treated more fairly.

The Court should certify the following class: all persons who, since June 30, 2016, have made, or will make during the pendency of this lawsuit, a FOIA request for the entire Assessment of their asylum office, but were rebuffed.

September 28, 2020                    Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiffs
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   1949.david@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, ET AL,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| v.  ) | Civil Action No. 20-1756 (TNM) |
| ) | |
| UNITED STATES DEPARTMENT OF  ) | |
| HOMELAND SECURITY,  ) | |
| ) | |
| Defendant.  ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for Class Certification, and for good cause shown, it is hereby:

ORDERED: Plaintiffs' motion is GRANTED.

Dated:_____

_____
United States District Court Judge