## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
**AMARA EMUWA,** *et. al*,                          )
                                                    )
        Plaintiffs,                           )
                                                    )
        v.                                    )          Civil Action No. 20-1756 (TNM)
                                                    )
**U.S. DEPARTMENT OF HOMELAND**                     )
**SECURITY,**                                       )
                                                    )
        Defendant.                            )
_____ )

### DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

       Defendant the United States Department of Homeland Security respectfully moves for summary judgment on the Freedom of Information Act ("FOIA") claims brought by Plaintiffs Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, FNU Alatanhua, and Louise Trauma Center LLC.  Plaintiffs Emuwa, Lukusa, AlQaraghuli, and Alatanhua challenge a decision by U.S. Citizenship and Immigration Services ("USCIS") to withhold certain deliberative information from asylum records, called assessments to refer, in response to FOIA requests filed with USCIS.  Because it is well established by the courts that the withholdings placed on these assessments are entirely justified under the FOIA, the Court should grant Defendant's motion for summary judgement.

       Similarly, Plaintiff Louise Trauma Center LLC's allegation of a purported unlawful policy-or-practice by USCIS of not releasing assessments to refer in full to FOIA requesters should be dismissed.  The Courts have found time and time again that USCIS's withholdings applied to the analysis sections of assessment to refer are justified under the FOIA and fulfill

the foreseeable harm requirement of the FOIA.  Plaintiff Louise Trauma Center's claim should therefore be dismissed.

For these reasons and the other reasons set forth in detail in the accompanying memorandum of points and authorities, Defendant is entitled to summary judgment on all Plaintiffs' claims.

Date: September 30, 2020                    Respectfully submitted,

                                            MICHAEL R. SHERWIN
                                            Acting United States Attorney
                                            District of Columbia

                                            DANIEL F. VAN HORN,
                                            D.C. BAR # 924092
                                            Chief, Civil Division

                            By:     /s/ *Kristin D. Brudy-Everett*
                                            KRISTIN D. BRUDY-EVERETT
                                            Assistant United States Attorney
                                            Judiciary Center Building
                                            555 4th St., N.W.
                                            Washington, D.C.  20530
                                            (202) 252-2536
                                            Kristin.Brudy-Everett@usdoj.gov

                                            *Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____  )
                                         )
**AMARA EMUWA,** *et. al*,                )
                                         )
            Plaintiffs,                   )
                                         )
            v.                            )        Civil Action No. 20-1756 (TNM)
                                         )
**U.S. DEPARTMENT OF HOMELAND**           )
**SECURITY,**                             )
                                         )
            Defendant.                    )
_____  )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), Defendant, the U.S. Department of Homeland Security ("Defendant DHS"), submits this statement of material facts as to which there is no genuine issue.

## PROCEDURAL HISTORY

1.      On or about March 18, 2020, the U.S. Citizenship and Immigration Services ("USCIS") FOIA Office received a FOIA request from Plaintiff Louise Trauma on behalf of Amara Emuwa, seeking a copy of certain immigration records pertaining to Plaintiff Emuwa's asylum application, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the "country conditions" evidence mentioned in the Referral Notice. *See* ECF No. 1; Declaration of Jill Eggleston ("Eggleston Decl."), Ex. 1 ¶ 12.

2.      On March 23, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020054812. Eggleston Decl. ¶ 12.

3.      On June 1, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 363 pages that were responsive to the request; 250 pages were released in full, 63 pages were released in part, and 37 pages were withheld in full. *Id.*

4.      On June 11, 2020, USCIS received Plaintiff Emuwa's appeal of this determination and assigned it control number APP2020000959. *Id.*

5.      On June 15, 2020, USCIS notified plaintiff that it was releasing an additional 28 pages but otherwise the agency's initial determination was upheld. *Id.*

6.      On or about April 23, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma on behalf of Michaux Lukusa, seeking a copy of certain immigration records pertaining Plaintiff Lukusa, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the materials the asylum officer consulted, that were not provided by this individual." *See* ECF No. 1; Eggleston Decl. ¶ 13.

7.      On April 28, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020068744.  Eggleston Decl. ¶ 13.

8.      On June 2, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 371 pages that were responsive to the request; 338 pages were released in full, 28 pages were released in part, and 3 pages were withheld in full.  *Id.*

9.      Additionally, USCIS located 2 pages of potentially responsive documents that may have originated from US Immigration and Customs Enforcement ("ICE") and provided Plaintiff with contact information for the ICE FOIA Office.  *Id.*

10.      On June 11, 2020, USCIS received Plaintiff's appeal of this determination and assigned it control number APP2020000960.  *Id.*

11.    On June 15, 2020, USCIS notified Plaintiff that it was releasing an additional 11 pages but otherwise the agency's initial determination was upheld.  *Id.*

12.    On or about March 26, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma on behalf of Mohammed AlQaraghuli, seeking a copy of certain immigration records pertaining to Plaintiff AlQaraghuli, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the documents referenced by or consulted by the asylum officer, which were not given to the officer by the applicant." *See* ECF No. 1; Eggleston Decl. ¶ 14.

13.     On March 27, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020058314. *Id.*

14.    On July 16, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 505 pages that were responsive to the request; 334 pages were released in full, 140 pages were released in part, and 31 pages were withheld in full. Eggleston Decl. ¶ 14.

15.    There is no record of an administrative appeal for this request. *Id.*

16.    On or about March 18, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma on behalf of FNU Alatanhua, seeking a copy of certain immigration records pertaining to Plaintiff Alatanhua, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the "country conditions" evidence mentioned in the Referral Notice." *See* ECF No. 1; Eggleston Decl. ¶ 15.

17.     On March 23, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020054800.  Eggleston Decl. ¶ 15.

18.    On June 18, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 290 pages that were responsive to the request; 226 pages were released in full, 43 pages were released in part, and 21 pages were withheld in full.  *Id.*

19.     USCIS received Plaintiff's appeal of this determination on July 22, 2020 and assigned it control number APP2020001219. *Id.*

20.     On July 31, 2020, USCIS notified Plaintiff that it was releasing an additional 34 pages but otherwise the agency's initial determination was upheld. *Id.*

21.     On all Plaintiffs' FOIA requests, USCIS applied full and/or partial redactions to the records pursuant to 5 U.S.C. § 552(b)(3) ("Exemption 3"), 5 U.S.C. § 552(b)(5) ("Exemption 5"), 5 U.S.C. § 552(b)(6) ("Exemption 6"), 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), and 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"). *Id.* ¶ 17.

22.     On June 29, 2020, Plaintiffs filed this action.  Compl., ECF No. 1.

### USCIS RECORDS – A-FILES AND ASSESSMENTS TO REFER

23.     The majority of the FOIA/PA requests that USCIS receives seek immigration records located in an individual's Alien File (A-file).   Eggleston Decl. ¶ 8.

24.     The A-file is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process. *Id.* ¶ 10.

25.     The National File Tracking System ("NFTS"), a federal government computer database, tracks the location of A-files. *Id.* ¶ 10.

26.     NRC staff uses identifying information supplied by the Plaintiffs with their FOIA request (such as the subject's name or Alien number) to locate the A-file. *Id.* ¶ 11.

27.     The assessments referenced in these FOIA requests concern documents prepared by USCIS asylum officers, entitled "Assessments to Refer," which are located in the A-file. *Id.* ¶ 16.

28.     These assessments reflect the asylum officer's analysis and assessment of the applicant's eligibility for asylum, and are prepared for and provided to the asylum officer's supervisor for review and approval. *Id.*

29.     In those cases in which the asylum officer recommends referral and the supervisory asylum officer agrees, USCIS then prepares a document entitled "Referral Notice," which is sent to the applicant and advises that the Agency has rendered a final decision to refer the applicant to an immigration judge for removal proceedings before the U.S. Department of Justice, Executive Office for Immigration Review. *Id.*

30.     The analysis portion of the assessments reflect the asylum officer's analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum. *Id.* ¶ 23.

31.     For example, these paragraphs can reflect an analysis by the asylum officer of certain testimonial and documentary evidence presented by the applicant and whether such evidence satisfies certain eligibility criteria, as well as analysis of other factors pertinent to the applicant's eligibility.  *Id.*

**DEFENDANT USCIS'S SEARCH FOR RESPONSIVE RECORDS**

32.     USCIS FOIA requests are processed by USCIS's Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center ("NRC").  *Id.* ¶¶ 1, 10-11.

33.     USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive No. 0460.1. *Id.* ¶ 5.

34.     USCIS has a standard procedure that the agency follows upon receipt of a FOIA request that includes searching, logging the request into a tracking system, corresponding with

requesters, tasking searches to relevant USCIS offices, collecting and processing potentially responsive records, issuing a final determination to requesters, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.. *Id.*

35.    USCIS NRC processes FOIA requests on a first-in/first-out basis, with systems in place to expedite processing on certain requests and to place requests on simple or complex tracks to maximize efficiency. *Id.* ¶ 7.

36.    While it is only one of 99 federal agencies subject to the FOIA, USCIS receives about one-fifth of the total requests received by the government.  *Id.* ¶ 6.

37.    For example, in Fiscal Year 2018, USCIS received 200,174 total requests, which is approximately 23 percent of the total FOIA requests that were received government wide that year. *Id.*

38.    The majority of FOIA requests received by USCIS seek immigration records, which are located in an individual's Alien File (A-file), the repository for all immigration documents about an alien.  *Id.* ¶ 8.

39.    Upon receipt of Plaintiffs' requests, personnel at USCIS/NRC determined that based on the information requested, any records in USCIS's control that were responsive to the request and subject to the FOIA would be located in the A-Files of the individual who was the subject of the FOIA request.  *Id.* ¶ 10.

40.    This determination was based on the fact that the A-file is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process. No other record system was likely to produce responsive documents. *Id.*

41.    NRC staff searched NFTS to locate Plaintiffs' A-files. *Id.*

42.    Once NRC staff obtained the A-File, it was scanned into the NRC's FOIA Immigration Records System ("FIRST"), which is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically.  *Id.*

## PLAINTIFFS' CHALLENGES TO DHS'S WITHHOLDINGS

43.    In responding to the FOIA requests, USCIS FOIA withheld certain information pursuant to 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(c) and (b)(7)(e).  *Id. ¶ 17.*

44.    USCIS FOIA withheld information under Exemption 3 that concerns the issuance or refusal of a permit to enter the United States by the U.S. Department of State, the disclosure of which is barred pursuant to Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f).  *Id.* ¶ 18-20.

45.    USCIS FOIA withheld information, specifically the analysis sections of assessments to refer, under the Exemption 5 deliberative process privilege.  *Id.* ¶¶ 21-24.

46.    USCIS FOIA withheld legal work product in one document under Exemption 5, specifically the attorney work-product privilege, specifically assessments to refer.  *Id.* ¶¶ 25-27.

47.    USCIS FOIA withheld personally identifiable information ("PII") under FOIA Exemption 6, including names, initials, contact information, and copies of passports and driver's licenses of third parties, interpreters, USCIS employees, and State employees.  *Id.* ¶ 29.

48.    USCIS FOIA withheld names, initials, and contact information of immigration officers or other DHS law enforcement personnel under FOIA Exemption 7(C).  *Id.* ¶¶ 33-34.

49.    USCIS FOIA withheld he names of systems used by law enforcement and law enforcement database codes under FOIA Exemption 7(e).  *Id.* ¶ 36.

**SEGREGATION OF NONEXEMPT INFORMATION**

50.    While applying withholdings to the records, USCIS evaluated all withheld documents and segregated non-exempt information from exempt information.  *Id.* ¶¶38, 40.

**FORESEEABLE HARM ANALYSIS**

51.    The USCIS FOIA office conducted a foreseeable harm analysis on the withheld information while reviewing redactions. *Id.* ¶38.

52.    The FOIA Office considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations, and determined that no further segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law. *Id.*

53.    Given that the information sought in Plaintiffs' FOIA requests, especially as they relate to the assessments did not represent the Agency's final decisions and that they reflect the analysis, opinions, deliberations and recommendations of the asylum officer, as discussed above, USCIS determined that releasing the information that was redacted would chill or deter USCIS employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits. *Id.* ¶ 39.

Date: September 30, 2020                Respectfully submitted,

                                        MICHAEL R. SHERWIN
                                        Acting United States Attorney
                                        District of Columbia

                                        DANIEL F. VAN HORN,
                                        D.C. BAR # 924092
                                        Chief, Civil Division

                        By:    */s/Kristin D. Brudy-Everett*
                                KRISTIN D. BRUDY-EVERETT

Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 252-2536
Kristin.Brudy-Everett@usdoj.gov

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **AMARA EMUWA,** *et. al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1756 (TNM) |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Date: September 30, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

DANIEL F. VAN HORN,
D.C. BAR # 924092
Chief, Civil Division

By:   /s/ *Kristin D. Brudy-Everett*
KRISTIN D. BRUDY-EVERETT
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 252-2536
Kristin.Brudy-Everett@usdoj.gov

*Counsel for Defendant*

## Table of Contents

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................1

STANDARD.........................................................................................................................1

ARGUMENT .......................................................................................................................3

I.     Defendant Performed a Reasonable Search ..............................................................3

    A.     Applicable Standards ........................................................................................3

    B.     The Searches in This Case Were Legally Sufficient ........................................5

II.    DHS Properly Applied FOIA Exemptions to Records ............................................7

    A.     DHS's Exemption 3 Withholdings...................................................................9

    B.     DHS's Exemption 5 Withholdings.................................................................11

       i.     Attorney-Work Product Privilege.......................................................11

       ii.    Deliberative Process Privilege ...........................................................12

    C.     DHS's Exemption 6 Withholdings.................................................................16

    D.     Exemption 7 Threshold ...................................................................................18

    E.     DHS's Exemption 7(C) Withholdings............................................................19

    F.     DHS's Exemption 7(E) Withholdings............................................................19

III.   DHS Released Reasonably Segregable Information ...............................................21

IV.    Louise Trauma Center's Policy-or-Practice Claims are Unfounded......................22

CONCLUSION...................................................................................................................23

## Table of Authorities

**Cases**

*Abrayam v. DHS*,
    6 F.Supp.3d 165, 173 (D.D.C. 2013) ...............................................................15

*(Abtew v. U.S. Dep't of Homeland Sec.*,
    808 F.3d 895, 899 (D.C. Cir. 2015) ..................................................................14

*Adionser v. DOJ*,
    811 F. Supp. 2d 284, 297 (D.D.C. 2011)...........................................................11

*\*Aguimate v. DHS*,
    918 F.Supp.2d 13 18-19 (D.D.C. 2013) .............................................................14

*Am. Fed'n of Gov't Employees, Local 812 v. Broadcasting Bd. of Governors*, 711 F. Supp. 2d
    139, 156 (D.D.C. 2010).......................................................................................18

*Amadis v. U.S. Dep't of State*,
    No. 19-5088 (D.C. Cir. Aug. 21, 2020)..............................................................15

*Amuso v. DOJ*,

600 F. Supp. 2d 78, 93 (D.D.C. 2009) .................................................................17
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247 (1986) ...........................................................................1, 2
*Appleton v. FDA*,
  451 F. Supp. 2d 129, 145 (D.D.C. 2006)............................................................17
*Armstrong v. Executive Office of the President*,
  97 F.3d 575 (D.C. Cir. 1996)...........................................................................21
*Assadi v. Dep't of State*,
  No. 12-1111, 2014 WL 4704840, at *6 (S.D.N.Y. Sept. 19, 2014)........................10
*Associated Press v. DoD*,
  549 F.3d 62, 66 (2d Cir. 2008)........................................................................18
*Badalamenti v. U.S. Dep't of State*,
  899 F. Supp. 542, 547 (D. Kan. 1995) .............................................................10
*\*Bayala v. Department of Homeland Security*,
  264 F. Supp. 3d 165 (D.D.C. 2017) ............................................................14, 23
*Beck v. DOJ*, 997 F.3d 1489,
  1494 (D.C. Cir. 1993)....................................................................................18
*Beltranena v. U.S. Dep't of State*,
  821 F. Supp. 2d 167, 177 (D.D.C. 2011)..........................................................10
*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011)...........................................................................20
*Brayton v. Office of U.S. Trade Rep.*,
  641 F.3d 521, 527 (D.C. Cir. 2011) ...................................................................2
*Brown v. DOJ*,
  724 F. Supp. 2d 126, 129 (D.D.C. 2010)............................................................4
*Canning v. Dep't of Justice*,
  567 F. Supp. 2d 104 (D.D.C. 2008) .................................................................21
*Carter v. Dep't of Commerce*,
  830 F.2d 388, 391 n.13 (D.C. Cir. 1987)...........................................................18
*Celotex Corp. v. Catrett*,
  477 U.S. 317, 322 (1986) ................................................................................1
*Chang v. Dep't of Navy*,
  314 F. Supp. 2d 35, 43 (D.D.C. 2004). .............................................................16
*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
  600 F. Supp. 114 (D.D.C. 1984) .....................................................................13
*CIA v. Sims*,
  471 U.S. 159 (1985) .......................................................................................9
*Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Labor*,
  478 F. Supp. 2d 77, 80 (D.D.C. 2007) ...............................................................2
*Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland Sec.*,
  648 F. Supp. 2d 152, 156 (D.D.C. 2009)...........................................................13
*Cleveland v. United States*,
  128 F. Supp. 3d 284 (D.D.C. 2015) .................................................................13
*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980)....................................................................12, 13
*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,

554 F.3d 1046, 1050 (D.C. Cir. 2009). ....................................................................17

*Defenders of Wildlife v. U.S. Border Patrol,*
623 F. Supp. 2d 83, 87 (D.D.C. 2009)............................................................2, 3, 4, 7

*DeLaurentiis v. Haig,*
686 F.2d 192, 194 (3d Cir. 1982)..............................................................................10

*Dep't of Def. v. Fed. Labor Relations Auth.,*
510 U.S. 487, 497 (1994) ..........................................................................................16

*Dep't of Def. v. FLRA,*
510 U.S. 487 (1994) ....................................................................................................7

*Dep't of State v. Wash. Post Co.,*
456 U.S. 595, 602 (1982) ..........................................................................................16

*DOJ v. Reporters Comm. for Freedom of the Press,*
489 U.S. 749, 773 (1989) ..........................................................................................16

*Favish,*
541 U.S at 172) .........................................................................................................18

*Fitzgibbon v. CIA,*
911 F.2d 755 (D.C. Cir. 1990) ....................................................................................9

*Founding Church of Scientology v. NSA,*
610 F.2d 824, 836 (D.C. Cir. 1979) ............................................................................4

*FPL Group Inc. v. IRS,*
698 F. Supp. 2d 66, 81 (D.D.C. 2010) ......................................................................13

*Gallant v. NLRB,*
26 F.3d 168 (D.C. Cir. 1994)......................................................................................8

*Gatore v. U.S. Dep't of Homeland Sec.,*
292 F. Supp. 3d 486, 490 (D.D.C. 2018)..................................................................14

*Goland v. CIA,*
607 F.2d 339 (D.C. Cir. 1978)....................................................................................9

*Gosen v. U.S. Citizenship & Immigration Servs.,*
118 F. Supp. 3d 232, 237 (D.D.C. 2015)..................................................................14

*Govt. Accountability Project v. Dep't of State,*
699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) ..............................................................16

*Greenberg v. Department of Treasury,*
10 F. Supp. 2d 3, 13 (D.D.C. 1998) ............................................................................3

*Ground Saucer Watch, Inc. v. CIA,*
692 F.2d 770,   771 (D.C. Cir. 1981) ..........................................................................3

*Hickman v. Taylor,*
329 U.S. 495, 509-10 (1947) .....................................................................................11

*Horowitz v. Peace Corps,*
428 F.3d 271, 279 (D.C. Cir. 2005) ..........................................................................17

*JanXin Zang v. FBI,*
756 F. Supp. 705, 711-12 (W.D.N.Y. 1991) .............................................................10

*Judicial Watch v. Rossotti,*
285 F. Supp. 2d 17, 26 (D.D.C. 2003) ........................................................................3

*Judicial Watch, Inc. v. Dep't of Justice,*
365 F.3d 1108 (D.C. Cir. 2004)................................................................................11

*Kissinger v. Reporters Comm. for Freedom of the Press,*
  445 U.S. 136, 150 (1980) ....................................................................................22

*Kowalczyk v. Department of Justice,*
  73 F.3d 386, 388 (D.C. Cir. 1996) ......................................................................4, 5

*Lepelletier v. FDIC,*
  164 F.3d 37, 47 (D.C. Cir. 1999) ...........................................................................16

*Mapother v. DOJ,*
  3 F.3d 1533 (D.C. Cir. 1993)..................................................................................12

*Marks v. Department of Justice,*
  578 F.2d 261, 263 (9th Cir. 1978)............................................................................4

*Mayer Brown LLP v. IRS,*
  562 F.3d 1190 (D.C. Cir. 2009) ..............................................................................20

*McCutchen v. U.S. Dep't of Health & Human Servs.,*
  30 F.3d 183 (D.C. Cir. 1994) ...................................................................................7

*McErlean v. DOJ,*
  No. 97-7831, 1999 WL 791680, at *7 (S.D.N.Y. Sept. 30, 1999)..........................12

*McGehee v. CIA,*
  697 F.2d 1095, 1102 (D.C. Cir. 1983) ......................................................................2

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977)............................................................................8, 21

*Media Research Ctr. v. U.S. Dep't of Justice,*
  818 F. Supp. 2d 131, 136 (D.D.C. 2011) .................................................................2

*Medina-Hincapie v. Dep't of State,*
  700 F.2d 737, 741-42 (D.C. Cir. 1983) ..................................................................10

*Meeropol v. Meese,*
  790 F.2d 942, 956 (D.C. Cir. 1986) ..........................................................................5

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981)............................................................................2, 8

*Montrose Chem. Corp. of Cal. v. Train,*
  491 F.2d 63 (D.C. Cir. 1974)..................................................................................13

*N.L.R.B. v. Sears, Roebuck & Co.,*
  421 U.S. 132, 151-153 (1975)............................................................................11,13

*NARA v. Favish,*
  541 U.S. 157, 165-70 (2004) ..................................................................................17

*Nat'l Ass'n of Retired Fed. Employees v. Horner,*
  879 F.2d 873, 878 (D.C. Cir. 1989) ...................................................................17,18

*National Treasury Employees Union v. U.S. Customs Service,*
  802 F.2d 525 (D.C. Cir. 1986)..................................................................................8

*Nevada v. DOE,*
  517 F. Supp. 2d 1245, 1260 (D. Nev. 2007)...........................................................12

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57, 68 (D.C. Cir. 1990) .............................................................................4

*People for the Am. Way Found. v. Nat'l Park Serv.,*
  503 F. Supp. 2d 284, 304 (D.D.C. 2007)................................................................17

*Perry v. Block,*
  684 F.2d 121, 125 (D.C. Cir. 1982) ..........................................................................3

*Petroleum Info. Corp. v. Dep't of the Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ..................................................................................13

*Public Citizen Health Research Grp. v. FDA*,
   185 F.3d 898 (D.C. Cir. 1999) ....................................................................................7

*Rockwell Int'l. Corp. v. DOJ*,
   235 F.3d 598 (D.C. Cir. 2001) ..................................................................................11

*SafeCard Servs., Inc. v. S.E.C.*,
   926 F.2d 1197, 1201 (D.C. Cir. 1991) ....................................................... 2, 3, 4, 19

*Salas v. Office of the Inspector Gen.*,
   577 F. Supp. 2d 105, 112 (D.D.C. 2008) .................................................................18

*Schoenman v. FBI*,
   573 F. Supp. 2d 119, 143 (D.D.C. 2008) .................................................................12

*Schrecker v. DOJ*,
   349 F.3d 657, 662 (D.C. Cir. 2003) ...........................................................................4

*Smith v. DOJ*,
   No. 81-CV-813, 1983 U.S. Dist. LEXIS 10878, at *13-14 (N.D.N.Y. Dec. 13, 1983)...........10

*Spirko v. U.S. Postal Service*,
   147 F.3d 992 (D.C. Cir. 1998) ....................................................................................8

*Steinberg v. U.S. DOJ*,
   23 F.3d 548, 552 (D.C. Cir. 1994) ..............................................................................4

*Students Against Genocide v. Dep't of State*,
   257 F.3d 828 (D.C. Cir. 2001) ..................................................................................10

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................................21

*Tax Analysts v. IRS*,
   117 F.3d 607, 610 (D.C. Cir. 1997) ...........................................................................5

*Truitt v. Dep't of State*,
   897 F.2d 540, 542 (D.C. Cir. 1990) ...........................................................................3

*U.S. Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ....................................................................................................7

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321, 325 (D.C. Cir. 1999) ...........................................................................3

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ....................................................................................8

*Washington v. U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ..............................................................................8

*Weisberg v. DOJ*,
   705 F.2d 1344, 1351 (D.C. Cir. 1983) ...................................................................3, 4

*Williams v. Ashcroft*,
   30 Fed. Appx. 5, 6 (D.C. Cir. 2002) ...........................................................................5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ....................................................................................8

*Zemansky v. United States EPA*,
   767 F.2d 569, 571-73 (9th Cir. 1985) .........................................................................5

**Regulations**

5 U.S.C. § 552(b) ...........................................................................................................10, 31

5 U.S.C. § 552(b)(3) ............................................................................................................13

5 U.S.C. § 552(b)(5) ............................................................................................................16

5 U.S.C. § 552(b)(6) .......................................................................................................16, 17

5 U.S.C. § 552(b)(7)(C)...................................................................................................... 19

5 U.S.C. § 552(b)(7)(E) .......................................................................................................29

**Legislative Materials**

H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271 ...................................7

## INTRODUCTION

This case involves Freedom of Information Act ("FOIA") requests made by four Plaintiffs to United States Department of Homeland Security ("DHS") for records concerning asylum assessments to refer.   DHS component agency U.S. Citizenship and Immigration Services ("USCIS") undertook appropriate efforts to search for and provide all reasonably segregable records, and has withheld only that information that is properly exempt from release under FOIA Exemptions 3, 5, 6, 7(C), and 7(E).   A fifth Plaintiff, Louise Trauma Center, accuses USCIS of having followed a policy or practice of unlawfully withholding information from assessments to refer.   Defendant is entitled to summary judgment on these claims. As explained herein, in the attached Statement of Facts ("DSMF"), declaration, and the *Vaughn* index, no material questions of fact remain and DHS is entitled to judgment as a matter of law.

## BACKGROUND

DHS hereby incorporates its Statement of Facts; the DHS *Vaughn* index (attached as Exhibit A); and the declaration prepared by Jill Eggleston (attached as Exhibit B).

Plaintiffs believe that they have a legal right to the entirety of their assessment to refer under the FOIA. However, Defendant has undertaken reasonable searches for responsive records and made only those withholdings that are proper under the FOIA, releasing all reasonably segregable material.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See id.* at

323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770,   771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no

further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*,

684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.   <u>Defendant Performed a Reasonable Search</u>

#### A.  Applicable Standards

Under the FOIA, an agency must undertake a search that is "reasonably calculated to

uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).   A

search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard*

*Servs.*, 926 F.2d at 1201; *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003)

(noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is

measured").   It is appropriate for an agency to search for responsive records in accordance with

the manner in which its records systems are indexed. *Greenberg v. Department of Treasury*, 10

F. Supp. 2d 3, 13 (D.D.C. 1998).

Where an agency affidavit attests that a reasonable search was conducted, the agency is

entitled to a presumption of good faith. *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F.

Supp. 2d 1, 8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate

beyond material doubt that its search was 'reasonably calculated to uncover all relevant

documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting

*Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).   The FOIA does not require that an

agency search every division or field office on its own initiative in response to a FOIA request if

responsive documents are likely to be located in a particular place. *Kowalczyk v. Department of*

*Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Department of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that an agency search every record system.  *Oglesby v. U.S. Dep't of Army,*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."  *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).  However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch."  *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search.  *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)).  A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. DOJ*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs.*, 926 F.2d at 1200); *accord Steinberg v. U.S. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them"); *SafeCard Servs.*, 926 F.2d at 1201 ("When a plaintiff questions the adequacy

4

of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought. 5 U.S.C. § 552(a)(3)(A). That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271. The agency must be able to determine "precisely" which records are being requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted). The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *Zemansky v. United States EPA*, 767 F.2d 569, 571-73 (9th Cir. 1985). An agency, however, is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389; *see also Williams v. Ashcroft*, 30 Fed. Appx. 5, 6 (D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

### B. The Searches in This Case Were Legally Sufficient

Here, there is no material doubt that the searches performed were adequate under FOIA. As explained in the Eggleston Declaration, Ms. Jill Eggleston, the Associate Center Director in the Freedom of Information and Privacy Act ("FOIA/PA") Unit, National Records Center ("NRC") of USCIS, is familiar with the organization of DHS and its FOIA procedures. Eggleston Decl. ¶¶ 1-4. USCIS receives a significant number of FOIA requests every year; while it is only one of 99 federal agencies subject to the FOIA, USCIS receives about one-fifth of the total requests

received by the government.  For example, in Fiscal Year 2018, USCIS received 200,174 total requests, which is approximately 23 percent of the total FOIA requests that were received government wide that year.  *Id.* ¶ 6.  Given the sheer volume of requests, USCIS has a standardized practice for routinely and consistently processing FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive No. 0460.1.  *Id.* ¶ 5.  However, the majority of FOIA requests received by USCIS seek immigration records, which are located in an individual's Alien File (A-file), the repository for all immigration documents about an alien.  *Id.* ¶ 8.

Plaintiffs Emuwa, Lukusa, AlQaraghuli, and Alatanhua all filed identical FOIA requests asking for a copy of certain immigration records pertaining to themselves, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the materials the asylum officer consulted, that were not provided by this individual."  *Id.* ¶ 12-15.

Upon receipt of Plaintiffs' requests, personnel at USCIS/NRC determined that based on the information requested, any records in USCIS's control that were responsive to the request and subject to the FOIA would be located in the A-Files of the individual who was the subject of the FOIA request.  This determination was based on the fact that the A-file is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process.  No other record system was likely to produce responsive documents. *Id.* ¶ 10.

Upon determination that the records were likely in the A-file, NRC staff ran computerized database searches in the National File Tracking System ("NFTS"), a federal government computer database that records and tracks the location of A-files.  NRC staff used identifying information

6

supplied by the Plaintiffs with their FOIA request (such as the subject's name or Alien number) to locate the A-file. *Id.* ¶ 11.

Once the A-files were located, NRC staff obtained the A-File and scanned it into the NRC's FOIA Immigration Records System ("FIRST"). *Id.* FIRST is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically. *Id.* Based on a review of the located records, USCIS/NRC personnel determined that the search was reasonably calculated to locate any responsive documents subject to the FOIA that are in USCIS's control. *Id.* Collectively, these determinations are entitled to a presumption of good faith. *Defenders of Wildlife*, 314 F. Supp. 2d at 8.

In sum, DHS's search was reasonably calculated to uncover all responsive documents and thus was legally sufficient. Defendant searched the places it reasonably determined were most likely to yield responsive records, and then identified the responsive records from the pool of documents initially uncovered by the searches. DHS's determinations were reasonable and should be upheld.

## II.    DHS Properly Applied FOIA Exemptions to Records

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Research Grp. v. FDA*, 185

F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

As shown in USCIS's declaration and accompanying *Vaughn* index, USCIS properly and judiciously applied FOIA Exemptions 3, 5, 6, 7(C), and 7(E) to withhold limited information

within the responsive records, including: personally identifiable information ("PII") of third parties and law enforcement officers; statutorily protected information under 8 U.S.C. § 1202(f); law enforcement sensitive techniques and procedures; and written materials protected by the attorney work product and/or deliberative process privilege. Moreover, in each case, USCIS evaluated the requirement that, to invoke an exemption, an agency must show that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *see* Eggleston Decl. ¶¶ 38-40. Defendants describe each of these exemptions and the bases for their application below.

### A. DHS's Exemption 3 Withholdings

DHS invoked Exemption 3 to withhold information concerning the issuance or refusal of a permit to enter the United States by the U.S. Department of State, which is exempt from disclosure pursuant to Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . [provided that such statute] (i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). As the D.C. Circuit has explained, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for the decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA,* 607 F.2d 339, 350–51 (D.C. Cir. 1978). Consequently, under Exemption 3, judicial review is limited to whether (1) the withholding statute qualifies as an Exemption 3 statute, and (2) the withheld material satisfies the criteria of the exemption statute. *See CIA v. Sims,* 471 U.S. 159, 167 (1985); *Fitzgibbon v. CIA,* 911 F.2d 755, 761 (D.C. Cir. 1990).

Further, "substantial weight [is] owed to agency explanations in the context of national security, to qualify for withholding under Exemptions 1 and 3." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 840 (D.C. Cir. 2001).

Section 222(f) of the INA qualifies as a withholding statute under FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3); *see also Medina-Hincapie v. Dep't of State,* 700 F.2d 737, 741-42 (D.C. Cir. 1983); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 177 (D.D.C. 2011). Section 222(f) of the INA deems confidential "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States." 8 U.S.C. § 1202(f). "Under section 222(f) the Secretary of State has no authority to disclose material to the public. In that sense the confidentiality mandate is absolute; *all* matters covered by the statute 'shall be considered confidential.'" *Medina-Hincapie*, 700 F.2d at 741; *see also DeLaurentiis v. Haig*, 686 F.2d 192, 194 (3d Cir. 1982); *Assadi v. Dep't of State*, No. 12-1111, 2014 WL 4704840, at *6 (S.D.N.Y. Sept. 19, 2014); *Beltranena*, 821 F. Supp. 2d at 177-78; *Badalamenti v. U.S. Dep't of State*, 899 F. Supp. 542, 547 (D. Kan. 1995); *JanXin Zang v. FBI*, 756 F. Supp. 705, 711-12 (W.D.N.Y. 1991); *Smith v. DOJ*, No. 81-CV-813, 1983 U.S. Dist. LEXIS 10878, at *13-14 (N.D.N.Y. Dec. 13, 1983).

Under 8 U.S.C. § 1181(c), refugees entering the United States do not receive visas to enter the United States; they are granted permission to travel to the United States "through a letter issued by the Department of State, i.e., a permit, once all security, medical and other requirements are fulfilled." Eggleston Decl. ¶ 20. As such, any refugee processing involves the issuance or refusal of a permit to enter the United States to a foreign national, and are thus considered confidential under Section 222(f). *Id.* Section 222(f) applies to both information given to USCIS and State by an applicant seeking to enter the United States, but also applies to any "information revealing

the thought-processes of those who rule on the application." *Medina-Hincapie v. Dep't of State*, 700 F.2d at 744.

While the issuance of refusal of visas or permits can entail a variety of types of State Department documents, in this specific case DHS withheld information from State Department records concerning non-immigrant visa applications, records from the Student and Exchange Visitor Information System ("SEVIS"), and information on these topics that were included any law enforcement database printouts. *See generally USCIS Vaughn* Index, Ex.A. All withheld information pertains to the issuance or refusal of a permit to enter the United States, which is exempt from disclosure under Exemption 3 pursuant to INA § 222(f). Eggleston Decl. ¶ 20.

**B. DHS's Exemption 5 Withholdings**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001). DHS's withholdings invoke the attorney work-product doctrine and the deliberative-process privilege.

*i.    Attorney-Work Product Privilege*

Under Exemption 5, the attorney-client privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 297 (D.D.C. 2011) (concluding that EOUSA properly invoked attorney work-product privilege "to protect records reflecting 'such matters as

trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Plaintiff's criminal case'" (quoting *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 864 (D.C. Cir. 1980))).  The privilege extends to administrative proceedings, such as immigration court.  *See, e.g., Schoenman v. FBI*, 573 F. Supp. 2d 119, 143 (D.D.C. 2008) (upholding use of privilege for documents "created by an attorney in the context of an ongoing administrative proceeding that eventually resulted in litigation"); *Nevada v. DOE*, 517 F. Supp. 2d 1245, 1260 (D. Nev. 2007) (noting that privilege applies to administrative proceedings, as long as they are "adversarial"); *McErlean v. DOJ*, No. 97-7831, 1999 WL 791680, at *7 (S.D.N.Y. Sept. 30, 1999) (allowing withholding of documents prepared by attorneys in anticipation of INS deportation proceeding), *amended* (S.D.N.Y. Oct. 29, 1999)).

Here, Exemption 5, under the attorney-client privilege, was applied to one document to protect a legal analysis applied to the facts in an applicant's file and information regarding ongoing or potential litigation concerning Special Immigrant Juveniles Status (SIJS) matters.  The sections were entitled "Section V. Credibility Determination/Evidence Assessment; Section VI. Focused Legal Analysis; Section VII. Bars to Asylum."  *See* DHS Vaughn index, p. 8. Because the material was prepared by an attorney in anticipation of ongoing or potential litigation litigation, these communications are protected under Exemption 5.

ii.  *Deliberative Process Privilege*

The deliberative-process privilege protects intra- or inter-agency documents that are "both pre-decisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). The D.C. Circuit has held:

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. Our recent decisions

> on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The deliberative-process privilege "was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (emphasis added). The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 151-153 (1975); Coastal States Gas Corp,* 617 F.2d at 866; *Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Group Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

As explained in the declaration of Jill Eggleston Yates and DHS's *Vaughn* index, DHS invoked deliberative process privilege to protect DHS's decision-making processes, specifically

in regard to assessments to refer. The first section of an assessment to refer is a factual narrative that is released to requesters; however, the second portion of the assessment (the analysis sections) contains the asylum officer's analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum. For example, these paragraphs can reflect an analysis by the asylum officer of certain testimonial and documentary evidence presented by the applicant and whether such evidence satisfies certain eligibility criteria, as well as analysis of other factors pertinent to the applicant's eligibility. Eggleston Decl. ¶ 23. This second portion of the requested assessments does not represent the Agency's final decisions; they are pre-decisional documents reflecting recommendations and deliberations, which qualify it as deliberative. *Id.* ¶ 22.

This court has held numerous times that the analysis section of the assessment to refer can is pre-decisional and deliberative, and is protected from disclosure by the deliberative process privilege under Exemption 5. *See Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015) ("[T]he Assessment to Refer was both pre-decisional and deliberative."); *Gatore v. U.S. Dep't of Homeland Sec.*, 292 F. Supp. 3d 486, 490 (D.D.C. 2018) ("[T]he parties do not appear to dispute that at least some portion of each assessment is protected from disclosure pursuant to the deliberative process privilege of Exemption 5."); *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 173 (D.D.C. 2017) ("The Court finds that the Assessment to Refer is, at least in part, exempt under the deliberative process privilege contained in Exemption 5."); *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232, 237 (D.D.C. 2015) ("This Court . . . [has] already noted . . . that the requested [assessment to refer] are deliberative."); *Aguimate v. DHS*, 918 F.Supp.2d 13 18-19 (D.D.C. 2013) (holding that the entire assessment to refer is subject to the deliberative process); *Abrayam v. DHS*, 6 F.Supp.3d 165, 173 (D.D.C. 2013) (holding that the entire assessment to refer is subject to the deliberative process). Defendant is unaware of any

case holding otherwise.[1]

As with all redactions applied, the USCIS FOIA Office then conducted a foreseeable hard analysis on the withheld information.  *Id.* ¶ 38-40.  The FOIA Office considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations. Based on this review of the processed records, USCIS determined that no further segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law.   Releasing the redacted information that was redacted would chill or deter USCIS employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits.  The Court has held that this type of chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Amadis v. U.S. Dep't of State*, No. 19-5088 (D.C. Cir. Aug. 21, 2020).

Moreover, in addition to the significant and foreseeable harm presented by the chilling effect upon necessary, candid internal discussions, USCIS determined that revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers could provide a bad actor with information that would allow him to tailor his asylum application and testimony in a favorable, but fraudulent, manner.

For these reasons, USCIS determined that release of the redacted information presented a foreseeable harm to the interests protected by the deliberative process privilege and FOIA Exemption 5.

---

[1] The factual narrative section at the beginning of the assessment has been the source of numerous litigations brought by Plaintiff's counsel; in *Gosen v DHS*, it was ultimately was found that the purely factual narrative was not protected by the deliberative process privilege.  However, the Court held that the analysis section was still protected by the deliberative process privilege.  *See Gosen v DHS*, 118 F.Supp.3d 232 (D.D.C. 2015).

### C.  DHS's Exemption 6 Withholdings

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Govt. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Beck*, 997 F.2d at 1492.

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency."  *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Reporters Comm.*, 489 U.S. at 763-65.  And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea,"

*NARA v. Favish*, 541 U.S. 157, 165-70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763. "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007); *accord Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006). Moreover, "where there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). Under Exemption 6, any personal privacy interest greater than *de minimis* is considered to be "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

Here, DHS invoked Exemption 6 to withhold the PII (including names and contact information) of third parties that appeared in Plaintiffs' records and that USCIS did not have privacy waivers for, and of interpreters, USCIS employees, and State employees. DHS also withheld address and identity documentation such as driver's licenses and passports of third parties, interpreters, and asylum officers. *See* Eggleston Decl. ¶ 29; *see generally* DHS Vaughn index, Ex. A. These persons maintain a strong privacy interest in this information, the release of which "would constitute a clearly unwarranted invasion of personal privacy," thus harming their privacy rights. Eggleston Decl. ¶ 29.

The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests. *See, e.g., Carter v. Dep't of*

*Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. DoD*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Office of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citing *Favish*, 541 U.S at 172)). Here there is no countervailing public interest that would be served by the disclosure of this personal information. Eggleston Decl. ¶ 20; *see Am. Fed'n of Gov't Employees, Local 812 v. Broadcasting Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6);

In sum, because there is no countervailing public interest that can overcome the privacy interest of these individuals, DHS properly redacted their personal information via Exemption 6. *See Beck v. DOJ,* 997 F.3d 1489, 1494 (D.C. Cir. 1993) (when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

### D. Exemption 7 Threshold

FOIA provides that certain records or information compiled for law enforcement purposes are exempt from disclosure. 5 U.S.C. § 552(b)(7)(A-F). DHS meets the requirements of a law enforcement agency. Under the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. 8 U.S.C. § 1103. The records and information at issue in this matter pertain to DHS's obligation to enforce the immigration laws of the United States through its adjudications of applications and petitions submitted to USCIS by individuals seeking immigration benefits from the United States

government. Thus, these records were compiled for law enforcement purposes and meet the threshold requirement of Exemption 7.

### E.  DHS's Exemption 7(C) Withholdings

Similarly, for information compiled for law enforcement purposes, FOIA Exemption 7(C) protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  An agency need not link its collection of material to a specific or ongoing investigation.  *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Here, DHS properly invoked Exemption 7(C) for a law enforcement record to withhold the PII including names, initials, and contact information of immigration officers or other DHS law enforcement personnel in order to protect the law enforcement officer's privacy.  Eggleston Decl. ¶ 33-34.  This was especially justified because of the sensitivity surrounding immigration issues, on account of which the release of the DHS employee's personal information "could subject that individual to harassment or harm by individuals who disagree with the Department's mission or activities."  *Id.* ¶ 34.  Such reasonably foreseeable harm must be avoided.

In sum, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exception 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs.,* 926 F.2d at 1205.  There is no showing that this information needs to be released to meet a significant public interest, and, given the significant privacy interests at stake, Exemption 7(C) was properly invoked to protect third party and law enforcement officer privacy.

### F.  DHS's Exemption 7(E) Withholdings

Exemption 7(E) permits withholding of "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

Here, DHS has asserted Exemption 7(E) to withhold the names of systems used by law enforcement and law enforcement database codes. Eggleston Decl. ¶¶ 36.  This information, which points to or contains information about systems that law enforcement use to store, index, and communicate information, could be used by persons seeking improper access to law enforcement sensitive data to navigate these databases and compromise the integrity of the data either by deleting or altering information.  The release of this information could also reasonably be expected to allow a person to breach sensitive legal/ law enforcement sensitive systems and potentially

circumvent detection or manipulate law enforcement sensitive information, in an attempt to sabotage DHS operational activities. Such reasonably foreseeable harm must be avoided.

The disclosure of this information, which is not readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities. Since all of these documents describe techniques and procedures that effectuate the investigations, they were properly withheld pursuant to Exemption 7(E).

## III.    DHS Released Reasonably Segregable Information

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, as demonstrated by the declaration of Jill Eggleston and DHS's *Vaughn* index, Ex. A, DHS examined and processed all of the found records responsive to Plaintiffs' requests. Where exempt information was reasonably segregable from nonexempt information, DHS redacted only the exempt information and produced the rest. Eggleston Decl. ¶¶ 26, 27, 38, 40. Therefore, all reasonably segregable information has been released and DHS is entitled to summary judgment.

**IV.    Louise Trauma Center's Policy-or-Practice Claims are Unfounded.**

Plaintiff Louise Trauma Center alleges that it is entitled to relief regarding a purported policy-or-practice claim[2]; however, Plaintiff lacks standing to bring this claim.    In order to have standing to bring a cause of action under FOIA, a plaintiff must show that an agency has (1) "improperly," (2) "withheld," (3) "agency records" from them.    *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

First, Plaintiff Louise Trauma Center claims that USCIS improperly withholds agency records from requesters because the USCIS FOIA Office does not release asylum officer assessments in full to FOIA requesters.  ECF No. 1 ¶ 309.   However, there is no evidence of any unlawful withholdings by USCIS, except unsubstantiated claims made by the Plaintiffs and their counsel.    The reality is there are myriad cases holding that USCIS properly applies FOIA Exemption (b)(5) to withhold the analysis sections of asylum assessments to refer, and that the agency has articulated adequate foreseeable harm for to justify those withholdings.   Plaintiffs do not give any new reasons for disclosure of the analysis section of the assessment that would somehow invalidate the holdings found in previous cases. Given that the only policy-or-practice here is USCIS's entirely lawful and appropriate application of the FOIA to asylum assessments to refer, Plaintiffs' claim should be dismissed for lack of standing.

Second, Plaintiff Louise Trauma Center alleges that USCIS does not analyze withholdings for foreseeable harm.  As explained in the appended declaration of Jill Eggleston, and as submitted

---

[2] Defendant is unclear as to what exactly Plaintiff's claim is, given that the Causes of Action do not set forth a claim that can be given relief under FOIA. Therefore, Defendant finds no need to address Plaintiff's claims that USCIS routinely does not release entire "assessments to refer" in violation of the law, and that USCIS inadequately trains its FOIA processors about the foreseeable harm introduced by the FOIA Improvement Act of 2016.  Compl., ECF No. 1 ¶¶ 253-255, 309. If this Court decides otherwise, Defendant requests permission to supplement its filings.

as Exhibit 6 to Plaintiff's very own Complaint, USCIS's FOIA Office provides FOIA processors with training and guidance, issued in December 2017, regarding how to treat first-party requests for assessments to refer that is entirely in line with recent federal court decisions, including *Bayala v. Department of Homeland Security*, 264 F. Supp. 3d 165, 177 (D.D.C. 2017). Eggleston Decl. ¶¶ 27, 38-40; *see also* DHS *Vaughn* index.  The guidance includes information how to evaluate foreseeable harm caused by disclosure. *See* Compl. Ex. 6, 1-6.   Given that the agency does not unlawfully withhold documents from requesters, or instruct USCIS FOIA staff to do so, Plaintiffs' claim should be dismissed.

## CONCLUSION

For the reasons set forth above, DHS respectfully requests that this Court grant summary judgment in favor of Defendant as to all claims in this case.

<div style="margin-left:40%">

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

By:   /s/*Kristin D. Brudy-Everett*
KRISTIN D. BRUDY-EVERETT
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 252-2536
Kristin.Brudy-Everett@usdoj.gov

*Counsel for Defendant*

</div>