# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMARA EMUWA et al,
   *Plaintiffs,*

v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

   *Defendant.*

Case No. 1-20-cv-01756

## DECLARATION OF JILL A. EGGLESTON

I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Associate Center Director in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the United States Department of Homeland Security (DHS), in Lees Summit, Missouri. I have held the position of Associate Center Director since February 4, 2008. I am also an attorney, licensed to practice law by the State of Kansas in 1983. Prior to joining DHS, I served for 19 ½ years as Associate General Counsel for the Defense Finance and Accounting Service (DFAS) of the U.S. Department of Defense (DoD). As part of my duties with the DFAS, among other things, I provided legal advice to the agency on the release of information sought under the FOIA and PA.

2. As FOIA Officer for USCIS, I supervise over 200 information access professionals who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3. Through the exercise of my official duties as Associate Center Director, I am familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records. More specifically, I am familiar with USCIS's procedures and actions taken in response to the FOIA request at issue. I was responsible for overseeing and coordinating the search conducted by

USCIS in response to these requests, and I am personally familiar with the search conducted by USCIS in response to these requests.

4. This declaration is submitted in support of USCIS's Motion for Summary Judgment in this matter. This declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to the FOIA requests made by Louise Trauma on behalf of Amara Akuoma Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and Fnu Alatanhua.  The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

## USCIS'S STANDARD FOIA OPERATING PROCEDURES

5. USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive No. 0460.1.  Specifically, when the agency receives a FOIA request for USCIS information or documents, the agency's standard procedure includes the following:[1]

    a) after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

    b) because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a

---

[1] DHS requirements for submitting a FOIA request for an individual's records include the following:

1. All FOIA requests must be submitted in writing and signed by the requester. 6 C.F.R. § 5.3(a).

2. If the requester seeks records about him/herself the requester must verify identity by submitting, in writing, a statement containing his/her full name, current address, date of birth and place of birth.  This statement must be signed and the signature must either be notarized or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature).  This signature must be submitted along with the FOIA request.  6 C.F.R. §§ 5.3(a), 5.21(d).

3. The FOIA request must describe the records that are being sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. 6 C.F.R. § 5.3(b).

    computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

    c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

    d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;

    e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) for that office or agency;

    f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

    g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

6. In recent years, USCIS has experienced a significant increase in the amount of FOIA requests received and processed by the agency. USCIS is only one of ninety-nine federal agencies subject to the FOIA, but it receives about one-fifth of the total requests received. During FY 2018, USCIS received 200,174 total requests, which represents approximately 23 percent of the total FOIA requests that were received government wide in FY19. See http://www.foia.gov.

7. Given the significant number of FOIA requests received by USCIS and in an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing such requests on a first-in/first-out basis. This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits the USCIS to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. USCIS's first-in/first-out and multi-track processing is consistent with the requirements set forth in <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976) and <u>Exner v. FBI</u>, 612 F.2d 1202 (9th Cir. 1980).

3

8. The majority of the FOIA/PA requests that USCIS receives seek immigration records located in an individual's Alien File (A-file). USCIS also receives a significant volume of requests seeking non A-file records, such as USCIS policy documents.

9. Plaintiffs submitted FOIA requests for records relating to Amara Akuoma Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and Fnu Alatanhua which is the subject of this litigation. The search for material responsive to this request is described in paragraph 10-11 of this declaration. The processing of the material responsive to this request is described in paragraphs 12-33.

## USCIS'S SEARCH FOR RECORDS AND PROCESSING OF PLAINTIFFS' FOIA REQUEST

10. In response to Plaintiffs' request, USCIS/NRC personnel determined that based on the information being sought, any records in USCIS's control that were responsive to the request and subject to the FOIA would be located in the A-Files of the individual who was the subject of the FOIA request. This determination was based on the fact that the A-file is the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process. No other record system was likely to produce responsive documents.

11. NRC staff ran computerized database searches in the National File Tracking System (NFTS) database using the information supplied by the Plaintiffs with their FOIA request.[2] When the location of the A-Files was determined, NRC staff obtained the A-File and scanned it into the NRC's FOIA Immigration Records System (FIRST). FIRST is a computerized FOIA processing system that allows NRC staff to review records and process FOIA requests electronically. Based on a review of the located records, USCIS/NRC personnel determined that the search was reasonably calculated to locate any responsive documents subject to the FOIA that are in USCIS's control.

## PLAINTIFFS' FOUR FOIA REQUESTS

12. On or about March 18, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma, seeking a copy of certain immigration records pertaining to Amara Emuwa asylum application, specifically, "a copy of the

---

[2] The NFTS is a federal government computer database that records and tracks the location of A-Files. NRC staff used information pertaining to the subject of Plaintiffs' request such as the subject's name, date of birth and Alien number to search for her A-File in NFTS.

4

assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the "country conditions" evidence mentioned in the Referral Notice. On March 23, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020054812. On June 1, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 363 pages that were responsive to the request where 250 pages were released in full, 63 pages were released in part, and 37 pages were withheld in full. USCIS received plaintiff's appeal of this determination on June 11, 2020 and assigned it control number APP2020000959. On June 15, 2020, USCIS notified plaintiff that it was releasing an additional 28 pages but otherwise the agency's initial determination was upheld.

13. On or about April 23, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma, seeking a copy of certain immigration records pertaining to Michaux Lukusa, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the materials the asylum officer consulted, that were not provided by this individual. On April 28, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020068744. On June 2, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 371 pages that were responsive to the request where 338 pages were released in full, 28 pages were released in part, and 3 pages were withheld in full. Additionally, USCIS located 2 pages of potentially responsive documents that may have originated from US Immigration and Customs Enforcement (ICE). USCIS provided plaintiff with the contact information for the ICE FOIA office where those pages had been referred. There is no record of an administrative appeal for this request. USCIS received plaintiff's appeal of this determination on June 11, 2020 and assigned it control number APP2020000960. On June 15, 2020, USCIS notified plaintiff that it was releasing an additional 11 pages but otherwise the agency's initial determination was upheld.

14. On or about March 26, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma, seeking a copy of certain immigration records pertaining to Mohammed AlQaraghuli, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the documents referenced by or consulted by the asylum officer, which were not given to the officer by the applicant. On March 27, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020058314. On July 16, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 505 pages that were responsive to the request where 334 pages were released in full, 140 pages were released in part, and 31 pages were withheld in full. There is no record of an administrative appeal for this request.

15. On or about March 18, 2020, the USCIS FOIA office received a FOIA request from Plaintiff Louise Trauma, seeking a copy of certain immigration records pertaining to Fnu Alatanhua, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the "country conditions" evidence mentioned in the Referral Notice. On March 23, 2020, USCIS FOIA acknowledged the Plaintiff's FOIA request and assigned it control number NRC2020054800.  On June 18, 2020, USCIS FOIA sent its final response to the Plaintiff indicating that it located 290 pages that were responsive to the request where 226 pages were released in full, 43 pages were released in part, and 21 pages were withheld in full. USCIS received plaintiff's appeal of this determination on July 22, 2020 and assigned it control number APP2020001219. On July 31, 2020, USCIS notified plaintiff that it was releasing an additional 34 pages but otherwise the agency's initial determination was upheld.

16. The assessments referenced in these FOIA requests concern documents prepared by USCIS asylum officers, entitled "Assessments to Refer."  These assessments reflect the asylum officer's analysis and assessment of the applicant's eligibility for asylum, and are prepared for and provided to the asylum officer's supervisor for review and approval. In those cases in which the asylum officer recommends referral and the supervisory asylum officer agrees, USCIS then prepares a document entitled "Referral Notice," which is sent to the applicant and advises that the Agency has rendered a final decision to refer the applicant to an immigration judge for removal proceedings before the U.S. Department of Justice, Executive Office for Immigration Review.

**DESCRIPTION OF FREEDOM OF INFORMATION ACT EXEMPTIONS**

17. In responding to the FOIA requests, USCIS FOIA withheld certain information pursuant to 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(c) and (b)(7)(e).  These exemptions are all described below.

Exemption 3

18. 5 U.S.C. § 552(b)(3) states that the FOIA does not apply to matters that are: specifically exempted from disclosure by statute (other than section 552(b) of this title), if that statute-(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

19. Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f), states in pertinent part:

    The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or <u>permits to enter the United States shall be considered confidential</u> and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that - (1) in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court. (Emphasis added).

20. Section 222(f) of the INA qualifies as a withholding statute under FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3)[3]. "Under section 222(f) the Secretary of State has no authority to disclose material to the public. In that sense the confidentiality mandate is absolute; *all* matters covered by the statute 'shall be considered confidential.'" *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983). Refugees entering the United States do not receive visas for travel to the United States, see 8 U.S.C. § 1181(c), but receive permission to travel to the United States through a letter issued by the Department of State, i.e., a permit, once all security, medical and other requirements are fulfilled. Therefore refugee processing involves granting a foreign national a permit to enter the United States, and records related to refugee processing are confidential under Section 222(f). Section 222(f) applies not only to the information supplied by the applicant seeking to enter the United States, but also applies to any "information revealing the thought-processes of those who rule on the application." Id. at 744. USCIS has withheld information in a number of documents originating from the State Department that pertains to the issuance or refusal of a permit to enter the United States, which is exempt from disclosure under Exemption 3 pursuant to INA § 222(f).

### Exemption 5

21. Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." See 5 U.S.C. § 552(b)(5). In

---

[3] See *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741-42 (D.C. Cir. 1983); see also *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 177 (D.D.C. 2011).

the records responsive to Plaintiffs' request, USCIS withheld certain information pursuant to the deliberative process privilege and attorney client privilege of Exemption 5.

22. The deliberative process privilege was invoked to protect DHS's decision-making processes. The privilege was applied to documents reflecting recommendations and deliberations and were found to be pre-decisional following a review and determination that they preceded an agency decision.

23. The assessments reflect the asylum officer's analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum. For example, these paragraphs can reflect an analysis by the asylum officer of certain testimonial and documentary evidence presented by the applicant and whether such evidence satisfies certain eligibility criteria, as well as analysis of other factors pertinent to the applicant's eligibility.

24. Given that the assessments requested did not represent the Agency's final decisions and that they reflect the analysis, opinions, deliberations and recommendations of the asylum officer, as discussed above, we determined that releasing the information that was redacted would chill or deter USCIS employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits. Moreover, in addition to the significant and foreseeable harm presented by the chilling effect upon necessary, candid internal discussions, we also determined that revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers could provide a bad actor with information that would allow him to tailor his asylum application and testimony in a favorable, but fraudulent, manner. For these reasons, we determined that release of the redacted information presented a foreseeable harm to the interests protected by the deliberative process privilege and FOIA exemption b(5).

25. The attorney-work product privilege was invoked to protect where a legal analysis was applied to the facts in the applicants file and information concerning ongoing or potential litigation concerning SIJS matters.

26. The attorney-work product privilege provides that information may be withheld in full pursuant to the FOIA, and here there was no segregable material within the section that this exemption was applied.

27. Each deliberative process or attorney client privilege is described in greater detail in the attached <u>Vaughn</u> index attached as Exhibit A. Only pre-decisional and deliberative material was withheld and all other information

8

was segregated and released. Further, none of the withheld material was created 25 years or more before the date on which the records were requested. The foreseeable harm in release of this information is also described in the attached <u>Vaughn</u> Index.

<u>Exemption 6</u>

28. Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." <u>See</u> 5 U.S.C. § 552(b)(6).

29. Exemption 6 was invoked to withhold identifying information in records that related to third party individuals who did not provide consent for release. This withheld information is on immigration documents pertaining to the Plaintiffs' request. The withheld information consists of the names and other personal information pertaining to individuals not the subject of Plaintiffs' FOIA request. There is a strong privacy interest in this material. There is no public interest in this information as it does not in any way shed light on how the agency is performing its duties. Therefore, USCIS determined that disclosure of this information would constitute a clearly unwarranted invasion of personal privacy that is not outweighed by any public interest in the material. Each invocation of Exemption 6 is described in greater detail in the attached <u>Vaughn</u> index attached as Exhibit A.

<u>Exemption 7</u>

30. Exemption 7 establishes a threshold requirement, which must be met in order for certain information in the records subject to this litigation to be withheld on the basis of subparts (b)(7)(C) and (b)(7)(E). Specifically, the redactions at issue must be contained within a record compiled for a law enforcement purpose.

31. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act ("INA"), codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. <u>See</u> 8 U.S.C. § 1103. USCIS has responsibility to enforce federal immigration law pursuant to the INA through its adjudications of applications and petitions submitted to USCIS by individuals seeking immigration benefits from the United States government. Thus, these records were compiled for law enforcement purposes.

<u>Exemption 7(C)</u>

32. Exemption 7(C) of the FOIA protects personal information in law enforcement records the disclosure of which "could reasonably be expected to

constitute an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(7)(C).

33. USCIS invoked Exemption 7(C) to protect personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. This information pertains to information about third party individuals who did not provide consent for release. This withheld information is on documents compiled for law enforcement purposes pertaining to the subjects of the Plaintiffs' FOIA request. The withheld information consists of biographical information pertaining to third party individuals, including names, addresses, dates of birth, and phone numbers. This information is all personal information pertaining to these individuals. Thus, there is a strong privacy interest in this material. There is no public interest in this information as it does not in any way shed light on how the agency is performing its duties. Therefore, USCIS determined that disclosure of this information would constitute a clearly unwarranted invasion of personal privacy that is not outweighed by any public interest in the material. Each invocation of Exemption 7(C) for third parties is described in greater detail in the attached Vaughn index attached as Exhibit A.

34. USCIS also invoked Exemption 7(C) to protect personal information pertaining to USCIS employees assigned to law enforcement matters in the documents responsive to the Plaintiffs' FOIA request. The release of these individuals personal identifying information could reasonably be expected to constitute an unwarranted invasion these employees' personal privacy. The names, contact information and other personal information about these employees does not shed light on how the government is performing its mission as to the immigration laws. Additionally, disclosure of this information could unnecessarily subject that individual to harassment or harm by individuals who disagree with DHS's mission or activities. Thus, there is no public interest in this information that outweighs the privacy interests of these individuals. Each invocation of Exemption 7(C) for USCIS employees is described in greater detail in the attached Vaughn index attached as Exhibit A.

Exemption 7(E)

35. Exemption 7(E) protects law enforcement information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. See 5 U.S.C. § 552(b)(7)(E).

36. USCIS withheld documents pursuant to Exemption 7(E) that contain law enforcement information which would disclose techniques and procedures for law enforcement investigations where such disclosure could reasonably be expected to risk circumvention of the law. The types of documents and/or information withheld includes law enforcement systems checks, and law enforcement database codes. Even if the law enforcement procedure or technique was generally known, its specific use was withheld as disclosure of its specific use may reduce or nullify its existence. Moreover, this information, which points to or contains information about systems that law enforcement use to store, index, and communicate information, could be used by persons seeking improper access to law enforcement sensitive data to navigate these databases and compromise the integrity of the data either by deleting or altering information. The release of this information could also reasonably be expected to allow a person to breach sensitive legal/ law enforcement sensitive systems and potentially circumvent detection or manipulate law enforcement sensitive information, in an attempt to sabotage DHS operational activities. The disclosure of this information, which is not readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities.

37. Each invocation of Exemption 7(E) is described in greater detail in the attached Vaughn index attached as Exhibit A.

## FORESEEABLE HARM

38. When reviewing the redactions applied, the USCIS FOIA office conducted a foreseeable harm analysis on the withheld information. The FOIA Office considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations. Based on this review of the processed records, the agency determined that no further segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law. The only information withheld from the Plaintiffs is information that is entitled to protection from disclosure that could cause a foreseeable harm to any agency operations if released.

39. Given that the information sought in the 4 FOIA requests, especially as they relate to the assessments did not represent the Agency's final decisions and that they reflect the analysis, opinions, deliberations and recommendations of the asylum officer, as discussed above, we determined that releasing the information that was redacted would chill or deter USCIS employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper

     analysis and fair consideration of these asylum requests on the merits.  Moreover, in addition to the significant and foreseeable harm presented by the chilling effect upon necessary, candid internal discussions, we also determined that revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers could provide a bad actor with information that would allow him to tailor his asylum application and testimony in a favorable, but fraudulent, manner.  For these reasons, we determined that release of the redacted information presented a foreseeable harm to the interests protected by the deliberative process privilege and FOIA exemption (b)(5).

40. As described previously with the discussion of each FOIA Exemption invoked, with regard to the information that was withheld from the agency's response, attached to this declaration is an index identifying and describing each document in which information was withheld, specifying the particular exemption under which the information was withheld, and explaining how the exemption applies to the information that was withheld.  Information regarding how non-exempt information was segregated from exempt information is included in the index. See Vaughn Index, Exhibit A.  I am familiar with the records described in the Vaughn index.  It accurately describes those records, and explains USCIS' proper assertion of the appropriate FOIA exemptions, including the foreseeable harm that would occur in each instance in which the USCIS would have discretion in the release of the information (i.e. material protected pursuant to the deliberative process privilege).

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Overland Park, Kansas, on this 30th day of September 2020.

*Jill A. Eggleston*
JILL A. EGGLESTON
Associate Center Director
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center