UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, ET AL, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-1756 (TNM) |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Amara Emuwa, at al, pursuant to Fed. R. Civ. P. 56, hereby move this Court to grant summary judgment in their favor. As shown in the attached memorandum, plaintiffs have demonstrated that DHS will suffer no harm if entire assessments are released.

Even if the entire assessment is not released, DHS should still release the sources cited in the assessment.

Dated: October 29, 2020

        Respectfully Submitted,

        *s/ David L. Cleveland*
        David L. Cleveland
        Attorney for Plaintiffs
        DC Bar # 424209
        1220 L Street NW #100
        Washington, DC 20005
        [202] 812-8684   <1949.david@gmail.com>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMARA EMUWA, ET AL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 20-1756 (TNM) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) | |
| Defendant. | ) ) | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
 MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiffs
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   <1949.david@gmail.com>

**TABLE OF CONTENTS** Page

Table of Cases and Other Authorities………………………………………….……....…3

INTRODUCTION……………………………………………………………………….4

ARGUMENT

    I.    MS. EMUWA'S CLAIM, SET FORTH IN THE FIRST CAUSE
OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED……………………………5

    II.    MR. LUKUSA'S CLAIM, SET FORTH IN THE SECOND CAUSE
OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED……………………….….7

    III.    MR. ALQARAGHULI'S CLAIM, SET FORTH IN THE THIRD
CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED…………...………8

    IV.    MS. ALATANHUA'S CLAIM, SET FORTH IN THE FOURTH
CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED…………………..8

    V.    THE FIFTH CAUSE OF ACTION IN THE COMPLAINT,
"NEGLIGENT AND INADEQUATE TRAINING," IS WELL-FOUNDED…...………8

    VI.    THE SIXTH CAUSE OF ACTION IN THE COMPLAINT, HARM
TO LOUISE TRAUMA CENTER, IS WELL-FOUNDED……………………….....…9

CONCLUSION……………………………………………………………………...…9.

**TABLE OF AUTHORITIES**

**Cases**
Cases marked with * are chiefly relied upon

*Abtew v. DHS,* 808 F.3d 895, 899 (D.C. Cir. 2015) …………………………………...…..5

*DHS v. Regents of Univ. of California,* 140 S. Ct. 1891, 1908 (2020)……………….……6

*Judicial Watch v. Dep't of Commerce*
   375 F. Supp. 3d 93, (D.D.C. 2019)…………………………………………………..…….5

*\*Stone v. INS,* 514 U.S. 386 (1995)……………………………………………………...7

INTRODUCTION

The DHS has an inconsistent history concerning asylum office assessments. From 1998-2005, DHS released entire assessments without hesitation. Without explanation, the policy was changed in 2005, and no part of assessments were released.

In 2015, the agency representative, Ms. Eggleston, told a court the assessments must be entirely withheld because of the need to protect how asylum officers "prioritized, then analyzed information." *See* ECF No. 15-7. After being criticized by a few courts, Ms. Eggleston told a court in 2018 that assessments must be withheld to prevent applicants from "tailoring" their applications, and so that the agency would not be "hindered." *See* ECF No. 15-8. After the D.C. Circuit vacated the district court decision that had relied upon that theory, Ms. Eggleston now, in 2020, says assessments must be withheld so that employees are not "chilled or deterred," and also to prevent fraud. *See* ECF #14-2.

The agency has never explained why it keeps changing its position. This Court should conclude that Ms. Eggleston only offers a "litigation" declaration. The Court should deem it insufficient.

*DHS is able to segregate, and release, the sources cited in assessments*

The FOIA requires, in two separate sections, an agency to segregate and release all the information it can. In asylum office assessments, are found sources of authority, such as particular State Department reports, and reports from certain organizations. These sources can easily be released to plaintiffs.

*Inadequate training*

The Freedom of Information Act [FOIA] was enacted over 50 years ago. It was amended, effective June 30, 2016, to add a new sub-section: 552(a)(8)(A). This amendment

allows an agency to withhold a record only if the agency "reasonably foresees harm" upon disclosure. This amendment imposes a "meaningful and independent burden" on agencies. *Judicial Watch v. U.S. Dep't of Commerce,* 375 F. Supp. 3d 93, 100 (D.D.C. 2019). This new sub-section changes the law: even if a record is otherwise exempt, it still must be disclosed, unless the agency can show it will suffer "harm" upon release. In response to this act of Congress, DHS did virtually nothing. It changed its training of processors only very slightly, and very inadequately. How is a processor to know if the agency will suffer harm if an assessment is released? DHS gave its processors no real training on this subject.

I. **MS. EMUWA'S CLAIM, SET FORTH IN THE FIRST CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.**

The First Cause of Action, concerning Ms. Emuwa, begins at ¶ 217 of the Complaint, ECF. No. 1. She was born in Nigeria; suffered domestic violence, and was interviewed by the Arlington Asylum Office in 2018. ECF No. 1, ¶s 177-190. She seeks her entire Assessment.

*The asylum office assessment is the final decision of the agency*

In *Abtew v. DHS,* 808 F.3d 895, 899 (D.C. Cir. 2015) the Court ruled that an assessment was protected by the deliberative process privilege, because it was not the final decision of the agency. However, as stated in footnote 1, "…we do not rule out the possibility that initialing a memo together with other circumstances might indicate agency adoption of that memo in some cases. But Abtew has not presented evidence to support that conclusion here."

Plaintiffs in this case now present that evidence of "other circumstances:" *see* Declaration of David Cleveland dated October 13, 2020 [ECF No. 15-2]. Mr. Cleveland talked to two asylum officers who told him that the assessment is indeed the final decision of the agency. *Id.* at ¶ 4. To be sure, this is hearsay. Plaintiffs seek discovery to establish the truth of this matter. If Mr. Cleveland is mistaken, or if procedures are now different in the asylum office, DHS could easily

and quickly set forth the facts, via a declaration from an asylum officer with personal knowledge. Ms. Eggleston does not claim to have any personal knowledge of this matter. Her conclusions should not be accepted on this record.

### *DHS disclosed entire assessments from 1998-2005*

As stated in ¶ 2 of ECF No. 15-2, the DHS routinely released entire assessments to FOIA requesters from 1998-2005. Five of them are attached to 15-2. The fact that assessments were routinely disclosed is evidence that doing so caused no harm to anyone. The DHS has not yet explained why it changed its policy. A Court need not grant deference to an agency that changes its policy without explanation.

### *Ms. Eggleston offered different rationales in earlier cases*

In 2015, Ms. Eggleston told a court that "It is in the interest of USCIS to protect the manner in which asylum officers, such as those that interviewed the plaintiffs, prioritize then analyze information…"  ¶ 19 of ECF No. 15-7.  In 2018, she told a court that

> Public disclosure of the withheld information will lead to asylum applicants tailoring their applications and interview responses to what they believe will tip an asylum officer's decision in their favor. Public disclosure of the asylum officer's deliberative process will hinder the Agency's ability to make determinations solely on the merits of an asylum claim.

¶ 10, ECF No. 15-8.

This year, she says the release would "chill or deter" "employees," and that release would promote fraud. ¶ 39, ECF NO. 15-8.

A Court should not give credence to "impermissible post hoc rationalizations." *DHS v. Regents of Univ. of California,* 140 S. Ct. 1891, 1908 (2020).

### *DHS should release the sources cited in assessments*

Even if the court disagrees that the entire assessment should be released, there are more segregable parts that can be released.

For example, consider the assessment dated December 10, 1998 [page 6 of 18 of ECF No. 15-2]. The asylum office relied upon a 1998 State Department report, a 1998 Amnesty International Report, and on a Freedom in the World Report. This information is useful to the applicant: if asylum offices cite to a particular source, so can the applicants.

*The FOIA Improvement Act of 2016 added another provision about segregability*

Before the 2016 amendments, section 552(b), last ¶, provided:

"Any reasonably segregable portion of a record shall be provided to any person…"

The 2016 amendment added sub-section 552 (a)(8):

 "An agency shall . . . (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible . . . and (II) take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii).

Thus, the current law requires agencies to segregate, not in just one section, but in two sections. This shows that Congress was serious about the duty to segregate.

This sub-section must be given effect. *See Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

This plaintiff should be given her entire assessments. In the alternative, she should be given the sources cited in the assessment.

**II. MR. LUKUSA'S CLAIM, SET FORTH IN THE SECOND CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.**

The Second Cause of Action, concerning Mr. Lukusa, begins at ¶ 223 of the Complaint, ECF. No. 1. He was born in the Democratic Republic of Congo, has an anti-government political

opinion, and was interviewed by the Arlington Asylum Office in 2019. ECF No. 1, ¶s 191-202.

He seeks his entire Assessment. He repeats the same arguments as did Ms. Emuwa.

### III. MR. ALQARAGHULI'S CLAIM, SET FORTH IN THE THIRD CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.

The Third Cause of Action, concerning Mr. Alqaraghuli begins at ¶ 229 of the Complaint, ECF. No. 1. He was born in Iraq; his father was a "Shia," his mother is "Sunni," and was interviewed by the Chicago Asylum Office in 2014. ECF No. 1, ¶s 203-207. He seeks his entire Assessment.  He repeats the same arguments as does Ms. Emuwa.

### IV. MS. ALTANHUA'S CLAIM, SET FORTH IN THE FOURTH CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.

The Fourth Cause of Action, concerning Ms. Alatanhua, begins at ¶ 217 of the Complaint, ECF. No. 1. She was born in China; is a Mongol and a Buddhist, and was interviewed by the Newark Asylum Office in 2019. ECF No. 1, ¶s 208-214. She seeks her entire Assessment.

She repeats the same arguments as does Ms. Emuwa.

### V. THE FIFTH CAUSE OF ACTION IN THE COMPLAINT, "NEGLIGENT AND INADEQUATE TRAINING," IS WELL-FOUNDED.

The FOIA Improvement Act of 2016 created new and meaningful burdens on agencies. In response, agencies should train their FOIA processors to do what the law requires. DHS gave training in 2015; it repeated that training in 2019. It should have incorporated what the new law required into the 2019 training.

## VI.  LOUISE TRAUMA CENTER'S POLICY-OR-PRACTICE CLAIMS ARE WELL FOUNDED

¶ 261 of the Complaint states: "Louise Trauma Center is being forced to divert time and attention away from its goals to deal with the problems set forth in this Complaint. Its activities are being impeded. It is being forced to undertake expenditures in response to, and to counteract, the effects of the conduct of DHS."  The Louise Trauma has stated a well-founded cause of action.

## CONCLUSION

DHS will suffer no harm if assessments are released. DHS will suffer no harm if sources cited in assessments are released. The Court should grant summary judgment in favor of plaintiffs.

October 29, 2020                          Respectfully Submitted,

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiffs
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   1949.david@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, ET AL,              )<br>                                                  )<br>                        Plaintiffs,   )<br>                                                  )<br>            v.                                  )<br>                                                  )<br>UNITED STATES DEPARTMENT OF )<br>HOMELAND SECURITY,          )<br>                                                  )<br>                        Defendant.  )<br>                                                  ) | Civil Action No. 20-1756 (TNM) |

## **[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for Summary Judgment, and for good cause shown, it is hereby:

    ORDERED: Plaintiffs' motion is GRANTED.

Dated:_____

_____
United States District Court Judge