# ATTACHMENT D

## DECLARATION OF DAVID CLEVELAND

## DATED OCTOBER 20, 2020

Excerpts from Affirmative Asylum Procedures Manual

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, ET AL, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Civil Action No. 20-1756 (TNM) |

## Declaration of David Cleveland dated October 20, 2020

I am David Cleveland, counsel for plaintiffs in this case.

DHS publishes the "Affirmative Asylum Procedures Manual-2016" on its website. It is 104 pages long. This manual is also on the website of the American Immigration Lawyers Association, as AILA Document 16062140.

Attached hereto are several pages from that manual.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on October 20, 2020.     /s/ David L. Cleveland
                                                    David L. Cleveland

Asylum Office Directors maintain the discretion to establish the most efficient workflow for the processing of decisions for individuals who appear ineligible for asylum provided that:

- The type of decision is appropriate under the regulations at the time it is issued; and
- In the absence of exceptional circumstances, asylum applications are processed in a manner consistent with established timeliness requirements and without unreasonable delay.

See Section III.N for special procedures governing parolees.

### b. Referral

The Asylum Office must refer to the Immigration Court for adjudication in removal proceedings an applicant who is ineligible to apply for or be granted asylum and appears inadmissible or deportable at the time the decision is issued.

The following is an outline of the documents and RAPS updates associated with a referral. Detailed instructions on how to prepare the documents can be found in Section IV, "How To…" of this manual.



 Inadmissible Alien, if required. *Check with local Asylum Office management about requirements for preparing*

 ), or Form I-863, Notice of Referral to Immigration Judge
 , 53, 54 and 55)
 round Identity and Security Checklist (Appendix 1 of the Identity and Security Checks Procedures Manual)
 rt code of A1 if an NTA is to be issued, A5 if an I-863 is to be issued
 " section, enter the basis upon which the case is decided, rather than basis claimed by the applicant (if there is a
 ws entry of "NO," for no nexus, if applicant failed to establish nexus to one of the five protected grounds.
  generate an NTA and Form I-213, if required
 ction. If the form does not contain a space for a referral, Asylum Office personnel write "referral," the Asylum
 of the decision.
 on letter.

### c. Notice of Intent to Deny (NOID)

The Asylum Office issues a denial of asylum to an applicant who is ineligible to apply for or be granted asylum and is maintaining valid immigrant, nonimmigrant, or Temporary Protected Status ("in-status") at the time the decision on the application is issued. Prior to denial, the Asylum Office issues an in-status applicant a NOID (Appendix 45), providing him or her 10 days, plus 6 days for mailing (a total of 16 days), to rebut the reasons for the denial. Any rebuttal is considered prior to making a final decision in the case. An applicant found eligible for asylum after the rebuttal period is processed for approval as indicated above in this section. An applicant found ineligible for asylum is processed as a denial or referral, as described in this section.

Under 8 CFR § 208.11(c), an applicant must be provided the opportunity to review and respond to any Department of State (DOS), Bureau of Democracy, Human Rights and Labor (DRL) comments prior to the issuance of any final decision to deny the application. In accordance with this regulation, if the basis for issuing the NOID is, in part, based on DOS DRL comments, the NOID must cite to the use of the DOS DRL comment letter and note the specific information applied in reaching the adverse determination. A copy of the DOS DRL comment letter should be attached to the NOID for the applicant's reference.

From time to time, Asylum Office personnel will encounter an applicant who nears and reaches the end of his or her period of authorized stay during the processing of the asylum application. As indicated in Section II.N.2, an Asylum Office Director maintains the discretion to establish procedures to ensure that the appropriate decision is prepared based on the applicant's status at the time the decision is issued, without undue delay.

*For discussion of extensions of periods of nonimmigrant status, see Section III.G.*

The following is an outline of the documents and RAPS updates associated with a NOID. Detailed instructions on how to prepare the documents can be found in Section IV, "How To…" of this manual.

- Notice of Intent to Deny (NOID) (Appendix 45)
- RAPS – "Y" and expiration date entered in VIST
- RAPS – PDEC of D1-D7, deportation code A6
- When updating the "basis of the claim" section, enter the basis upon which the case is decided, rather than basis claimed by the applicant (if there is a difference). The RAPS screen allows entry of "NO," for no nexus if applicant failed to establish nexus to one of the five protected grounds.
- I-589 – "FOR BCIS USE ONLY" section. Asylum Office personnel write "NOID," the Asylum Officer ID number, and the date of the decision.
- RAPS – DINT for service of the NOID, RBUT for receipt of any rebuttal.

### d. Denial

After a NOID and rebuttal period, the Asylum Office denies asylum to an applicant who is ineligible to apply for or be granted asylum and is maintaining valid immigrant, nonimmigrant, or Temporary Protected Status or has valid parole at the time the decision on the application is issued. If the applicant lost valid status between the issuance of the NOID and the date of issuance of the final decision, a referral is issued. 8 C.F.R. 208.14(c).

The following is an outline of the documents and the Form I-589 and RAPS updates associated with a denial. Detailed instructions on how to prepare the documents can be found in Section IV, "How To…" of this manual.

- Final Denial (Appendices 56, 57, and 58)
- Asylum and NACARA § 203 Background Identity and Security Checklist(Appendix 1 of the Identity and Security Checks Procedures Manual)
- RAPS – "Y" entered in VIST
- RAPS – FDEC of D1-D7, deportation code A6.
- When updating "basis of the claim" section, enter the basis upon which the case is decided, rather than basis claimed by the applicant (if there is a difference). The RAPS screen allows entry of "NO," for no nexus if applicant failed to establish nexus to one of the five protected grounds.
- I-589 – "FOR BCIS USE ONLY" section. If required by local Asylum Office policy, the AO completes the appropriate area(s) of this section, indicating a denial.
- RAPS –DENY for service of decision letter.

### 2. Protecting Confidentiality – Written Materials

Photocopying machines, printers, and Asylum Offices may contain policy memoranda, case assessments, I-589 applications and charging documents with identifying information about an asylum applicant. To ensure that all materials related to an application for asylum remain confidential, Asylum Office personnel must ensure that any written materials with identifying information about an asylum applicant are not laying in plain view during an asylum interview. In addition, Asylum Office personnel may not permit asylum applicants, attorneys, and interpreters to wait in areas (e.g., near printers and photocopying machines) where documents that contain identifying information about an applicant are in plain view.

Any documents with an asylum applicant's name, alien number, or any other type of identifying information that are to be discarded must be shredded or placed in burn boxes.

### 3. Access to Asylum Files by Non-DHS Federal Law Enforcement Agencies (FLEAS)

An Asylum Office may disclose information to a non-DHS FLEA if the information requested is needed in connection with a criminal or civil investigation that is already underway, if the Secretary of Homeland Security authorizes disclosure, or if the applicant provides written consent to disclose information from his or her file. Otherwise, any information about an individual applicant may not be disclosed to an agent/officer, even when that individual believes the applicant should be entitled to a benefit because of information/assistance the applicant may have provided. For example, an agent who has received cooperation from an asylum applicant may want to provide information to support the asylum application. The agent may supply the information if he or she is aware that the applicant has applied for asylum, but USCIS may not disclose information about the case or case status, or confirm or deny the fact that the applicant has applied for asylum, unless the applicant consents to the disclosure in writing. 8 C.F.R. 208.6.

Under certain circumstances as prescribed by the Secretary of Homeland Security's memo of April 18, 2007, asylum information may be disclosed to any element of the U.S. Intelligence Community, or any other federal or state agency having a counterterrorism function. See Chertoff, Michael, Secretary of Homeland Security, Disclosure of Asylum-Related Information to U.S. Intelligence and Counterterrorism Agencies, Memorandum to the Deputy Secretary; the Under Secretaries; the General Counsel; Director, USCIS; et al. (Washington, DC: 18 April 2007), 5p.

Asylum Office personnel should not disclose the interest of the law enforcement, intelligence, or counterterrorism agency in a particular application to the asylum applicant and should limit the number of USCIS employees who have knowledge of any such interest to those with a "need to know" basis.

### 4. Disclosure to Third Parties – General

Information contained in or pertaining to any asylum application shall not be disclosed without the written consent of the applicant, except as permitted by 8 C.F.R. 208.6 or at the discretion of the Secretary of Homeland Security. This includes neither confirming nor denying that a particular individual filed for asylum. Inquiries about the status of an asylum application should not be taken or responded to by telephone except where it is possible to verify the [ ]ney/representative can immediately fax a signed G-28. An Asylum Office may accept written status requests [ ]ttorney or representative with a properly completed G-28 on file) by mail or fax. Information shall not be [ ]d in 8 C.F.R. 208.6.

[ ]n city and state officials such as probation officers and police personnel about asylum applicants. The receiving [ ] requests to the Director or her/his designated official. Pursuant to 8 C.F.R. 208.6, information about an [ ]on alone cannot be disclosed to state and local law enforcement unless the applicant consents or if permitted at [ ] Security.

[ ]plicants

[ ]n, the facts contained in an asylum application and the testimony given by an asylum applicant in support of his [ ]iality provisions in 8 C.F.R. 208.6. The confidentiality protections also extend to the Asylum Officer's [ ] it contains the essential facts in support of the applicant's asylum application. The purpose of the assessment is to document the reasoning of the decision and the facts upon which it is based for internal review, not to explain the decision to the public. Nevertheless, the Asylum Officer's assessment of the claim may be disclosed to the applicant in response to a FOIA request, or through other means. Therefore, it is important that the assessment not contain confidential information related to the asylum application of a third party, thus risking the violation of the third party applicant's right to confidentiality if the assessment is released. This does not preclude an Asylum Officer from considering relevant testimony of another asylum applicant in making a determination of asylum eligibility. Until further training materials on this issue have been developed, in cases where the Asylum Office Director and Deputy Director concur that information in one asylum application clearly contradicts the information in another asylum application and that information would change the outcome of an adjudication that would otherwise be an approval, the Asylum Office should contact HQASM-Operations for further guidance. Confidentiality may be broken by the applicants themselves, and therefore waived. For example, if two or more family members were present when the testimony was given, the confidentiality of that testimony has been broken as to the applicants who were present. Similarly, if a copy of a family member's asylum application is submitted in support of the other's asylum application, the confidentiality of the copied asylum application has been broken as to those family members.


pg 47

# III.D. DEPARTING THE U.S. BEFORE A FINAL DECISION

| **Reviewed, No Substantive Changes since 2007** | **Will be Updated, Changes Pending Review** | **Finalized Updates** |
|---|---|---|
| Sections: | Sections: 1,2,3 | Sections: |

USCIS presumes that an applicant has abandoned his or her asylum application if one (1) of the following occurs:

- The applicant departs the U.S. without first obtaining advance parole.
- The applicant departs the U.S. pursuant to advance parole and returns to his or her country of claimed persecution.

In both instances an applicant may overcome the presumption of abandonment if certain facts are established. Even if the presumption of abandonment is overcome, an applicant's return to the country of feared persecution, depending on the circumstances, may have a bearing on the applicant's ability to establish a well-founded fear. 8 C.F.R. 208.8. See RAIO Combined Training Module: Well-Founded Fear.

### 1. Discovering Departure from U.S. before an Asylum Interview

When an Asylum Office learns of an applicant's departure from the U.S. before an interview has been scheduled, Asylum Office personnel should

*ii. Applicant Did Not Establish Changed Circumstances that Materially Affect Asylum Eligibility*



If the [applicant did not establish changed circumst]ances that materially affect his or her eligibility for asylum, the application will be referred or denied based [solely on] a prior denial by EOIR. Asylum Officers are not required to include in the assessment or NOID a full accou[nt of the a]pplicant's asylum claim. The assessment or NOID must include:

- [Biographical information about the ap]plicant such as age, gender, country(ies) of birth and citizenship; date, place, and manner of last arrival and the date the I-589 was filed.
- [The protected ground](s) (race, religion, nationality, political opinion, or membership in a particular social group) relevant to [the nature] of the harm feared (e.g., "Applicant fears he will be persecuted by the LTTE on account of his political [opinion.")
- [Factors to b]e considered in the determination of whether the prohibition against filing for asylum applies.
- [A findi]ng that there were no changed circumstances, OR, if the applicant established the existence of changed [circumstances, wer]e not found to materially affect his or her asylum eligibility.
- Where country conditions are relevant to the determinations of changed circumstances, the assessment must contain a minimum of two country conditions citations supporting the finding that the applicant failed to establish a change in country conditions or that any change in country conditions materially affects the applicant's asylum eligibility. It is preferable that the two citations be from different sources, however they may be from the same issuing organization or agency if another source cannot be found.
- If country conditions information is not relevant to the determination of changed circumstances because it would not materially affect the applicant's asylum eligibility, the AO includes in the assessment the statement, "Any change in country conditions would not materially affect the applicant's eligibility for asylum because (the applicant has not established a protected characteristic, is subject to a mandatory bar, etc.)" and an explanation of the reasons for the finding of no protected characteristic, the bar, or other reason country conditions would not materially affect the applicant's asylum eligibility.

### g. HQASM/TRAQ Review

HQASM/TRAQ will review and provide feedback on each case involving a prior denial by EOIR before the decision is issued, regardless of whether the case is approved, referred, or a NOID issued. Asylum Office personnel should scan the case documents and e-mail them to the "ASYLUM QA – AFFIRMATIVE" mailbox. If the materials cannot be scanned to a file size of less than 9MB, Asylum Office personnel send them to HQASM/TRAQ via DHL at 20 Massachusetts Ave., NW, Suite 3300, Washington, D.C. 20529. Asylum Office personnel should alert HQASM/TRAQ in advance of any case sent via DHL.

### h. Preparing the Decision

Asylum Office personnel process the approval, referral, and denial of the application of an applicant who established changed circumstances materially affecting his or her eligibility for asylum after a prior denial by EOIR in accordance with regular decision procedures. See Section II.N, AO Prepares the Decision.

Asylum Office personnel process a referral or denial based solely on a prior denial by EOIR in accordance with regular decision procedures, except for the PDEC or FDEC decision codes: I6 for out-of-status (FDEC), or D6 for in-status cases (PDEC and FDEC). The referral letter for prior denial cases is Appendix 55, Referral – Prior Denial.

## 4. U.S.-Canada Safe Third Country Agreement – DRAFT

Effective December 29, 2004, the Agreement Between the Government of the United States of America and the Government of Canada Regarding Asylum Claims Made in Transit and at Land Border Ports-of-Entry provides for the return of certain categories of asylum seekers arriving in one partner country from the other partner country. The Agreement allocates responsibility for two types of asylum claims: those made at land border ports-of-entry along the U.S.-Canada border, and those made in transit by aliens being removed through one country by the other. An asylum seeker attempting to make a claim at a land border port-of-entry or upon removal while in transit will be required to return to the other country and make his or her claim there. For asylum seekers arriving at a land border port-of-entry, the Agreement provides certain important exceptions that may permit them to seek protection in the U.S. instead of Canada. For example, there is an exception for persons who have a spouse, parent, child, sibling, grandparent, aunt, uncle, niece, or nephew ("anchor relative") in the country where they are seeking asylum, so long as that anchor relative has lawful status other than visitor status, or is 18 years or older and has a pending asylum claim in that country. There is also an exception for unaccompanied minors.   A report concerning the U.S.-Canadian Agreement is available on the USCIS website by clicking on Services and Benefits, then Humanitarian Benefits, then Asylum.

The Federal Register Notice implementing the agreement (69 FR 228) is available at
http://a257.g.akamaitech.net/7/257/2422/06jun20041800/edocket.access.gpo.gov/2004/04-26239.htm.

Please note that asylum seekers who are subject to the provisions of the Agreement, and who demonstrate an exception to the Agreement, will in most cases be subject to expedited removal and will not be permitted to apply affirmatively for asylum. For additional information on this process, see the draft AOBTC Lesson Plan, Safe Third Country Threshold Screening.

# III.Q. Quality Assurance Review   p. 86

| **Reviewed, No Substantive Changes since 2007** | **Will be Updated, Changes Pending Review** | **Finalized Updates** |
|---|---|---|
| Sections: | Sections: | Sections: |

There are two entities involved in quality assurance issues within the asylum program; (1) HQASM/TRAQ; (2) the QA/T at the local Asylum Office.

### 1. HQASM/TRAQ
The nature of certain cases requires the Asylum Office to notify HQASM/TRAQ before a decision may be issued to an applicant.

#### a. Quality Assurance Referral Sheet

**1) When Principal Asylee is Subject to Termination**



d issued to the principal asylee, if the principal asylee is subject to termination. In this case, any yet adjusted will be included on the NOIT of the principal.

**Subject to Termination**

subject to termination, and not the principal asylee, only the derivative asylee will be included on the

**de Derivatives**

pursuant to an I-730 that was granted based upon the principal's asylum approval, the AO updates the I-RAPS. This adds the dependent to the principal's asylum claim.

## b. What to Include in the NOIT

Prior to the termination of a grant of asylum, the Asylum Office notifies the individual of USCIS's intent to terminate asylum status through the issuance of a Notice of Intent to Terminate (NOIT). The NOIT template used depends on whether the termination proceedings will be conducted by the Asylum Office or EOIR. Circumstances under which a USCIS asylum grant may be terminated by EOIR are discussed below. In either case, the NOIT notifies the asylee of the grounds for termination, including the specific regulation for each ground, and includes a brief summary of the unclassified supporting evidence that constitutes grounds for termination. The Asylum Office must include at least one evidentiary statement to support each termination ground presented on the NOIT. The Asylum Office does not attach reports, case documents, or any other documentary evidence to the NOIT, but may summarize statements or findings from such documents as part of the evidentiary statement.

Generally, the Asylum Office may disclose to the asylee unclassified evidence constituting or supporting grounds for termination, including a brief description of information from unclassified materials from the Department of State or other government agencies. If there is a question as to what may be disclosed to the asylee in notifying him or her of the grounds for termination, HQASM should be contacted.

## c. Classified Information and Other Information with Disclosure Restrictions

### 1) Classified Information

In some cases, the adverse information from either an overseas or domestic source that constitutes grounds for termination will include classified terrorist or criminal information supplied by the Department of State or other sources. An AO must not disclose the details of the classified information to the asylee, either in the NOIT or later at the termination interview, in order to protect the security of the classified operation or the safety of a confidential informant. The AO who conducts the interview and reviews the information must have the proper security clearance according to the level of the classified information.

### 2) Information from Overseas Source

If the information is from an overseas source, the transmittal memorandum from HQASM to the Asylum Office will suggest the appropriate disclosure of information, as needed, including suggested language to be included in the NOIT to balance security concerns with the need to provide an asylee with a meaningful opportunity to rebut. HQASM will also be available to discuss the issue with the interviewing AO. If the information is from a domestic source, the Asylum Office Director or his or her representative will liaise with HQASM to inform the AO what information may be disclosed, and to what degree of detail.

### 3) Information from Confidential Informant

An AO may not at any time disclose the identity of a confidential informant (or information that could reasonably lead to discovery of the identity of the informant), or the nature of an undercover or otherwise classified (e.g., terrorist or security) operation.

### 4) Information About Third Parties

The Asylum Office may not disclose information about third parties in the NOIT that is not publicly available. If the material from another agency contains information about a third person, the Asylum Officer should summarize the document, omitting the information about that individual and redact those portions of the document, if it is mentioned in the evidentiary statement on the NOIT.

### 4) Informant Letter

The Asylum Office should treat any informant letter as a lead, and follow up to obtain independent proof or evidence of the allegation in the informant letter. When it is possible to independently confirm the allegation through a system check or other investigation, the Asylum Officer will refer to the records or the investigation that confirmed the allegation, and not disclose the informant letter as the source of the lead.

## d. Issuing the NOIT and Recording Issuance

When the Asylum Office serves the NOIT, Asylum Office personnel enter the date of service in the ISSUE DATE – NOIT ONLY field on the Termination of Asylum (REVO) screen. When Asylum Office personnel enter a date in the ISSUE DATE – NOIT ONLY field, an update indicating "NOIT ISSUED" will appear on the Case Status (CHIS) screen. When the Asylum Office completes termination review of a case and determines that NOIT issuance is not appropriate, the Asylum Office records completion of the review in the appropriate ECN log.

## e. Scheduling the Termination Interview and Recording the Date

Upon service of the NOIT, Asylum Office personnel also enter an interview date, which must be at least 30 days after the service of the NOIT, in the TERMINATION INTERVIEW DATE field on the REVO screen. Entry of an interview date is required at the same time that the date of NOIT issuance is entered on the REVO screen. When Asylum Office personnel enter a date in the TERMINATION INTERVIEW DATE field, an update indicating "TERMINATION INTERVIEW" will appear on the CHIS screen.

## f. Attachments to the NOIT

pg 97

Asylum Office personnel attach a Legal Provider List to the NOIT when sending it to the individual. A copy of the Optional Waiver of Rebuttal Period and Waiver of Opportunity to Rebut must also be attached to the NOIT.

### g. Address and Mailing Instructions for the NOIT

The NOIT must be personally served on the asylee within the meaning of 8 C.F.R. 103.5a(a)(2). This includes mailing a copy by registered or certified mail, return receipt requested, to the asylee's last known address. See Section III.A above for guidance on determining an asylee's most recent address. Because a significant amount of time may have passed since the asylum approval, Asylum Office personnel review the A-file, RAPS, CLAIMS, AR-11, and other available DHS systems for the most current address for the NOIT. If the Asylum Office has information indicating that the last address of record for the asylee is not valid and the Asylum Office has an alternate address from a reliable non-USCIS system or entity, the NOIT may be sent to the alternate address, but if an alternate is used, the NOIT must be sent to the asylee using Restricted [redacted] mail with return receipt.

### [redacted] Period and Rebuttal/Waiver

[redacted] Office conducts the termination proceedings, the termination interview is set for at least 30 days after the date of [redacted] may waive this 30-day period and request an earlier interview, or may waive the interview entirely and admit the [redacted]. A written waiver form is included as an attachment to the NOIT for this purpose. If the Asylum Office receives [redacted] an earlier interview, or a waiver of the interview, Asylum Office personnel enter the date received in the DATE [redacted] the REVO screen. If the Asylum Office receives a request for an earlier interview, Asylum Office personnel may [redacted] ys after the date of mailing of the NOIT in the TERMINATION INTERVIEW DATE field after Asylum Office personnel [redacted] an earlier interview was received in the DATE REBUT/WAIVER RECVD field. When Asylum Office personnel enter a [redacted] R RECVD field, an update indicating "REBUTTAL/WAIVER TO NOIT RECEIVED" will appear on the CHIS screen.

## 5. FOIA Requests During Termination Proceedings

After the issuance of a NOIT, an asylee or his or her representative may file a request for information in the asylee's file pursuant to the Freedom of Information Act (FOIA). Termination proceedings are to be delayed until the asylee has been provided a response to his or her request, and the file is returned to the Asylum Office. If the Asylee or his or her representative request a postponement of termination proceedings in order to file or receive a response to a FOIA request, the Asylee or his or her representative will provide the asylum office with a copy of the receipt of the FOIA request and/or the NRC Control Number assigned to the request. While the Asylum Office is required to delay termination proceedings until the Asylee or his or her representative receives a response to the initial FOIA request, the Asylum Office is not required to delay termination proceedings for a FOIA appeal. Upon receipt of the FOIA request, the Asylum Office should place the case on, "FOIA Hold" in RAPS.

## 6. Conducting the Termination Interview

### a. Placing Individuals under Oath

The AO places the individual, dependent family members, and the interpreter, if any, under oath. The AO, asylee, and interpreter, if any, complete a Record of Applicant and Interpreter Oaths (Appendix 2).

### b. Request Interpreter Monitor

If the asylee brings an interpreter to the asylum interview, the AO will request an interpreter monitor as per regular procedure for use of interpreter monitors.

### c. Non Adversarial Interview

The nature of the termination interview is non-adversarial, and the conduct of the interview is consistent with the procedural aspects of an asylum interview as outlined in Section II.J, AO Conducts an Asylum Interview, except that the termination interview need only explore issues relevant to termination of asylum.

## 7. Making a Determination

### a. Establishing Preponderance

USCIS has the burden of establishing that a preponderance of the evidence supports termination. For guidance on the preponderance of the evidence standard, see RAIO Combined Training Course: Evidence.

### b. Fraud based Termination and New Claim

If the reason for termination is based upon fraud, an AO may not affirm the grant of asylum based on a new "true" story offered by the alien for the first time at the termination interview. In most cases the Asylum Officer will not have a new I-589 reflecting the new "true" story. After having committed fraud in the affirmative system, the appropriate forum for the individual to present a new asylum claim is in defensive proceedings where adversarial methods such as cross-examination can further test the veracity of the new story.

### c. Asylee Appeared for the Interview

#### 1) AO makes Recommendation

If the individual appears for the interview, the AO makes a recommendation either to terminate or to continue the individual's asylum status based upon evidence presented. The Asylum Officer prepares a memorandum for the file recommending either termination or continuation of asylum status, depending upon whether a preponderance of the evidence supports termination. The memo includes a summary of the asylee's testimony, the original claim, the adverse information considered, and an analysis of why asylum status should be terminated or continued.

pg 98