# Attachment CC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KAPS KAPENDE, ANNIE KASEKA, and CATHOLIC CHARITIES, ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 18-1238 (ABJ) |
| v. ) ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ) ) ) | |
| Defendant. ) | |

## DECLARATION OF JILL A. EGGLESTON

I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Associate Center Director in the Freedom of Information and Privacy ("FOIA/PA") Unit, National Records Center ("NRC"), United States Citizenship and Immigration Services ("USCIS"), within the United States Department of Homeland Security ("DHS"), in Lee's Summit, Missouri. I have held the position of Associate Center Director since February 4, 2008. Prior to joining USCIS, I served for 19 ½ years as Associate General Counsel for the Defense Finance and Accounting Service ("DFAS") of the U.S. Department of Defense. As part of my duties with DFAS, among other things, I provided legal advice to the agency on the release of information sought under the FOIA and PA.

2. As Chief FOIA Officer for USCIS, I supervise approximately 225 information access professionals at the NRC who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records

and information pursuant to FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3. Through the exercise of my official duties as Associate Center Director, I am personally familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records. More specifically, I am personally familiar with USCIS's procedures and actions taken in response to the FOIA requests at issue in this case. I was responsible for overseeing and coordinating USCIS's responses to these requests.

4. This declaration is submitted in support of litigation in this action where Plaintiffs challenge USCIS's withholdings of exempt material pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5").[1] The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

### USCIS'S RESPONSE TO PLAINTIFFS' FOIA REQUESTS

5. Plaintiff Catholic Charities submitted a FOIA request which was received by USCIS on or about July 12, 2017 (a copy of which is attached as Exhibit 8 to Plaintiffs' Complaint, Dkt. No. 1-9). The FOIA request sought the following documents concerning Kaps Kapende ("Plaintiff Kapende"): "the notes of the asylum officer; the assessment written by the asylum officer; [and] any material used by the asylum officer, but not given to him by the individual named above." *See* Dkt. No. 1-9 at 2. USCIS responded to the FOIA request on or about December 31, 2017, and released to Plaintiff Catholic Charities 145 pages in full and 26

---

[1] Since the Exemption 5 withholdings are the only thing at issue in this case, I have not addressed herein any other matters related to the Subject FOIA Requests, including, for example, specifics concerning the search or the applicability of exemptions other than Exemption 5.

2

pages in part. Twelve pages were withheld in full. On February 23, 2018, in response to Plaintiff Catholic Charities' administrative appeal, USCIS made a discretionary release of an additional 3 pages in part, and 1 page in full. Information released pursuant to the administrative appeal included portions of the asylum officer's assessment to refer which had initially been withheld in full pursuant to Exemption 5.

6. Plaintiff Catholic Charities submitted a FOIA request which was received by USCIS on or about September 13, 2017 (a copy of which is attached as Exhibit 9 to Plaintiffs' Complaint, Dkt. No. 1-10). The FOIA request sought the following documents concerning Annie Kaseka ("Plaintiff Kaseka"): "a copy of the notes of the asylum officer; a copy of the assessment written by the Asylum Officer; a copy of the evidence relied upon by the Asylum Officer, not supplied by the applicant; [and] a copy of everything in her file." *See* Dkt. No. 1-10 at 2. USCIS responded on February 22, 2018, and released to Plaintiff Catholic Charities 378 pages in full and 25 pages in part. Six pages were withheld in full. On April 4, 2018, in response to Plaintiff Catholic Charities' administrative appeal, USCIS made a discretionary release of an additional 2 pages in part, including portions of the assessment to refer which had initially been withheld in full pursuant to Exemption 5.

## EXEMPTION 5 WITHHOLDINGS

7. I understand that the only issue in this case concerns USCIS's withholding, pursuant to Exemption 5, of portions of two assessments. Specifically, USCIS withheld portions of a three-page Assessment to Refer memo dated June 12, 2017, concerning Plaintiff Kapende (the "Assessment to Refer Memo") and a four-page Assessment to Grant Asylum memo dated June 14, 2011, concerning Plaintiff Kaseka (the "Assessment to Grant Asylum Memo") (collectively, the "Subject Documents"). As detailed below, portions of the Subject Documents

3

were withheld pursuant to Exemption 5 because they are intra-agency, pre-decisional, deliberative memos prepared by Asylum officers subject to approval by a Supervisory Asylum officer ("SAO"). The portions released to the Plaintiffs included: the memo header (which includes pertinent identification information), general facts of the case as provided by the applicant, information about the applicant's counsel, and general administrative facts (such as when the application was filed, etc.).

8. The Assessment to Refer Memo serves as a recommendation by the interviewing asylum officer for USCIS's final decision for an asylum applicant. Once the Assessment to Refer Memo is completed, it is reviewed for legal sufficiency by an SAO. If the asylum officer's reasoning and recommendation is accepted by the SAO, the Assessment to Refer Memo is initialed by the SAO and placed in the applicant's file (the "A-file"). Once completed, an agency decision, known as a Referral Notice, is issued by the USCIS Asylum office to the asylum applicant and to his or her counsel. The applicant's A-file is then forwarded to Immigration and Customs Enforcement ("ICE") for docketing and litigation. Upon referral to ICE, the Referral Notices are issued by the USCIS Asylum Office to asylum applicants (and/or their attorneys) subsequent to the completion of the asylum officer's Assessments to Refer and informs the applicant that he/she is being referred to an immigration judge for a final decision and explains, in narrative form, the basis for the referral. In this case, Plaintiff Kapende's Assessment to Refer Memo was prepared by an Asylum officer in a narrative format, explained the officer's reasons for recommending that asylum be denied, discussed legal justifications for a denial determination, and included other reasons to refer the case to ICE.

9. The Assessment to Grant Asylum Memo generally serves as a recommendation for USCIS's final decision for asylum seekers. Once the Assessment to Grant Asylum Memo is

completed, it is reviewed for legal sufficiency by an SAO. If the recommendation is accepted, the memo is initialed by the SAO and placed in the applicant's A-file. Once completed, an agency decision, known as an Asylum Approval memo, is issued by the USCIS Asylum office to the asylum applicant and to his or her counsel. This deliberative decision making and documenting process within the Assessment to Grant Asylum Memo is an essential part of the USCIS deliberative process that may lead to the ultimate determination to approve an alien's application for asylum, and refer the alien for next steps in the immigration process. In this case, Plaintiff Kaseka's Assessment to Grant Asylum Memo was prepared by an Asylum officer in a narrative format, explained the officer's reasons for recommending that asylum be granted, discussed legal justifications for an approval determination, and included other reasons to grant the asylum application.

10. The Subject Documents were drafted by asylum officers in order to explain the basis for their recommendations to their SAOs. I am familiar with recent litigation concerning similar withholdings, including *Anguimate v. DHS*, 918 F. Supp. 2d 13 (D.D.C. 2013); *Abramyan v. DHS*, 6 F. Supp. 3d 57 (D.D.C. 2013); *Abtew v. DHS*, 47 F. Supp. 3d 98 (D.D.C. 2014), aff'd, 808 F.3d 895 (D.C. Cir. 2015); *Gosen v. DHS*, 118 F. Supp. 3d 232 (D.D.C. 2015); and *Bayala v. DHS*, 264 F.Supp.3d 165, 173 (D.D.C. 2017). The Subject Documents follow the same form, serve the same purpose, and include the same type of analysis as the assessments at issue in those cases. The portions of the assessments withheld pursuant to Exemption 5 are both predecisional and deliberative, and protect the process by which asylum officers analyze information gleaned from asylum applicants during interviews. Public disclosure of the withheld information will lead to asylum applicants tailoring their applications and interview responses to what they believe will tip an asylum officer's decision in their favor. Public disclosure of the

asylum officer's deliberative process will hinder the Agency's ability to make determinations solely on the merits of an asylum claim. The manner by which an asylum officer makes a recommendation is the type of material Exemption 5 is designed to protect from disclosure.

### Segregation

11.   After carefully reviewing the Subject Documents, I have determined that no portion of the withheld sections can be reasonably segregated and released without revealing the deliberative, decision-making nature of these intra-agency documents. Release of any information from the redacted sections would reveal information that is exempt from FOIA disclosure, for the reasons stated above. There is no non-exempt information that can be disclosed.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Lee's Summit, Missouri on this 20th day of September 2018

JILL A. EGGLESTON
Associate Center Director
Freedom of Information Act and Privacy Act Unit
USCIS National Records Center