## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AMARA EMUWA,** *et. al*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 20-1756 (TNM) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** | ) ) ) ) | |
| Defendant. | ) ) | |

### **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs filed four FOIA requests seeking copies of certain immigration records pertaining to themselves, specifically, "a copy of the assessment written by the Asylum Officer; a copy of the notes of the asylum officer; and a copy of the materials the asylum officer consulted, that were not provided by this individual." *See* ECF No. 1. As set forth in Defendant Department of Homeland Security's ("DHS") motion for summary judgment and declaration of Jill Eggleston, Defendant has disclosed all non-exempt responsive records to Plaintiff. Plaintiffs' opposition to DHS's motion, *see* ECF No. 15, fails to offer any substantive rebuttal of DHS' withholdings, offering instead rhetorical questions and general outrage at the U.S. asylum process. Therefore, there is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law.

### **ARGUMENT**

#### **I.    Plaintiffs' Arguments Regarding DHS' Declarant are Unfounded**

Plaintiffs attempt to discredit DHS' declarant by pointing to alleged inconsistencies in past declarations submitted in cases (all argued by Plaintiffs' counsel). First, Plaintiffs argue that

1

Jill Eggleston, the Associate Center Director in the Freedom of Information and Privacy Act Unit of the National Records Center within United States Citizenship and Immigration Services ("USCIS"), lacks personal knowledge of the asylum process and thus cannot be the declarant of this case, as per Rule 602 of the Federal Rules of Evidence. ECF No. 15 at 13-14. However, as is evidenced by vast case law, a declaration of an agency official who is knowledgeable about how information is processed and familiar with the documents in question has been found to satisfy the personal knowledge requirement for summary judgment declarations. *See, e.g.*, *Spannaus v. Dep't of Just.*, 813 F.2d 1285, 1289 (4th Cir. 1987) (holding that declarant's attestation "to his personal knowledge of the procedures used in handling [the] request and his familiarity with the documents in question" is sufficient); *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012) ("[a] declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records and thus is not required to independently verify the information contained in each responsive record"); *Am. Mgmt. Servs., LLC v. Dep't of Army,* 842 F. Supp. 2d 859, 866-67 (E.D. Va. Jan. 23, 2012) (finding declarant adequate where "it is apparent from [the declarant's] specific averments regarding personal knowledge, his position in the [agency], his role in this matter, and the contents of the declaration itself that [he] has personal knowledge of the procedures used in handling [plaintiff's] request and familiarity with the documents at issue"), *aff'd*, 703 F.3d 724 (4th Cir. 2013); *Barnard v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) ("FOIA declarants may include statements in their affidavits based on information that they have obtained in the course of their official duties"); *Schrecker v. U.S. Dep't of Just.*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (rejecting argument that affidavit was hearsay because affiant was "responsible for the FBI's compliance with FOIA litigation and is therefore not merely

speculating about the FBI activities"), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003). Moreover, Plaintiffs' purely speculative claims about Ms. Eggleston's purported lack of asylum officer knowledge are not sufficient to overcome the presumption of good faith accorded to agency affidavits. *See, e.g.*, *SafeCard Servs. Inc. v. U.S. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (finding plaintiff's "purely speculative" claims concerning adequacy of agency's search "support neither the allegation that [agency's] search procedures were inadequate, nor an inference that it acted in bad faith"); *Mingo v. Dep't of Just.*, 793 F. Supp. 2d 447, 452 (D.D.C. 2011) ("An agency's declarations are 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims'" (quoting, in part, *SafeCard Servs.*, 926 F.2d at 1200)).

Secondly, Plaintiffs attempt to discredit Ms. Eggleston as "confused and inconsistent" in this case by comparing her declaration in this case to past declarations in other D.C. cases on this topic brought against DHS by Plaintiffs' counsel. ECF No. 15 ¶ 17-18. However, the past declarations are distinguishable from this case. In *Gatore v. Dep't of Homeland Security*, 15-cv-459, which is still ongoing, Plaintiff only challenged USCIS' withholding of factual introduction paragraphs found in an asylum assessment, arguing that those paragraphs are reasonably segregable. *See Gatore*, 15-cv-459, ECF No. 1. Therefore, Ms. Eggleston's declaration focused mainly on those factual sections, arguing that those factual sections were protected because they represented how asylum officers "prioritize then analyze information" and facts from asylum interviews in writing the assessments. *Id.* at ECF No. 21-1 ¶ 19. Notably in this case, Plaintiffs did not challenge the withholding of the rest of the asylum assessment under the deliberative process privilege.

In *Kapende v. Dep't of Homeland Security*, many of the same arguments from the instant case were made but judgment was entered in favor of Defendant regarding the withholding of the

3

asylum assessment under the deliberative process privilege. No. CV 18-1238 (ABJ), 2019 WL 1359285, at *6 (D.D.C. Mar. 26, 2019). USCIS' decision to release the assessments in full during the Appeals process was a discretionary decision in a specific scenario, and caused the District of Columbia Circuit Court of Appeals to moot the appeal. *Kapende v. Dep't of Homeland Sec.*, No. 19-5080, 2020 WL 2610873, at *1 (D.C. Cir. Apr. 17, 2020). In *Kapende*, Ms. Eggleston's declaration focused on the harm of disclosure ("asylum applicants tailoring their applications and interview responses to what they believe will tip an asylum officer's decision in their favor"), and that public disclosure of the assessment would hinder the agency's "ability to make determinations solely on the merits on the asylum claim." 18-cv-1238, ECF No. 13-1 ¶ 10.

In the instant case, Plaintiffs focus more on the foreseeable harm requirement of the FOIA (although in many other respects the Complaint is word-for-word identical to *Kapende* and *Gatore*). As such, Ms. Eggleston's statements are similar to but distinguishable from those made in *Kapende*, which contained a more broad challenge without the emphasis on the foreseeable harm nexus. "Tailoring an application to tip an asylum officer's decision" is a form of fraud, a problem which USCIS has fought to curb since the release of a report from the United States Government Accountability Office that noted the steep increase in asylum claims made and the agency's limited capacities to detect asylum fraud. *See* U.S. Gen. Accounting Office, GAO-16-50, *ASYLUM: Additional Actions Needed to Assess and Address Fraud Risk* (2015), *available at* https://www.gao.gov/assets/680/673941.pdf. In order to make the best decision for the agency, asylum officers require a place in the immigration record to freely express candid opinions, deliberations, analysis, and recommendations (which is discussed below in greater detail regarding the deliberative process privilege). This is a more explicit explanation of why USCIS has determined that the assessment portions are able to be withheld under the deliberative process

4

privilege in light of the foreseeable harm analysis, but one that dovetails with the declarations from *Kapende* and *Gatore*.

In short, Ms. Eggleston's declarations fully and adequately explain contents of documents and redactions placed on the documents, which are based on personal knowledge and are tailored to the challenges stated in the complaints and thus, do not exhibit inconsistencies with past declarations. Plaintiffs unsuccessfully attempt to split hairs and parse language to showcase alleged inconsistencies, when in fact, all these statements revolve around the same common themes. Moreover, Plaintiffs' unfounded and frankly desultory claims such as "Ms. Eggleston does not claim to have ever in her life talked to an asylum officer, or anyone who worked in an asylum office," ECF No. 15 at 14, or that she is "confused" or "inconsistent", *id.* at 18, 30, 31, 36, are irrelevant or lack factual or legal basis, and should be denied.

## II.     DHS Properly Applied the FOIA Exemptions

### i.     *Attorney-Work Product Privilege*

Defendant mistakenly misnamed the privilege asserted in their motion for summary judgment, ECF No. 14 at 11-12, and corrects it here. Defendant asserts that under Exemption 5, the attorney-work product privilege (not attorney-client privilege) protects documents and other memoranda prepared by an attorney in contemplation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). The privilege extends to administrative proceedings, such as immigration court. *See, e.g., Schoenman v. Fed. Bureau of Investigation*, 573 F. Supp. 2d 119, 143 (D.D.C. 2008) (upholding use of privilege for documents "created by an attorney in the context of an ongoing administrative proceeding that eventually resulted in litigation"); *Nevada v. Dep't of Energy*, 517 F. Supp. 2d 1245, 1260 (D. Nev. 2007) (noting that privilege applies to administrative proceedings,

as long as they are "adversarial"); *McErlean v. Dep't of Just.*, No. 97-7831, 1999 WL 791680, at *7 (S.D.N.Y. Sept. 30, 1999) (allowing withholding of documents prepared by attorneys in anticipation of INS deportation proceeding), *amended* (S.D.N.Y. Oct. 29, 1999)).

Here, withholdings pursuant to Exemption 5, under the attorney-work product privilege, were applied to one document to protect a legal analysis applied to the facts in an applicant's file and to protect information regarding ongoing or potential litigation concerning Special Immigrant Juveniles Status matters. The sections withheld were entitled "Section V. Credibility Determination/Evidence Assessment; Section VI. Focused Legal Analysis; Section VII. Bars to Asylum." *See* DHS Vaughn index, p. 8. This information was protected under Exemption 5, because the material was prepared by an attorney in anticipation of ongoing or potential litigation.

  *ii. Deliberative Process Privilege*

In its Motion for Summary Judgment, ECF No. 14 at 12-15, Defendant argues that the deliberative-process privilege is intended to protect both deliberative materials and processes, and also to prevent injury to the quality of agency decisions by encouraging open, frank discussions on matters of policy between subordinates and superiors. *See Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974); *N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 151-153 (1975); Coastal States Gas Corp,* 617 F.2d at 866; *Citizens for Resp. and Ethics in Washington v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Group Inc. v. Internal Revenue Serv.*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). As explained in the declaration of Jill Eggleston and DHS's *Vaughn* index, ECF No. 14-1 and 14-2, DHS invoked the deliberative process privilege to protect DHS's decision-making processes, specifically in regard to the analysis sections of the assessments that contain an asylum officer's candid analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum.

As stated in Section I, Plaintiffs' counsel has brought this same Complaint with some variations before the Court before, and in every instance, the Court has held that the analysis section of the assessment is pre-decisional and deliberative, and is protected from disclosure by the deliberative process privilege under FOIA Exemption 5.  ECF No. 14 at 14-15; see *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015) ("[T]he Assessment to Refer was both pre-decisional and deliberative"); *Gatore v. U.S. Dep't of Homeland Sec.*, 292 F. Supp. 3d 486, 490 (D.D.C. 2018) ("[T]he parties do not appear to dispute that at least some portion of each assessment is protected from disclosure pursuant to the deliberative process privilege of Exemption 5."); *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 173 (D.D.C. 2017) ("The Court finds that the Assessment to Refer is, at least in part, exempt under the deliberative process privilege contained in Exemption 5."); *Anguimate v. U.S. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 18-19 (D.D.C. 2013) (holding that the entire assessment to refer is subject to the deliberative process); *Abramyam v. U.S. Dep't of Homeland Sec.,* 6 F. Supp. 3d 57, 67 (D.D.C. 2013) (holding that the entire assessment to refer is subject to the deliberative process); *see also Gosen v. U.S. Citizenship & Immigr. Servs,* 118 F. Supp. 3d 232, 237 (D.D.C. 2015) (holding that the purely factual introduction paragraphs of the assessment must be released but holding that "the requested [assessment to refer] are deliberative.") (case not brought by Plaintiffs' counsel).  Defendant remains unaware of any case holding that otherwise deems the assessment portion releasable.

Moreover, Plaintiffs' Opposition Motion defeats their own arguments.  The assessment written by an asylum officer after an asylum interview is not a final agency decision; it is merely the only protected place for an asylum officer to record their *candid* analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum.  *See*

7

Eggleston Decl., ECF No. 14-2 ¶ 23.  Plaintiffs resort to fearmongering regarding inappropriate use of asylum assessments in immigration court, claiming that these assessments are secret documents that are used against aliens in immigration court and thus, in not disclosing them, Defendant causes real harm to Plaintiffs.  ECF No. 15 at 6-7.  However, later in the same motion, Plaintiffs admit that the final agency decisions on asylum claims, which are based on asylum assessments and contain much of the same information, are given directly to an alien in their Record of Determination, Notice of Intent to Deny, and/or Notice of Intent to Terminate.  *Id.* at 20-21.  These documents contain some – but not all – of the precisely tailored reasons and facts that USCIS relied upon in the assessments to refer.  Moreover, aliens can submit a FOIA request for the factual introductory paragraphs from the assessments that the asylum officer relied on in drafting the analysis documents.  Lastly, aliens are free to present their own information and evidence directly to the immigration judge during immigration proceedings, or in appeals to the Board of Immigration Appeals or in Circuit Court.   In short, Plaintiffs have all the information that the government relied upon, as well as the ability to provide their own evidence and rationale to judges and; thus, can evidence no harm in withholding the analysis section of an assessment.

     In fact, this very argument has already been rejected by the Court in *Kapende*.  In that case, Plaintiffs argued that because USCIS issues a Notice of Intent to Deny, "no harm will result if plaintiff's [] Assessment [to Grant Asylum][1] is released in its entirely." 2019 WL 1359285, at *6.  The Court disagreed with plaintiffs' argument [of no harm] as plaintiff failed to cite to any authority in support of their position.  *Id.*

     Lastly, to demonstrate that disclosure of assessments to refer cannot cause harm, Plaintiffs

---

[1] The assessment to grant asylum is the same document as the assessment to refer in terms of content and structure.

point to one case from 2005, *Singh v. Gonzales,* 403 F.3d 1081, 1087 (9th Cir. 2005), where the government disclosed an assessment in an opinion, and also point to the past USCIS practice of releasing assessments in full, which ceased in 2005.  However, past agency actions do not bar USCIS from changing their policy in applying discretionary withholdings pursuant to FOIA Exemption 5 deliberative process privilege in the present.  For example, as noted above, the increase in asylum applications and subsequent increase in fraud in those applications required USCIS to change their previous FOIA policy to protect the quality of agency decisions by encouraging open, frank discussions on matters of policy between subordinates and superiors – exactly the type of deliberations that FOIA Exemption 5 is meant to protect.

Plaintiffs' use of rhetorical questions and dissection of plain language does not change the fact that USCIS has always been consistent in its rationale: to protect the literal written deliberations of USCIS employees making decisions in asylum cases, to prevent employees from feeling free to write their candid opinions down, and to prevent disclosure to fact patterns that trigger USCIS granting asylum, thus giving a roadmap to anyone seeking to fraudulently exploit the process.  Plaintiffs' motion instead showcases a frustration with the entirety of the U.S. asylum system.  While Defendant acknowledge Plaintiffs' counsel's passion for fairness in the asylum process, this instant litigation was brought under FOIA, which cannot change or dictate how the U.S. immigration system functions, nor can that system somehow change the case law behind the FOIA exemptions claimed by Defendant.  Therefore, Plaintiffs' claims regarding Defendant's withholdings should be denied.

### III.     Plaintiffs' Policy-or-Practice Claims Remain Unfounded

Plaintiff Louise Trauma Center alleges that its purported policy-or-practice claim is well founded due to the FOIA Improvement Act of 2016.  However, portions of this claim are found at

ECF No. 1 ¶ 260-265, and the same policy-or-practice claim has been made almost verbatim by Plaintiffs' counsel with the same result, in the following cases: *Abtew v. Dep't of Homeland Sec.*, 13-cv-1566, ¶1i; *Bayala v. Dep't of Homeland Sec.*, 14-cv-0007, ECF No. 1 ¶ 5e; *Gatore*, 15-cv-459, ECF No. 1 ¶ 58-59; *Kapende*, 19-cv-2682, ECF No. 1 ¶ 45-46; and *Mulangu v. Dep't of Homeland Security*, 19-cv-2682, ¶¶ a-6, a-7, a-8. [2] In each of these cases, the Court has held firmly that the analysis portion of the assessment is protected under the deliberative process privilege.

This policy-or-practice claim should be dismissed because Plaintiff cannot show that USCIS has (1) "improperly," (2) "withheld," (3) "agency records" from them. *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). There is no evidence of any unlawful withholdings by USCIS, except unsubstantiated claims made by the Plaintiffs and their counsel. The reality is there are myriad cases holding that USCIS properly applies FOIA Exemption (b)(5) to withhold the analysis sections of asylum assessments, and that the agency has articulated adequate foreseeable harm for to justify those withholdings. Plaintiffs' assertion that the foreseeable harm standard is that "the asylum officer, by checking boxes on a computer, creates the referral notice" does not lend support to the claim.

Likewise, Plaintiffs' request that the Court recognize or correct the alleged "negligent and inadequate training" that USCIS gives its FOIA processors is unfounded. First, the FOIA's statutory language limits relief in a FOIA action to the disclosure of improperly withheld records to a particular requester, and the award of attorney's fees and costs. 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552(a)(4)(E)(i); *see also Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (holding that remedial provision of FOIA limits relief to ordering

---

[2] The only difference here is that the term "asylum offices" has been replaced with "FOIA processors."

disclosure of documents to FOIA complainant). To the extent that the Plaintiffs are asking the Court to somehow alter USCIS' FOIA training program, the Court lacks the ability under FOIA. Second, Plaintiffs in fact provide examples of the training that USCIS already gives its FOIA processors on foreseeable harm, but argue that in comparison to a nonexistent standard, it is negligent and inadequate. There is no mandated standard for adequate training on foreseeable harm, and the training that USCIS gives its FOIA processors is adequate and complies with the law. Thus, the claim has no factual basis and thus should be denied.

Lastly, Plaintiffs' counsel has brought essentially the same lawsuit against Defendant time and time again, with variations on the focus of the deliberative process privilege argument.[3] However, the Court has always held firmly that the analysis portion of the assessment is protected under the deliberative process privilege. This repeated litigation of the same issue is an unnecessary waste of government resources, and a potential pathway to create judicial confusion on an already-decided issue.

## CONCLUSION

For the reasons set forth above, DHS respectfully requests that this Court grant summary judgment in favor of Defendant as to all claims in this case.

\*          \*          \*

---

[3] *See Anguimate*, 918 F. Supp. 2d 13; *Abramyam,* 6 F. Supp. 3d 57; *Abtew*, 808 F.3d 895; *Bayala*, 264 F. Supp. 3d 165; *Gatore,* 292 F. Supp. 3d 486; and *Kapende*, No. CV 18-1238 (ABJ), 2019 WL 1359285.

Date: November 20, 2020      Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

By:   /s/*Kristin D. Brudy-Everett*
KRISTIN D. BRUDY-EVERETT
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C. 20530
(202) 252-2536
Kristin.Brudy-Everett@usdoj.gov