UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMARA EMUWA, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1756 (TNM) |
| | ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## REPLY OF PLAINTIFFS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiffs now submit this Reply, in support of their Motion for Summary Judgment [ECF #16].

DHS does not contest, let alone mention, the Statement of Facts As to Which There is No Genuine Issue, ECF # 16-1. DHS admits its inconsistent history concerning asylum office assessments: until 2005, DHS released entire assessments without hesitation; but then, without explanation, the policy was changed, and no part of assessments were released.

DHS admits that its representative, Ms. Eggleston, says different things at different times. Her three declarations [ECF # 15-7; # 15-8, and # 14-2] are indeed different from each other.

DHS admits that it regularly discloses other similar documents to asylum applicants. It discloses Records of Determination, Notices of Intent to Deny, and Notice of Intent to Terminate. These documents "contain some-but not all-of the precisely tailored *reasons* and facts that USCIS relied upon in assessments to refer," states the DHS in ECF # 19, at page 8 of 12.

1

[emphasis added].  The DHS apparently suffers no harm when it releases the above documents. This is evidence that it suffers no harm when asylum officer assessments are released.

DHS twice cited *Kapende v. DHS,* 2019 WL 1359285. That case, however, was vacated by the D.C. Circuit: 2020 WL 2610873 (April 17, 2020).

DHS cites cases that relied on the FOIA as it existed *before* the June 30, 2016 amendments. 5 U.S.C. § 552 was amended to include a new sub-section: §§ (a)(8)(A). DHS cites cases that do not mention this new sub-section.

DHS is silent about the duty to segregate out, and release, parts of an otherwise exempt document. Inside assessments to refer are sources of authority, such as particular State Department reports. Those sources should be released.

DHS lumps all of the assessments together and does not explain how particular contents are linked to a specific harm. An agency must "describe *each* document or portion thereof withheld." *Shapiro v. U.S. Dep't of Justice,* 2020 WL 3103 946, at *1 (D.D.C. June 11, 2020) (cleaned up) [emphasis in original].

DHS complains that "Plaintiffs' counsel has brought essentially the same lawsuit against Defendant time and time again." ECF #19, at page 11 of 12.  Not true. After the FOIA was amended in 2016, counsel brought one case: *Kapende v. DHS.* Counsel prevailed in that case: the entire assessment was released. The fact of release undermines the DHS claim that it suffers harm upon release of an assessment.

**MS. EMUWA'S CLAIM, SET FORTH IN THE FIRST CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.**

The First Cause of Action, concerning Ms. Emuwa, begins at ¶ 217 of the Complaint, ECF. No. 1. DHS does not mention this in their ECF # 19.

*The asylum office assessment is the final decision of the agency*

DHS does not argue to the contrary. In *Abtew v. DHS,* 808 F.3d 895, 899 (D.C. Cir. 2015), the Court ruled that the assessment before it was protected by the deliberative process privilege, because it was not the final decision of the agency. However, as stated in footnote 1: "…we do not rule out the possibility that initialing a memo together with other circumstances might indicate agency adoption of that memo in some cases."  Ms. Emuwa does present that evidence: she argues that the asylum office assessment is the final decision of the agency. *See* ECF # 15-1, Plaintiffs' Statement of Facts, #4: "The Asylum Officer is the person who creates the Referral Notice, by checking boxes on a computer."  The DHS presents no evidence or argument to the contrary.

*DHS disclosed entire assessments from 1998-2005*

DHS does not argue to the contrary. Plaintiffs argued that DHS changed this policy "without explanation."  Ms. Eggleston says nothing about this. Counsel for DHS suggested, ECF #19 at page 9 of 12, that DHS made this change because of an "increase in fraud," citing to a GAO study in 2015. [The GAO study is mentioned at page 4 of ECF #19].  Statements of counsel are not evidence. Counsel does not explain how DHS made a decision in 2005 based on a study that did not exist until ten years later.

The GAO study examined asylum applications from the years 2010 through 2014. During that time period, there were about 270,000 applications. 374 were terminated for fraud. 374/270,000 = .0001 percent.  The GAO study, at page 73 of 101, found that the number of terminations *decreased* during the time period. In 2010, 103 cases were terminated; in 2014, 34 cases were terminated. *See* Exhibit 1, attached hereto, which contains excerpts from the study.

"Asylum terminations due to fraud are not common and have decreased in recent years." *Id.* at page 73 of 101.

DHS argues at page 9 of ECF #19 that to prevent fraud, it must "prevent disclosure of fact patterns." But the factual portions of assessments are presently being released on a regular basis. Additionally, statements of counsel are not evidence.

DHS argues that the plaintiffs "have *all* of the information that the government relied upon," ECF # 19, at 8.[emphasis added]. Not true. Plaintiffs do not have the "sources" that the asylum office relied upon. As stated in the Complaint [ECF #1] at paragraph 81, officers use "sources" unknown to plaintiffs.  8 C.F.R. section 208.12(a) was amended in 1997 to take away rights of asylum applicants. It now provides that there is no right of discovery, although the applicant could make a FOIA request.

DHS argues that assessments should be kept secret in order to "encourage discussions between subordinates and superiors." ECF # 19 at 9. But there are no discussions in an assessment. The Complaint, ECF #1, states at paragraph 47, that there are no discussions in assessments. The asylum officer and his Supervisor may have had off-the-record discussions, but those are not in the assessment. If a document contains no discussions, how does release of it have any effect on some future discussions about a different case?

In *Buzzfeed Inc. v. U.S. Dep't of Justice,* 419 F. Supp. 3d 69, 79 (D.D.C. 2019) plaintiff requested financial disclosure forms. The agency argued that "candid discussions within the agency" were very important. The Court noted that "the forms at issue contain no discussion at all, candid or otherwise," and held the documents should be released. In *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854 (D.C. Cir. 1980), the documents at issue were memoranda about petroleum and its pricing. In holding the documents should be released, the

4

Court noted that the documents were not "candid or personal," nor was there "weighing the pros and cons of agency adoption of one viewpoint or another." *Id.* at 866.

Asylum office assessments are not candid or personal. They are like the documents in *Buzzfeed* and *Coastal States.* They should be released.

*Ms. Eggleston offered different rationales in earlier cases*

DHS admits that Ms. Eggleston varied in her statements that are found in ECF # 15-7, 15-8 and 14-2.  The Freedom of Information Act was amended, effective June 30, 2016. After that event, Mr. Kapende made a request for his entire assessment, and Ms. Eggleston proffered two sentences in support of her claim that there would be harm to the agency:

> Public disclosure of the withheld information will lead to asylum applicants tailoring their applications and interview responses to what they believe will tip an asylum officer's decision in their favor. Public disclosure of the asylum officer's deliberative process will hinder the Agency's ability to make determinations solely on the merits of an asylum claim.

¶ 10, ECF No. 15-8.

A district court was persuaded by those words, *Kapende v. DHS,* 2019 WL 1359285; but the D.C. Circuit was not, and vacated that decision: 2020 WL 2610873. So, now Ms. Eggleston offers another explanation at ECF # 14-2.  There is no need to defer to her statements, because they are merely a "convenient litigation position." *Kisor v. Wilkie,* 139 S. Ct. 2400, 2417 (2019). Ms. Eggleston is similar to the Secretary of DHS who gave one reason for a policy in 2017, but then gave a different reason nine months later. *DHS v. Regents of Univ. of California,* 140 S. Ct. 1891, 1908 (2020). In that case, the Court did not give credence to an "impermissible post hoc rationalization." *Id.*

*Ms. Eggleston lacks personal knowledge about the Arlington VA asylum office.*

To be sure, many courts have held that when it comes to the processing and search for documents, the agency official who submits a declaration need not have personal knowledge

5

of everything. If we carry this to an extreme, why bother to have a declaration from any official? Just let the counsel for DHS write the declaration! Why waste the time of the agency and the court reading paragraphs that were probably written by counsel? Surely Congress did not intend this.

Ms. Eggleston does not claim to have any personal knowledge, or even hearsay knowledge of asylum office procedures. "Ms. Eggleston does not claim to have ever in her life talked to an asylum officer, or anyone who worked in an asylum office." Plaintiffs made this claim in ECF #15. DHS quoted this sentence in ECF #19 at page 5 of 12. But DHS has still not refuted it.

Ms. Eggleston is like the agency official who worked in an office building, who responded to a FOIA request about a stabbing inside a prison in *Evans v. Fed. Bureau of Prisons,* 951 F.3d 578 (D.C. Cir. 2020). An issue in *Evans* was the scope of the camera inside the prison: what did it record, what could it not record because of blind spots. The agency official who provided the court with a declaration did not claim to have personal knowledge of the camera's range in the prison; so, summary judgment was denied. The same result should obtain in this case: Ms. Eggleston does not know what happened inside the Arlington VA asylum office, so summary judgment for the agency should be denied.

Evidence of Ms. Eggleston's lack of knowledge about asylum office procedures is shown by her inconsistency as to the people inside an asylum office. At times, Ms. Eggleston talks only about the asylum officer. At times, she mentions the Supervisory Asylum Officer and the asylum officer together. At times, she mentions "employees." Her lack of knowledge results in confusing statements.

*The DHS should consider the "age, content, and character" of each particular document*

The DHS should individually consider the assessment of Ms. Emuwa, of Mr. Lukusa, of Mr. AlQaraghuli, and of Ms. Alatanhua. These four people are all from different countries and all

entered the United States at different times. As stated in Senate Report No. 114-4, at 8: the agency should consider the "age, content, and character" of each document.  This language from the Senate Report was quoted in *Ctr. For Investigative Reporting v. US CBP,* 436 F. Supp. 3d 90, 105 (D.D.C. 2019).  Language from the House Report was cited also, 436 F. Supp. 3d at 106: "[there must be] a specific, identifiable harm… and a link between the specified harm and specific information contained in the material.."

    *DHS should release the sources cited in assessments*

Even if the court disagrees that the entire assessment should be released, there are more segregable parts that can be released. DHS does not respond to this argument.  8 C.F.R. § 208.12(a), as of 1996, provided that officers may rely on material from outside, "credible" sources. It also provided that:

> Prior to the issuance of an adverse decision made in reliance upon such material, that material must be identified and the applicant must be provided with an opportunity to inspect, explain, and rebut the material, unless the material is classified under E.O. 12356. [*see* 62 FR 10312 (3/6/97).]

§ 208.12(a) was amended in 1997: it no longer requires that any material be identified; it no longer requires that the applicant be allowed to inspect, explain, or rebut the material.  After 1997, and currently, an officer may rely upon material *not disclosed* to the applicant. The applicant is no longer able to inspect, explain, or rebut that material. The applicant has no idea what sources and materials were considered by the officer. 8 C.F.R. section 208.12(a), [2011] entitled *Reliance on information compiled by other sources,* states that the asylum officer may rely on material from the Department of State "or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions."

208.12 (b) provides) provides:

> Nothing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of the Service, the Department of Justice, or the Department of State. Persons may continue to seek documents available through a Freedom of Information Act (FOIA) request pursuant to 8 CFR part 103.

After the interview, the asylum officer is permitted, and encouraged, to do his own research and fact-finding. The officer is not bound by Fed. R. Evid. 201(b) which refers to facts capable of accurate determination by resort to "sources whose accuracy cannot reasonably be questioned." Whatever facts, theories, or inferences garnered by the officer are put into the Assessment without notice to the applicant. The applicant is not given any opportunity to rebut such facts or inferences. The asylum officer is not required to give a citation to the record in support of an asserted fact. Local Civil Rule 7(h) is not binding on the officer. He is not required to create and establish a record. The asylum officer is not constrained by Fed. R. Civ. P. 56(c) (The "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"). Asylum officers may rely on information from "credible sources." Which sources are credible, and which are not? Applicants would like to know, so they can cite from them. If a source is deemed not credible, an applicant may be able to convince an officer to change his mind, and accept information from it.

The DHS will not suffer any harm if applicants find out what sources are deemed credible by officers and what sources are not. The DHS will benefit if it reveals what sources are deemed credible, because then applicants will cite from them more often.

The DHS does not explain why it cannot segregate out the sources used by asylum offices, in their assessments.

## MR. LUKUSA'S CLAIM, SET FORTH IN THE SECOND CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.

The Second Cause of Action, concerning Mr. Lukusa, begins at ¶ 223 of the Complaint, ECF. No. 1. DHS does not mention this Cause of Action.

## MR. ALQARAGHULI'S CLAIM, SET FORTH IN THE THIRD CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.

The Third Cause of Action, concerning Mr. Alqaraghuli begins at ¶ 229 of the Complaint, ECF. No. 1. DHS does not mention this Cause of Action.

## MS. ALTANHUA'S CLAIM, SET FORTH IN THE FOURTH CAUSE OF ACTION IN THE COMPLAINT, IS WELL-FOUNDED.

The Fourth Cause of Action, concerning Ms. Alatanhua, begins at ¶ 217 of the Complaint, ECF. No. 1. DHS does not mention this Cause of Action.

## CONCLUSION

DHS will suffer no harm if the assessments are released. DHS will suffer no harm if sources cited in assessments are released.

> We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied "as narrowly as consistent with efficient Government operation." S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965). We do not believe that public knowledge of the contents of these memoranda would affect either "efficient Government operation" or any one of the various policies to be served by the Exemption.

*Coastal States,* 617 F.2d at 868.

The Court should grant summary judgment in favor of plaintiffs.

December 10, 2020                                    Respectfully Submitted,

9

*s/ David L. Cleveland*
David L. Cleveland
Attorney for Plaintiffs
DC Bar # 424209
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684   1949.david@gmail.com