# Exhibit 1
# GAO study: excerpts

United States Government Accountability Office



Report to Congressional Requesters

December 2015

# ASYLUM

# Additional Actions Needed to Assess and Address Fraud Risks

*page 1 of 101*

GAO-16-50

percent.[51] Table 1 shows the number of affirmative and defensive asylum applications filed each year for fiscal years 2010 through 2014.

**Table 1: Affirmative and Defensive Asylum Applications, Fiscal Years 2010 through 2014**

| Fiscal year | Affirmative applications | Defensive applications | Total applications filed |
|---|---|---|---|
| 2010 | 34,374 | 12,744 | 47,118 |
| 2011 | 43,148 | 17,861 | 61,009 |
| 2012 | 53,293 | 19,648 | 72,941 |
| 2013 | 60,076 | 22,535 | 82,611 |
| 2014 | 79,485 | 28,667 | 108,152 |
| **Total** | **270,376** | **101,455** | **371,831** |



Source: GAO analysis of U.S. Citizenship and Immigration Services (USCIS) and Executive Office for Immigration Review (EOIR) data. | GAO-16-50

Note: Defensive applications do not include applicants who applied affirmatively with USCIS and were referred to EOIR. Also, according to USCIS officials, USCIS does not include dependents when counting affirmative asylum applications.

The number of principal affirmative applications and their eligible dependents has increased each year from fiscal years 2010 through 2014. The number of principal affirmative applications filed has increased from 28,108 in fiscal year 2010 to 56,959 in fiscal year 2014, a 103 percent increase. The portion of affirmative asylum applicants noted as dependents increased from 6,266 in fiscal year 2010 to 22,526 in fiscal year 2014, a 259 percent increase. Table 2 shows the number of principal and dependent affirmative asylum applications filed each year for fiscal years 2010 through 2014.

**Table 2: Principal and Dependent Affirmative Asylum Applications, Fiscal Years 2010 through 2014**

| Fiscal year | Dependent applications | Principal applications | Total affirmative applications filed |
|---|---|---|---|
| 2010 | 6,266 | 28,108 | 34,374 |
| 2011 | 8,473 | 34,675 | 43,148 |
| 2012 | 11,838 | 41,455 | 53,293 |

---

[51]These defensive applications do not include applicants who applied affirmatively with USCIS and were referred to EOIR.

*page 28 of 101*

practitioners, while the Fraud and Abuse Prevention Program can refer cases to ICE HSI or other law enforcement agencies for criminal investigation. The Disciplinary Counsel may choose to resolve potential disciplinary issues prior to issuance of a Notice of Intent to Discipline by taking certain confidential actions against a practitioner. Such confidential discipline includes warning letters or informal admonitions for low-level misconduct or for first-time offenders. According to EOIR's Disciplinary Counsel, confidential discipline is intended to educate the lawyer about what he or she did wrong and how to improve conduct in the future. Public discipline imposed by the BIA includes a range of disciplinary actions, such as public censure, suspension, or disbarment. Disbarment, in which an attorney is prohibited from practicing law before EOIR's immigration courts and the BIA, is the most severe disciplinary sanction that the BIA can impose. According to the Disciplinary Counsel, to date, the Disciplinary Counsel has not prosecuted any original jurisdiction cases to the point of disbarment, which means that the Disciplinary Counsel has not requested disbarment for any attorneys who engaged in asylum fraud and who were not already disbarred by their state bar or a federal court. Disciplinary Counsel officials stated that they have not initiated any original jurisdiction disbarments against attorneys in part because of a lack of administrative resources to pursue such cases. The Disciplinary Counsel has completed reciprocal disciplinary cases, in which attorneys who may have engaged in fraud and have already been suspended or disbarred by their state bar or by a federal court, or who have been convicted of a crime, are also disbarred by EOIR. An attorney who has been disbarred by a state bar or a federal court is permitted to practice before the immigration courts until EOIR takes the proper reciprocal action.

## Circuit Court Rulings and Agency Priorities Play a Role in Recent Decreases in Asylum Terminations due to Fraud

Asylum terminations due to fraud are not common and have decreased in recent years. USCIS data indicate that USCIS terminated the asylum status of 374 individuals for fraud from fiscal years 2010 through 2014. In the same time period, USCIS granted asylum to 76,122 individuals. The number of USCIS asylum terminations for fraud has decreased in recent years, from 103 in fiscal year 2010 to 34 in fiscal year 2014. If a final order by an immigration judge or the BIA specifically finds that the individual knowingly filed a "frivolous" asylum application and the individual initially received a warning regarding the consequences of filing

*[handwritten: pg 73 of 101]*