UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, et al., <br>      Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF <br> HOMELAND SECURITY, <br><br>      Defendant. | Civil Action No. 20-1756 (TNM) |

PLAINTIFFS' SUR-REPLY

Plaintiffs file this Sur-Reply in response to the last filing of DHS, ECF # 21, and to supplement Plaintiffs' Reply [ECF # 20]. This Sur-Reply comments upon the statements of DHS and cites newly-published cases.

US FISH & WILDLIFE V. SIERRA CLUB INVOLVED A REQUEST MADE BEFORE THE 2016 AMENDMENTS

DHS filed a "Notice of Supplemental Authority," ECF # 21, citing *U.S. Fish & Wildlife Services v. Sierra Club,* 141 S. Ct. 777 (2021). That case involved FOIA requests made before June 2016; therefore, the June 2016 amendments to the Act were not construed. *See Sierra Club v. U.S. Fish and Wildlife Service,* 925 F.3d 1000, note 7 (9th Cir. 2019). The Supreme Court mentions "harm" mentioned twice, but only in regard to fish.

1

DHS CONCEDES THAT APPLICANTS ARE GIVEN THEIR ENTIRE RECORD OF DETERMINATION, NOTICE OF INTENT TO DENY, AND NOTICE OF INTENT TO TERMINATE

DHS stated "The final agency decisions on asylum claims are given directly to an alien in their Record of Determination, Notice of Intent to Deny, and/or Notice of Intent to Terminate…" ECF # 21, at page 3. The fact that DHS voluntarily gives those documents to aliens shows that DHS suffers no harm from the giving. The content of those three documents is the same as the content of an Assessment to Refer. Therefore, DHS suffers no harm upon the giving of Assessments to Refer.

As stated in the Complaint, ECF #1, at ¶¶s 11b, 14, and 17, the Record of Determination, Notice of Intent to Deny, and Notice of Intent to Terminate, all contain these four elements:

-facts, reasons, citations to authorities, and conclusions.

The Assessment to Refer contains those same four elements. ¶ 23 of Complaint.

Therefore, there is no harm if an Assessment to Refer is released.

DHS MADE SOME MIS-STATEMENTS ABOUT ASSESSMENTS

DHS made some mis-statements in ECF #21: i.e., that "the analysis portions of the asylum assessments have *never* been treated as final…" *Id.* at 3. [emphasis added]. Entire assessments have been introduced into evidence in immigration court to deport asylum applicants. This shows that the assessment is "final." If it is final enough to be used to deport the applicant, it is final for the purpose of FOIA. In *Kudryashov v. Holder,* 492 Fed. Appx. 734 (9th Cir. 2012), the Department of Justice used the word "assessment" 12 times in its brief; the Ninth Circuit mentioned the word 11 times.

DHS further said it "has *never* publicly released the analysis sections." *Id.* at 3 [emphasis added]. Not true. It released entire assessments, routinely, from 1998-2005. *See* Declaration of

2

David Cleveland, ECF # 15-2. Five entire assessments are attached thereto. DHS releases entire assessments in courts. *See* the cases cited in ¶ 166 of the Complaint.

The assessment of Mr. Singh is available for the world to see in the appendix of *Singh v. Gonzales,* 403 F.3d 1081 (9th Cir. 2005). A copy is attached to the Complaint as Exhibit 1. DHS released two entire assessments in *Kapende v. DHS,* 2020 WL 2610873 (D.C. Cir. April 17, 2020).

All of these releases are further evidence of the absence of harm that is suffered by DHS when assessments are released.

COURTS ARE INTERESTED IN WHAT ASYLUM OFFICERS SAY

The DHS frequently uses information from the asylum office to undermine or ambush asylum applicants, in Immigration Courts, where they appear before Immigration Judges ["IJs"]. For example, in a First Circuit case, "the IJ stated that Thile 'was asked if he knew that the asylum officer regarded [his Chinese identification card number] as fraudulent[,]' which he denied being told." Thile v. Garland, 991 F.3d 328, 335 (1st Cir. 2021). The Supreme Court recently spoke against ambushing immigrants in court: the DHS "might ambush aliens with last-minute notices." *Niz-Chavez v. Garland,* 141 S. Ct. 1474, 1486 (2021).

Mr. Fossing was denied asylum, in part because he told the asylum officer he was beaten "every other day," but he told the IJ he was beaten [t]wo times a day." *Fossing v. Garland,* 2021 WL 1830359 (9th Cir. 2021). Mr. Akash told the asylum officer "only about his leg injury," but he told the IJ he had a "severe ear injury." *Akash v. U.S. Attorney General,* 2021 WL 162554 (11th Cir. 2021). Mr. Cuesta-Rojas told the asylum officer he had been detained four times, but told the IJ it was eight times. *Cuesta-Rojas v. Garland,* 991 F.3d 266, 272 (1st Cir. 2021)

3

DHS ADMITS IT HAS NOT YET RESPONDED TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

At Note 1 of ECF # 21, DHS acknowledges that it has not responded to Plaintiffs' Motion to Certify Class, ECF #13.  That motion was filed on September 28, 2020. The time to respond to that motion has long since expired. Motions not responded to can be deemed conceded.

By way of background, Plaintiffs filed a Motion for extension of time to file motion for class certification, ECF # 11. The DHS opposed it. ECF # 12.

THE LACK OF PERSONAL KNOWLEDGE OF JILL EGGLESTON IS CRITICAL

Plaintiffs earlier criticized Ms. Jill Eggleston for her lack of personal knowledge about asylum offices. The DHS noted this criticism in its Reply [ECF # 19, at page 5] when it repeated Plaintiffs' claims: "Ms. Eggleston does not claim to have ever in her life talked to an asylum officer, or anyone who worked in an asylum office." Conspicuous by its absence is any refutation of this claim. If she has no knowledge about asylum offices, why should the Court care what she says? Ms. Eggleston does not even cite a *hearsay* source for her theories.

Ms. Eggleston, a FOIA official in Kansas, does not claim to have any personal knowledge of the procedures in the Chicago Asylum Office, the Newark Asylum Office, or the Arlington Asylum Office. To be sure, courts have often allowed FOIA officials to include hearsay in their declarations. But many courts have not. A recent case finding lack of personal knowledge to be critical is Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just., No. CV 19-1552 (ABJ), 2021 WL 1749763 (D.D.C. May 3, 2021). In that case, the DOJ declarant, Ms. Brinkmann, "does not claim to have any personal knowledge of why the document was created or what its purpose might be, and while she states generally at the beginning of the

4

declaration that she consulted with 'knowledgeable Department personnel,' she does not state that she spoke with any particular person to gain first-hand information about the provenance of this document." *Id.* at *10. Accordingly, the Court ruled that a document was not exempt.

The Court stated:

But courts have not always found hearsay to be sufficient when it is offered to justify the withholding of records based on an exemption. *See Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (district court's grant of summary judgement reversed due to the affiant's lack of personal knowledge of the facts underlying the exemption and his reliance on hearsay); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264–65 (D.D.C. 2004) (court struck portions of the agency FOIA Director's declaration due to a lack of personal knowledge and impermissible hearsay). As the court observed in *Humane Society*, "[u]ltimately, it is the Court, not the agency, that must be satisfied with the propriety of a claimed FOIA exemption." 386 F. Supp. 3d at 44.
<u>Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.</u>, No. CV 19-1552 (ABJ), 2021 WL 1749763, at *4–5 (D.D.C. May 3, 2021)

Another case finding lack of personal knowledge of a FOIA official to be critical is <u>New York Times Co. v. Dep't of Health & Hum. Servs.</u>, No. 20 CIV. 3063 (GWG), 2021 WL 113325, at *10–11 (S.D.N.Y. Jan. 13, 2021). In that case, Mr. Merrell declared that participants had an expectation of privacy, but, "Merrell never explains how he knows that the "participants" (whom he does not even define) had such an "expectation" and does not assert that he has any personal knowledge of this fact."

<u>White Coat Waste Project v. United States Dep't of Veterans Affs.</u>, 443 F. Supp. 3d 176,189–90 (D.D.C. 2020) involved requests about research on dogs at Veterans Affairs facilities in Richmond VA and in Milwaukee. The agency claimed that people displeased with dog research protested outside of the facilities, made harassing phone calls, and threatened the researchers. Therefore, to show the need to prevent physical harm in the future, and to show that certain records should be deemed exempt, the agency filed the declaration of a Dr. Fallon, who

5

described the protests and threats. However, his declaration was deemed insufficient: he was located in Atlanta GA; the facilities were in other cities. The Court stated that Fallon was a person who "testifies about incidents without explaining the basis for his personal knowledge…. Dr. Fallon fails to establish the basis for any personal knowledge of the incidents at McGuire VAMC and Milwaukee VAMC, as well as the incidents involving the researchers with no connections to the VA."

*See also New York Times Company v. Office of Management and Budget,* 2021 WL 1329025 at *8 (D.D.C. March 29, 2021)("the statements of declarants who lacked personal knowledge, which were contradicted by other evidence in the record, were not sufficient to meet the government's burden of proof.")

Jill Eggleston is a FOIA official in Kansas. She does not claim to have any personal knowledge of asylum office procedures in Chicago, Newark, and Arlington [where the individual plaintiffs in this case were interviewed]. She does not say, that if these assessments are released, that asylum offices will do anything differently. She does not explain how an asylum officer would even know that his assessment was released years after it was written. The D.C. Circuit mentioned this factor in *Pavement Coatings Technology Council v. U.S. Geological Survey,* 995 F.3d 1014, 1023 (D.C.Cir. 2021): (The agency "does not say it will and does not explain how, if these model runs are disclosed, scientists will cease to conduct model runs in the future or do them differently.")

AN EXAMPLE OF REAL HARM

Sometimes, an agency can show it will suffer real harm if records are released. For example, in Jud. Watch, Inc. v. U.S. Dep't of Com., No. 17-CV-1283 (EGS), 2020 WL 6939807, at *6 (D.D.C. Nov. 25, 2020) scientists researching climate change often were criticized in

6

public. The agency said that this fear impeded their work: the scientists felt "under siege," and one "scientist left the agency in part due to the contentious public scrutiny of his scientific deliberations." The Court ruled that the agency had made a sufficient showing of harm.

But in the instant case, there is no evidence that asylum officers are fearful of anything. Plaintiffs argue that the officers *know* their assessments will often be released in immigration court and elsewhere; therefore, they have no expectation of privacy. As stated in the Complaint:

"Asylum officers are instructed and trained that Assessments shall later be read and used by 'a number of persons,' including the 'applicant and his or her attorney…[The applicant and his attorney] may submit a Freedom of Information Act [FOIA] request to obtain a copy of any assessment (and other information in the file).' *See* page 11 of *Decision Writing Part I,* dated June 21, 2004."
       Complaint, ¶138.

AN AGENCY MAY NOT PERFUNCTORILY CLAIM IT WILL SUFFER HARM

An agency must consider the "age, content, and character" of each document, and link that information to "a specific, identifiable harm." *Center for Investigative Reporting v. US CBP,* 436 F. Supp. 3d 90, 105 (D.D.C. 2019). Ms. Eggleston has failed to do that.

There are four individual plaintiffs in this case: Ms. Emuwa, who suffered domestic violence in Nigeria, was interviewed at the Arlington Asylum Office in 2018. Mr. Lukusa had an anti-government opinion in the Democratic Republic of Congo, arrived in the United States in 2015, and was interviewed in 2019. Mr. AlQaraghuli is a liberal Muslim from Iraq, who arrived in the United States in 2013, and was interviewed in the Chicago Asylum Office in 2014. Ms. Alatanhua is a Mongol-Buddhist from China, who arrived in the United States in 2015, and was interviewed at the Newark Asylum Office.

What is the "age, content, and character" of the assessment for each of these plaintiffs? How would release of it lead to a "specific" harm? Ms. Eggleston does not explain. She does not comment on the specific information in each.

"Courts in this district frequently reject generalized explanations of harm removed from the specific information at issue. *See, e.g.*, *Danik v. U.S. Dep't of Justice*, No. 17-cv-1792, 2020 WL 2838584, at *5 (D.D.C. May 31, 2020); *Ctr. For Investigative Reporting v. U.S. Dep't of Interior*, No. 18-cv-599, 2020 WL 1695175, at *4–5 (D.D.C. April 7, 2020); *Judicial Watch, Inc. v. Dep't of Justice*, No. 17-cv-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019). The Court will do the same here."

Farmworker Just. v. U.S. Dep't of Agric., No. 19-CV-1946 (DLF), 2021 WL 827162, at *5 (D.D.C. Mar. 4, 2021)

*Accord:* "An agency may not perfunctorily state that disclosure of all the withheld information — regardless of category or substance — would jeopardize the free exchange of information' among or between government officials." New York Times Co. v. Dep't of Health & Hum. Servs., No. 20 CIV. 3063 (GWG), 2021 WL 113325, at *9 (S.D.N.Y. Jan. 13, 2021) [cleaned up].

CONGRESS MADE TWO IMPORTANT AMENDMENTS IN 2016

In 2016, Congress amended FOIA by adding the requirement that agencies must show "harm" to an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i).

Another amendment is the repetition of the duty to segregate. Under the old law, there was a duty to segregate, found in the last paragraph of section 552(b). The new law kept that provision, and added something new: 552(a)(8)(A)(ii). This sub-section provides that the agency shall "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and **(II)** take reasonable steps necessary to segregate and release nonexempt information."

So, Congress has said twice that the agency shall segregate and release nonexempt information. Courts must give effect to every part of every statute. Plaintiffs argue that the entire asylum office assessment should be released; but, if they do not prevail on that, they argue that more information, such as sources cited by the asylum office, can be released.

CONCLUSION

FOIA "requires agencies to disclose records upon request, unless they fall within one of nine exemptions…We construe these exemptions narrowly." *Pavement Coatings Technology Council v. U.S. Geological Survey,* 995 F.3d 1014, 1020 (D.C.Cir. 2021). The "burden is on the agency to sustain its action...the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the … requestor." *Id.* at 1020-21 [cleaned up]. The deliberative process privilege is an exemption that courts "are obligated to construe" "narrowly." *Id.* at 1022.

If there is "uncertainty about whether…this type of data is ordinarily disclosed, or whether there is an expectation that it will not be disclosed, or what impact it would have if is disclosed, to rule for [the agency] at the summary judgment stage [is error]." *Id.* at 1023.

The DHS released entire assessments from 1998 to 2005. The DHS continues to release entire assessments in courts. Asylum officers have no expectation of privacy. Jill Eggleston has offered varying explanations over the past years. The DHS has not met its burden. The plaintiffs have.

Dated: May 31, 2021                              Respectfully Submitted,

/s/ *David L. Cleveland*
David L. Cleveland
DC Bar # 424209 Counsel for Plaintiffs
1220 L Street NW #100
Washington, DC 20005
[202] 812-8684    1949.david@gmail.com

9