# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:20−cv−01756−TNM</u>

EMUWA et al v. UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Assigned to: Judge Trevor N. McFadden
 Case:  1:20−cv−01128−TNM
Cause: 05:552 Freedom of Information Act

Date Filed: 06/29/2020
Date Terminated: 06/03/2021
Jury Demand: None
Nature of Suit: 895 Freedom of
Information Act
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**AMARA EMUWA**

represented by **David Laundon Cleveland**
DAVID LAUNDON CLEVELAND
1220 L Street NW
Ste 100
Washington, DC 20005
202−812−8684
Email: 1949.david@gmail.com
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**MICHAUX LUKUSA**

represented by **David Laundon Cleveland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**MOHAMMED ALQARAGHULI**

represented by **David Laundon Cleveland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**FNU ALATANHUA**

represented by **David Laundon Cleveland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**LOUISE TRAUMA CENTER LLC**

represented by **David Laundon Cleveland**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**UNITED STATES DEPARTMENT
OF HOMELAND SECURITY**

represented by **Kristin Brudy−Everett**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA

Civil Division
555 4th Street NW
Washington, DC 20530
(202) 252−2536
Email: kristin.brudy−everett@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/29/2020 | 1 | | COMPLAINT *AMARA EMUWA* against UNITED STATES DEPARTMENT OF HOMELAND SECURITY ( Filing fee $ 400 receipt number ADCDC−7278181) filed by AMARA EMUWA. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Civil Cover Sheet, # 10 Notice to Counsel/Party, # 11 Summons)(Cleveland, David) (Entered: 06/29/2020) |
| 06/29/2020 | 2 | | NOTICE OF RELATED CASE by FNU ALATANHUA, MOHAMMED ALQARAGHULI, AMARA EMUWA, LOUISE TRAUMA CENTER LLC, MICHAUX LUKUSA. Case related to Case No. 20−cv−1128. (zmc) (Entered: 06/29/2020) |
| 06/29/2020 | | | Case assigned to Judge Trevor N. McFadden. (zmc) (Entered: 06/29/2020) |
| 06/29/2020 | 3 | | SUMMONS (3) Issued Electronically as to UNITED STATES DEPARTMENT OF HOMELAND SECURITY, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zmc) (Entered: 06/29/2020) |
| 06/29/2020 | 4 | | STANDING ORDER Establishing Procedures for Cases Before Judge Trevor N. McFadden. The parties are hereby ORDERED to read and comply with the directives in the attached standing order. Signed by Judge Trevor N. McFadden on 6/29/2020. (lctnm2) (Entered: 06/29/2020) |
| 06/30/2020 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/30/2020. Answer due for ALL FEDERAL DEFENDANTS by 7/30/2020. (Cleveland, David) (Entered: 06/30/2020) |
| 07/03/2020 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF HOMELAND SECURITY served on 7/2/2020 (Cleveland, David) (Entered: 07/03/2020) |
| 07/08/2020 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 07/06/2020. (Cleveland, David) (Entered: 07/08/2020) |
| 07/28/2020 | 8 | | MOTION for Extension of Time to File Answer by UNITED STATES DEPARTMENT OF HOMELAND SECURITY (Attachments: # 1 Text of Proposed Order)(Brudy−Everett, Kristin) (Entered: 07/28/2020) |
| 07/28/2020 | | | MINUTE ORDER denying Defendant's 8 Motion for Extension of Time to File Answer. Defendant's motion fails to comply with Local Civil Rule 7(m), which requires the moving party to discuss any anticipated nondispositive motion in a civil action with opposing counsel and to "include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is |

| | | | |
|---|---|---|---|
| | | | opposed." Defendant's motion also fails to comply with Paragraph 9(A) of the Court's 4 Standing Order, which states that motions for extension of time "must be filed at least four business days prior to the first affected deadline." SO ORDERED. Signed by Judge Trevor N. McFadden on 7/28/2020. (lctnm2) (Entered: 07/28/2020) |
| 07/30/2020 | 9 | | ANSWER to Complaint by UNITED STATES DEPARTMENT OF HOMELAND SECURITY. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Brudy−Everett, Kristin) (Entered: 07/30/2020) |
| 07/31/2020 | | | MINUTE ORDER. Before the Court are a Complaint and an Answer in this FOIA case. It is hereby ORDERED that the parties shall meet and confer and file a Joint Status Report proposing a schedule for proceeding in this matter. The schedule should address, among other things, the status of Plaintiff's FOIA request, the anticipated number of documents responsive to Plaintiff's FOIA request, the anticipated date(s) for release of the documents requested by Plaintiff, whether a motion for an *Open America* stay is likely in this case, whether a *Vaughn* index will be required in this case, and a briefing schedule for dispositive motions, if required. The parties shall file the report on or before August 31, 2020. SO ORDERED. Signed by Judge Trevor N. McFadden on 7/31/2020. (Entered: 07/31/2020) |
| 07/31/2020 | | | Set/Reset Deadlines: Joint Status Report due by 8/31/2020. (hmc) (Entered: 07/31/2020) |
| 08/31/2020 | 10 | | Joint STATUS REPORT by UNITED STATES DEPARTMENT OF HOMELAND SECURITY. (Brudy−Everett, Kristin) (Entered: 08/31/2020) |
| 08/31/2020 | | | MINUTE ORDER. Upon consideration of the 10 Joint Status Report, it is hereby ORDERED that the parties shall appear for a Status Conference on September 9, 2020, at 10:00 a.m., before Judge Trevor N. McFadden. The conference will take place by telephone. Dial−in information will be emailed to counsel. SO ORDERED. Signed by Judge Trevor N. McFadden on 8/31/2020. (lctnm2) (Entered: 08/31/2020) |
| 08/31/2020 | | | Set/Reset Hearings: Telephonic Status Conference set for 9/9/2020 at 10:00 AM before Judge Trevor N. McFadden. (hmc) (Entered: 08/31/2020) |
| 09/09/2020 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephonic Status Conference held on 9/9/2020. Defendant's Motion for Summary Judgment due by 9/30/2020. Plaintiffs' combined Cross−Motion and Opposition to Defendant's Motion for Summary Judgment due by 10/30/2020. Defendant's combined Opposition to Plaintiffs' Cross−Motion and Reply due by 11/20/2020. Plaintiffs' Reply in support of their Cross−Motion due by 12/11/2020. (Court Reporter: Crystal Pilgrim.) (hmc) (Entered: 09/09/2020) |
| 09/22/2020 | 11 | | MOTION for Extension of Time to File *Motion for Class Certification* by AMARA EMUWA (Cleveland, David) (Entered: 09/22/2020) |
| 09/22/2020 | | | MINUTE ORDER. Before the Court is Plaintiffs' 11 Motion for Extension of Time to File Motion for Class Certification. Plaintiffs state that they sought but "did not obtain" Defendant's consent for this motion. Defendant shall respond to Plaintiffs' 11 Motion on or before September 24, 2020. SO ORDERED. Signed by Judge Trevor N. McFadden on 9/22/2020. (lctnm2) (Entered: 09/22/2020) |

| 09/23/2020 | | | Set/Reset Deadlines: Defendant's response to Plaintiffs' 11 Motion due by 9/24/2020. (hmc) (Entered: 09/23/2020) |
|---|---|---|---|
| 09/24/2020 | 12 | | RESPONSE re 11 MOTION for Extension of Time to File *Motion for Class Certification* filed by UNITED STATES DEPARTMENT OF HOMELAND SECURITY. (Brudy−Everett, Kristin) (Entered: 09/24/2020) |
| 09/25/2020 | | | MINUTE ORDER denying Plaintiffs' 11 Motion for Extension of Time to File Motion for Class Certification. Plaintiffs provide no basis for their extension request and therefore fail to establish good cause for the extension. *See* Fed. R. Civ. P. 6(b)(1). SO ORDERED. Signed by Judge Trevor N. McFadden on 9/25/20. (lctnm2) (Entered: 09/25/2020) |
| 09/28/2020 | 13 | | MOTION to Certify Class by AMARA EMUWA (Cleveland, David) (Entered: 09/28/2020) |
| 09/30/2020 | 14 | | MOTION for Summary Judgment *and Statement of Facts* by UNITED STATES DEPARTMENT OF HOMELAND SECURITY (Attachments: # 1 Exhibit A − DHS Vaughn Index, # 2 Exhibit B − Declaration of Jill A. Eggleston, # 3 Text of Proposed Order)(Brudy−Everett, Kristin) (Entered: 09/30/2020) |
| 10/29/2020 | 16 | | MOTION for Summary Judgment by AMARA EMUWA (Attachments: # 1 Statement of Facts)(Cleveland, David) (Entered: 10/29/2020) |
| 11/02/2020 | | | MINUTE ORDER. The Court has placed the Plaintiff's 15 Memorandum in Opposition under seal because it contains private personal information that should have been redacted. The Plaintiffs shall file a properly redacted version of their 15 Memorandum for the public docket on or before 11/9/2020. SO ORDERED. Signed by Judge Trevor N. McFadden on 11/2/2020. (lctnm2) (Entered: 11/02/2020) |
| 11/02/2020 | | | Set/Reset Deadlines: Plaintiffs' redacted version due by 11/9/2020. (hmc) (Entered: 11/02/2020) |
| 11/06/2020 | | | MINUTE ORDER. The Court has placed the Plaintiffs' 17 Errata under seal because it contains third party personally identifiable information ("PII") that has not been properly redacted. On 11/2/2020, the Court ordered the Plaintiffs to "file a properly redacted version of their 15 Memorandum for the public docket." The Plaintiffs have failed to comply with this order, as their 17 Errata contains PII that is still visible or partially visible. The Plaintiffs shall file a fully redacted version of their 15 Memorandum for the public docket on or before 11/13/2020. The Court takes protection of third parties' PII seriously and expects all parties to do likewise. Failure to adhere to this Order may result the imposition of sanctions. SO ORDERED. Signed by Judge Trevor N. McFadden on 11/6/2020. (lctnm2) (Entered: 11/06/2020) |
| 11/06/2020 | | | Set/Reset Deadlines: Plaintiffs' redacted version due by 11/13/2020. (hmc) (Entered: 11/06/2020) |
| 11/08/2020 | 18 | | ERRATA *Memorandum in Opposition* by AMARA EMUWA. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Cleveland, David) (Entered: 11/08/2020) |
| 11/20/2020 | 19 | | REPLY to opposition to motion re 16 MOTION for Summary Judgment filed by UNITED STATES DEPARTMENT OF HOMELAND SECURITY. |

| | | | |
|---|---|---|---|
| | | | (Brudy−Everett, Kristin) (Entered: 11/20/2020) |
| 12/11/2020 | 20 | | REPLY to opposition to motion re 16 MOTION for Summary Judgment filed by AMARA EMUWA. (Attachments: # 1 Exhibit)(Cleveland, David) (Entered: 12/11/2020) |
| 04/15/2021 | 21 | | NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES DEPARTMENT OF HOMELAND SECURITY (Brudy−Everett, Kristin) (Entered: 04/15/2021) |
| 05/31/2021 | 22 | | MOTION for Leave to File *Sur Reply* by All Plaintiffs. (Attachments: # 1 Exhibit)(Cleveland, David) Modified on 6/2/2021 (zeg). (Entered: 05/31/2021) |
| 06/03/2021 | 23 | | MEMORANDUM OPINION re the parties' 14 and 16 Motions for Summary Judgment. Signed by Judge Trevor N. McFadden on 6/3/2021. (lctnm2) (Entered: 06/03/2021) |
| 06/03/2021 | 24 | | ORDER. For the reasons stated in 23 Memorandum Opinion, Defendant's 14 Motion for Summary Judgment is GRANTED; Plaintiffs' 16 Cross−Motion for Summary Judgment is DENIED; Plaintiffs' 13 Motion for Class Certification is DENIED as moot; and Plaintiffs' 22 Motion for Leave to File a Sur−reply is GRANTED in part and DENIED in part. See attached Order for details. Signed by Judge Trevor N. McFadden on 6/3/2021. (lctnm2) (Entered: 06/03/2021) |
| 06/10/2021 | 25 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 23 Memorandum & Opinion, 24 Order, by AMARA EMUWA. Filing fee $ 505, receipt number ADCDC−8516657. Fee Status: Fee Paid. Parties have been notified. (Cleveland, David) (Main Document 25 replaced on 6/11/2021) (zeg). (Entered: 06/10/2021) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMARA EMUWA, et al,
_____
                    Plaintiff

                vs.                          Civil Action No. 20-01756

U.S. Department of Homeland Security
_____
                    Defendant

# NOTICE OF APPEAL

Notice is hereby given this  10        day of  June                    , 20 21    , that

 plaintffs, Amara Emuwa, et al,l

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the   3            day of  June              , 20 21

in  favor of  defendant

against said  plaintiffs

                              David L. Cleveland
                    _____
                         Attorney or Pro Se Litigant
                    1220 L Street NW #100
                    Washington DC 20005
                    [202] 812- 8684

                         Address and Phone Number

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action
must be filed within 30 days after the date of entry of judgment or 60 days if the United States or
officer or agency is a party)

**CLERK**   Please mail copies of the above Notice of Appeal to the following at the addresses indicated:

Kristen Brudy-Everett
Assistant U.S. Attorney
555 4th St NW
Wash DC 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMARA EMUWA, *et al.*,** | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-01756 (TNM) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, | |
| Defendant. | |

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, the pleadings, relevant law, related legal memoranda in opposition and support, and the entire record, for the reasons set forth in the accompanying Memorandum Opinion it is hereby

**ORDERED** that Defendant's [14] Motion for Summary Judgment is GRANTED; it is further

**ORDERED** that Plaintiffs' [16] Cross-Motion for Summary Judgment is DENIED; it is further

**ORDERED** that Plaintiffs' [13] Motion for Class Certification is DENIED as moot; it is further

**ORDERED** that Plaintiffs' [22] Motion for Leave to File a Sur-reply is GRANTED insofar as Plaintiffs' sur-reply pertains to *U.S. Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021), but is otherwise DENIED.

**SO ORDERED**.

The Clerk of Court is directed to close this case.  This is a final, appealable Order.

2021.06.03
13:22:41 -04'00'

Dated: June 3, 2021                    TREVOR N. McFADDEN, U.S.D.J.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**AMARA EMUWA, *et al.*,**

Plaintiffs,

v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**,

Defendant.

Case No. 1:20-cv-01756 (TNM)

---

## MEMORANDUM OPINION

The Freedom of Information Act's ("FOIA") Exemption 5 encompasses, among other things, the deliberative process privilege. This privilege protects from disclosure agency documents that are both predecisional and deliberative. It allows agency officials to communicate candidly without fear that their tentative opinions and recommendations will become public. The privilege is thus meant to improve agency decisionmaking.

Plaintiffs—four individuals and one organization—filed this FOIA action seeking "Assessments to Refer" ("Assessments") from the U.S. Department of Homeland Security ("DHS" or "the Government"). Assessments are brief documents containing an asylum officer's impressions after an asylum interview and his recommendation on whether asylum should be granted. While DHS released the factual portions of the Assessments, Plaintiffs seek the analysis portions too.

Before the Court are cross-motions for summary judgment. Although the parties disagree on several points, the crux of their dispute concerns whether Exemption 5's deliberative process privilege protects the analysis portions of the Assessments. Because the Court finds that it does,

and otherwise finds that DHS is entitled to summary judgment, the Court will grant the Government's motion and deny Plaintiffs' cross-motion.

## I.

Plaintiff Louise Trauma Center, LLC submitted FOIA requests to U.S. Citizenship and Immigration Services ("USCIS"), a DHS component, on behalf of the other four plaintiffs here—Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and FNU Alatanhua. Def.'s Statement of Material Facts ("DSMF") ¶¶ 1, 6, 12, 16, ECF No. 14. The FOIA requests concern Assessments to Refer, which are prepared after an asylum interview and recommend whether to grant asylum. Id. ¶¶ 27–28; Pls.' Counter Statement of Facts ("PSMF") at 1, ECF No. 18-2.[1] If USCIS ultimately determines that the applicant is not eligible for asylum, it sends the individual a "Referral Notice" advising that the agency has made a final decision to refer him to an immigration judge for removal proceedings. DSMF ¶ 29; PSMF at 1.

Each FOIA request here sought "the assessment written by the Asylum Officer"; "the notes of the asylum officer"; and the materials consulted by the asylum officer or mentioned in the Referral Notice. DSMF ¶¶ 1, 6, 12, 16. As to each request, DHS released hundreds of pages in full, released some pages in part, and withheld others in full. See DSMF ¶¶ 3, 8, 14, 18. Except for AlQaraghuli, each Plaintiff administratively appealed the agency's determination. Id. ¶¶ 4, 10, 15, 19. For Emuwa, Lukusa, and Alatanhua, the agency released more pages upon appeal, but otherwise upheld its determination. Id. ¶¶ 5, 11, 20. DHS applied full and partial redactions under FOIA Exemptions 3, 5, 6, 7(C), and 7(E). See id. ¶ 21; 5 U.S.C. § 552(b)(3), (5)–(6), (7)(C), (7)(E).[2]

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

[2] Neither party complied with the directives in the Court's Standing Order when submitting their statement of facts. See Standing Order at 6, ECF No. 4 (requiring "[t]he party responding to a

2

Plaintiffs then sued. Their Complaint raises six causes of action: in Counts 1–4, the individual Plaintiffs seek the entire Assessments; Count 5 alleges that DHS "negligently trained its processors"; and Count 6, brought only by Louise Trauma Center, challenges DHS' policies and practices. Compl. at 36–40, ECF No. 1. Both parties cross-move for summary judgment. Their motions are ripe.[3]

## II.

Federal courts are courts of limited jurisdiction. Article III constrains the judicial power to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To have standing, a plaintiff must show (1) that it has "suffered an injury in fact"; (2) that the injury is "fairly traceable to the challenged action of the defendant"; and (3) that the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Article III standing is jurisdictional, so it "can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court." *Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014) (quoting *Steffan v. Perry*, 41 F.3d 677, 697 n.20 (D.C. Cir. 1994) (en banc)).

---

statement of material facts" to "respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied"). Plaintiffs responded to paragraphs in DHS' statement in groups. *See, e.g.*, PSMF at 1 ("1-22. Agreed."). And DHS did not respond to Plaintiffs' statement of facts. *See* Pls.' Statement of Facts, ECF No. 16-1. The Court has tried to discern when the parties agree and where they do not. But if either party has not specifically stated that "facts are controverted in [its] statement filed in opposition," "[t]he Court may assume that facts identified by the moving party in its statement of material facts are admitted." Standing Order at 7.

[3] The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

To prevail at summary judgment, a movant must show that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment has the initial burden to identify those portions of the record that show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). The Court construes the evidence "in the light most favorable to the non-moving party." *Brubaker v. Metro. Life Ins. Co.*, 482 F.3d 586, 588 (D.C. Cir. 2007).

Courts can decide the "vast majority" of FOIA cases on motions for summary judgment. *Brayton v. Off. of U.S. Trade Repr.*, 641 F.3d 521, 527 (D.C. Cir. 2011). An agency withholding records under a FOIA exemption "bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011) (cleaned up). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (cleaned up).

The agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And the Court affords this evidence a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Courts review the applicability of FOIA exemptions de novo. *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).

**III.**

The Court considers: (A) DHS' withholdings under Exemption 5; (B) whether DHS sufficiently complied with FOIA's segregability requirement; and (C) Plaintiffs' policy-or-practice and inadequate training claims.

**A.**

First up: Did the agency properly rely on FOIA exemptions to withhold information?[4] The Government's summary judgment brief cites Exemptions 3, 5, 6, 7(C), and 7(E) to justify its withholdings. Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mot.") at 26–27, ECF No. 14. These exemptions were applied to many records, including State Department documents pertaining to the issuance of permits, personal information of third parties and USCIS employees, and law enforcement systems checks and database codes. Decl. of Jill A. Eggleston ("Eggleston Decl.") ¶¶ 20, 29, 33–34, 36, ECF No. 14-2. But the dispute before the Court is much narrower.

Plaintiffs suggest that they seek only the release of the entire Assessments for each Plaintiff or the sources cited in the Assessments and so waive any challenges to the Government's other withholdings. *See, e.g.*, Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 9, ECF No. 16 ("DHS will suffer no harm if assessments are released. DHS will suffer no harm if sources cited in assessments are released."); Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n") at 5, ECF No. 18-1 (arguing that Plaintiffs "seek[] the entire assessment of the

---

[4] Although the parties do not raise the issue, the Court has an obligation to assure itself that Plaintiffs have standing to challenge the Government's withholdings. *See Bauer*, 774 F.3d at 1029. The Court is satisfied that they have made this showing, as they contend that DHS improperly denied their FOIA requests. *Cf. Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) (stating that "[a]nyone whose request for specific information has been denied [under FOIA] has standing to bring an action" and collecting authorities).

asylum office" and that "DHS will not suffer any harm if assessments are disclosed"). While DHS released the "factual narrative" section of Assessments to FOIA requesters, it withheld "the analysis sections." Def.'s Mot. at 32.

The Government's *Vaughn* index shows that Exemption 5 was mainly used to withhold the analysis portions of the Assessments. *See Vaughn* Index at 2, ECF No. 14-1 (describing exemptions from Emuwa's Assessment to Refer); *id.* at 8 (same for Alatanhua); *id.* at 14 (same for AlQaraghuli); *id.* at 27 (same for Lukusa). The parties' summary judgment briefing also clarifies that only Exemption 5 is at issue. *See, e.g.*, Pls.' Opp'n at 11 ("Plaintiffs want four entire assessments to be released. Exemption 3 withholdings do not apply to assessments."); *id.* at 23 ("Exemption 6 does not apply to assessments."); *id.* ("DHS does not contend that Exemption 7 applies to the four assessments."); *see also, e.g.*, Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply") at 5–9, ECF No. 19 (making arguments only under Exemption 5).[5] So the Court need only address Exemption 5.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "As the text indicates—albeit in a less-than-straightforward way—this exemption incorporates the privileges available to Government agencies in civil litigation," which include "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). This case mainly concerns the deliberative process privilege.

---

[5] DHS may have used Exemption 7(E), which it cited in its *Vaughn* index, to withhold information in the Assessments. *See Vaughn* Index at 14. But it is not clear that the Government has relied on this exemption, as it did not respond to Plaintiffs' argument that the agency "does not contend that Exemption 7 applies to the four assessments." Pls.' Opp'n at 23; *see also* Def.'s Reply at 5–9 (not responding to this assertion). The Court therefore will not address it.

"[T]he deliberative process privilege covers deliberative, pre-decisional communications within the Executive Branch." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014) (Kavanaugh, J.). As the Supreme Court recently reiterated in *Sierra Club*, this privilege "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" in order "[t]o protect agencies from being forced to operate in a fishbowl." 141 S. Ct. at 785 (cleaned up). "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Id.*

For documents to come within the privilege's protection, they must be both predecisional and deliberative. *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Sierra Club*, 141 S. Ct. at 786. "There is considerable overlap between" the two requirements "because a document cannot be deliberative unless it is predecisional." *Id.* When deciding "whether a document communicates the agency's settled position, courts must consider whether the agency treats the document as its final view on the matter." *Id.* Because the deliberative process privilege "is so dependent upon the individual document and the role it plays in the administrative process," the "agency's description of each document redacted or withheld plays a particularly important role." *Crestek, Inc. & Subsidiaries v. IRS*, 322 F. Supp. 3d 188, 195 (D.D.C. 2018) (cleaned up).

The deliberative process privilege applies to the Assessments. In fact, the D.C. Circuit has already answered this question. In *Abtew v. DHS*, the Circuit held that Abtew's "Assessment

to Refer" was predecisional and deliberative and therefore covered by the privilege. 808 F.3d 895, 898–99 (D.C. Cir. 2015) (Kavanaugh, J.). It described an Assessment to Refer as a "short document prepared by a Department official after interviewing an asylum applicant," which "summarizes the asylum interview," "assesses the applicant's credibility and consistency," and "recommends whether to grant asylum." *Id.* at 898. The court explained that "[t]he Department official who wrote the Assessment to Refer then forwards it to a supervisor, who in turn decides whether to grant asylum." *Id.* The Circuit reasoned that the assessment was predecisional because "it was merely a recommendation to a supervisor," as "[t]he supervisor, not the official writing the Assessment, made the final decision." *Id.* at 899. It was also deliberative because "it was written as part of the process by which the supervisor came to that final decision." *Id.* The document thus "had no operative effect" on its own. *Id.* (cleaned up).[6]

*Abtew* controls here. The Government's declaration states that Assessments to Refer "are prepared for and provided to the asylum officer's supervisor for review and approval." Eggleston Decl. ⫟ 16. They "reflect the asylum officer's analysis, opinions, deliberations, and recommendation regarding the applicant's eligibility for asylum"—for example, the officer's analysis of "testimonial and documentary evidence presented by the applicant." *Id.* ⫟ 23. If "the asylum officer recommends referral and the supervisory asylum officer agrees," the agency

---

[6] Some courts in this District have held that Exemption 5 does not cover the factual portions of Assessments to Refer and that those parts are segregable. *See, e.g.*, *Gatore v. DHS*, 327 F. Supp. 3d 76, 88 (D.D.C. 2018) ("Upon *in camera* review of the plaintiffs' assessments, the Court agrees with the plaintiffs that a number of factual introductory paragraphs in each assessment do not qualify for protection under Exemption 5."); *Bayala v. DHS*, 264 F. Supp. 3d 165, 176 (D.D.C. 2017) ("the first eight paragraphs [of an Assessment to Refer] can be segregated" because they contained only a "dispassionate narration of facts"). That is irrelevant here. The Government has released those factual portions. *See* Def.'s Mot. at 32; Pls.' Statement of Facts at 1–2.

sends the applicant a "Referral Notice" advising that the agency reached "a final decision to refer the applicant to an immigration judge for removal proceedings." *Id.* ¶ 16.

The analysis portions of the Assessments are predecisional—they do not "communicate[] the agency's settled position" because the agency does not treat them "as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786. Rather, the Assessments contain the asylum officer's impression of eligibility after an asylum interview, which he then passes along to a supervisor for review and a final decision. *See* Eggleston Decl. ¶ 16. "[A] document that leaves agency decisionmakers free to change their minds does not reflect the agency's final decision." *Sierra Club*, 141 S. Ct. at 786 (cleaned up). The Assessments are also deliberative, as "they were prepared to help the agency formulate its position." *Id.* Indeed, "[a] recommendation to a supervisor on a matter pending before the supervisor is a classic example of a deliberative document." *Abtew*, 808 F.3d at 899; *accord Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("[R]ecommendations from subordinates to superiors lie at the core of the deliberative-process privilege."). The deliberative process privilege thus covers the analysis portions of Plaintiffs' Assessments to Refer.[7]

*Sierra Club* also supports this conclusion. There, the Supreme Court considered whether the deliberative process privilege protected "draft biological opinions" (of the Fish and Wildlife

---

[7] Plaintiffs' attempt to analogize the Assessments to the Department of Energy ("DOE") memoranda at issue in *Coastal States* is unavailing. *See* Pls.' Opp'n at 12. They contend that the Assessments, like those memoranda, are not "candid or personal in nature." *Id.* (cleaned up). Not so. The memoranda at issue in *Coastal States* were written "from regional counsel to auditors working in DOE's field offices" and "issued in response to requests for interpretations of regulations within the context of particular facts encountered while conducting an audit of a firm." *Coastal States*, 617 F.2d at 858. The Circuit explained that the memoranda were "simply straightforward explanations of agency regulations in specific factual situations." *Id.* at 868. Importantly, the memoranda were "not advice to a superior," "suggested dispositions of a case," or "one step of an established adjudicatory process, which would result in a formal opinion." *Id.* Those memos were going down the chain of command, not up as in *Abtew* and here.

Service and the National Marine Fisheries Service) assessing whether a proposed EPA rule would jeopardize threatened or endangered species. *Sierra Club*, 141 S. Ct. at 783–84. The Court held that the privilege applied to the drafts because, among other things, they were "opinions that were subject to change." *Id.* at 786. It also explained that "a decision's real operative effect"—meaning "the legal, not practical consequences that flow from an agency's action"—is "an indication of its finality." *Id.* at 787 (cleaned up). And while "a final biological opinion leads to direct and appreciable legal consequences" by "alter[ing] the legal regime," the same was "not true of a draft biological opinion." *Id.* (cleaned up).

So too here. The Assessments were "opinions subject to change," *id.* at 786, as the asylum officer's supervisor reviews the Assessment and chooses whether to accept its recommendation, *see* Eggleston Decl. ¶ 16. They also do not "lead[] to direct and appreciable legal consequences." *Sierra Club*, 141 S. Ct. at 787 (cleaned up). If an asylum officer recommends referral, the supervisor could approve it and the agency could issue a "Referral Notice"—which may lead to legal consequences when the applicant appears before an immigration judge for removal proceedings—but the supervisor could also disagree. Eggleston Decl. ¶ 16; *accord Abtew*, 808 F.3d at 899 (holding that an Assessment "had no operative effect" (cleaned up)).

## 2.

Plaintiffs raise several counterarguments, but the Court is unpersuaded.

*First*, while Plaintiffs do not dispute *Abtew*'s holding, they argue that—contrary to the Government's assertion—the Assessments are the agency's final decision. *See* Pls.' Opp'n at 12–13.

The Circuit rejected Abtew's contention that the Assessment was final because "the Department's supervisor adopted it as the 'final decision,'" evidenced by the supervisor "initial[ing]" the Assessment. 808 F.3d at 899. The court explained that while "an agency may forfeit Exemption 5's protection if it chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," "it would be wrong and misleading to think that initialing necessarily indicates adoption or approval of all of the memo's reasoning." *Id.* (cleaned up); *accord Machado Amadis*, 971 F.3d at 370 ("[A] recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment."). But the Circuit left open "the possibility that initialing a memo together with other circumstances might indicate agency adoption of that memo in some cases." *Abtew*, 808 F.3d at 899 n.1.

Plaintiffs contend that they have supplied that "evidence" here. *See* Pls.' Opp'n at 13. They rely on their attorney's declaration, which conveys that sometime in "the years 2013 or 2014, [he] talked face-to-face with two former asylum officers" who told him about procedures in the asylum office, including that the Assessments are "the final decision of the agency." Decl. of David Cleveland ¶ 4, ECF No. 18-3; Pls.' Opp'n at 13. Plaintiffs acknowledge that "this is hearsay," but they "seek discovery to establish the truth of this matter." Pls.' Opp'n at 13.

The Court will not credit hearsay and speculation as evidence. "It is well-settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Humane Soc'y v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (cleaned up); *see also Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Of course, hearsay, an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement," is generally inadmissible. Fed. R. Evid.

11

801(c), 802. True, in the FOIA context, the Government's "FOIA declarants may rely on information obtained through inter-agency consultation." *Humane Soc'y*, 386 F. Supp. 3d at 44. But it is another matter for a party "to rely on out-of-court statements from private third-parties" at summary judgment. *Id.* This Court, like others, has not allowed government defendants to rely on such evidence because of hearsay concerns, and it will not allow Plaintiffs here to do so either. *See id.* Nor are allegations from unnamed former government employees enough to undermine the Government's admissible evidence supporting summary judgment.

*Second*, Plaintiffs challenge the Government's declaration from Jill Eggleston, the Associate Center Director in the Freedom of Information and Privacy Act Unit of the National Records Center within USCIS. *See* Pls.' Opp'n at 13–15; Def.'s Reply at 1–5. Plaintiffs argue that the Eggleston declaration is not based on personal knowledge because "Ms. Eggleston does not claim to have ever in her life talked to an asylum officer, or anyone who worked in an asylum office." Pls.' Opp'n at 13–14.

A FOIA declarant "demonstrate[s] ample personal knowledge to render him competent to testify" when, in his declaration, he "attest[s] to his personal knowledge of the procedures used in handling [the FOIA] request and his familiarity with the documents in question." *Spannaus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987). And "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties." *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009); *see also DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (explaining that a FOIA declarant may include information relayed to her "by her subordinates . . . without running afoul of Rule 56"); *Crestek*, 322 F. Supp. 3d at 194 ("Crestek cites no legal authority stating that the person who conducted a search must author the agency's declaration to prove the search's adequacy.").

The Eggleston declaration is appropriate and admissible. Eggleston declares that she is "familiar with USCIS's standard process for responding to FOIA requests," as well as the "actions taken in response" to Plaintiffs' requests in particular. Eggleston Decl. ¶ 3. She also asserts that her statements were "based on [her] personal knowledge, [her] review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to [her] by other USCIS employees in the course of [her] official duties." *Id.* ¶ 4. These statements satisfy the personal knowledge requirement. *Cf. Thompson v. Exec. Off. for U.S. Att'ys*, 587 F. Supp. 2d 202, 208 n.4 (D.D.C. 2008) (describing an admissible declaration, which stated that it rested on the person's "review of [the agency's] official files and records, [her] own personal knowledge, and the information [she] acquired in performing [her] official duties").

Contrary to Plaintiffs' assertion, *see, e.g.*, Pls.' Opp'n at 13–14, *Evans v. Federal Bureau of Prisons*, 951 F.3d 578 (D.C. Cir. 2020) does not counsel otherwise. To start, Plaintiffs say that the *Evans* Court "rejected conclusions offered by an agency employee who did not have personal knowledge of what a prison video camera would record." Pls.' Opp'n at 14; *see also* Pls.' Reply at 6 (stating that "summary judgment was denied" in *Evans* because "[t]he agency official who provided the court with a declaration did not claim to have personal knowledge of the camera's range in the prison"). But the Circuit's opinion does not mention "personal knowledge" once.

It was a lack of specificity—not personal knowledge—that doomed the affidavit in *Evans*. The Circuit held that the agency did not meet its burden to show that Exemption 7 applied to prison surveillance footage because its affidavit "lack[ed] specificity," was "conclusory," and "recite[d] statutory language without demonstrating its applicability to the information withheld." *Evans*, 951 F.3d at 586. The lesson of *Evans* is that "an agency claiming

13

a FOIA exemption may carry [its] burden by the production of affidavits," but "such affidavits must show, with reasonable specificity, why the documents fall within the exemption." *Id.* And the Government complied with that requirement here.

Courts also afford agency declarations a presumption of good faith. *See SafeCard*, 926 F.2d at 1200. Plaintiffs assert that Eggleston's declaration is "confusing and inconsistent." Pls.' Opp'n at 18. But such "purely speculative claims" do not undermine the good-faith presumption to which an agency declaration is otherwise entitled. *Crestek*, 322 F. Supp. 3d at 193–95.

*Third*, Plaintiffs assert that the Government has not carried its burden to withhold the Assessments because it did not sufficiently describe how the agency would be harmed if the entire Assessments were disclosed. *See, e.g.*, Pls.' Opp'n at 15. The Court disagrees.

"To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis*, 971 F.3d at 370 (citing 5 U.S.C. § 552(b) and quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). Exemption 5's deliberative process privilege "protects debate and candid consideration of alternatives within an agency, thus improving agency decisionmaking." *Id.* at 371 (cleaned up). It is "rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Sierra Club*, 141 S. Ct. at 785 (cleaned up).

DHS sufficiently explained why disclosure of the redacted information in the Assessments would cause harm. Its declaration states that, because the Assessments "did not represent the Agency's final decisions and . . . reflect the analysis, opinions, deliberations and recommendations of the asylum officer," the agency "determined that releasing the information that was redacted would chill or deter USCIS employees from engaging in the candid and frank

14

discussions that are so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits."[8]  Eggleston Decl. ¶ 24.  "Such chilling of candid advice is exactly what the privilege seeks to prevent."  *Machado Amadis*, 971 F.3d at 371.[9]

The Circuit's decision in *Machado Amadis* confirms this conclusion.  There, the court considered redacted "Blitz Forms," in which DOJ line attorneys identify and analyze issues presented in FOIA appeals and "make recommendations to senior attorneys."  *Id.* at 370.  The agency produced the Blitz Forms at issue, but "redacted the fields for recommendations, discussion, and search notes."  *Id.*  The Circuit reasoned that the agency's "affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"  *Id.* at 371.  It held that "[t]he agency correctly understood the governing legal requirement and reasonably explained why it was met here."  *Id.*

---

[8]  Plaintiffs argue that DHS' justification for the withholdings here differs from that used in other cases.  Pls.' Opp'n at 17–18.  But so what?  As the Government argues, statements in the agency's declaration will change depending on the focus of the litigation.  *See* Def.'s Reply at 4–5.

[9]  DHS also asserted a second justification—that "revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers could provide a bad actor with information that would allow him to tailor his asylum application and testimony in a favorable, but fraudulent, manner."  Eggleston Decl. ¶ 24.  Whether this justification would be enough is less clear.  *See Ctr. for Investigative Reporting v. DOI*, --- F. Supp. 3d ---, No. 18-CV-1599-DLF, 2020 WL 1695175, at *5 (D.D.C. Apr. 7, 2020) ("[T]he Department must show that disclosure *would* cause reasonably foreseeable harms, not that it *could* cause such harms.").  Because DHS' assertion of chill is sufficient, though, the Court need not address the agency's other reason.

Plaintiffs seek to distinguish this case from *Machado Amadis* only by arguing that there, "the agency adequately and fully explained the contents of the documents, and did not have a history of earlier inconsistencies." Pls.' Opp'n at 18. But here, as in *Machado Amadis*, the agency has "specifically focused on the information at issue" in the Assessments, 971 F.3d at 371 (cleaned up)—in particular, "the analysis, opinions, deliberations and recommendations of the asylum officer," Eggleston Decl. ⁋ 24. And the Circuit did not circumscribe its holding to cases in which the agency never changed its withholding policies.

*Fourth* and relatedly, Plaintiffs argue that the Government changed its withholding policies, undermining DHS' assertion of future harm here. *See, e.g.*, Pls.' Opp'n at 17, 19, 22. Specifically, Plaintiffs say that "DHS routinely released entire assessments to FOIA requesters from 1998-2005" and that doing so caused no harm. *Id.* at 17.

But "an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." *Abtew*, 808 F.3d at 900. Put differently, "[a]lthough an agency may waive the deliberative process privilege as to *a particular document* by releasing it to the public, an agency does not waive the privilege as to an entire class of documents by voluntarily releasing one document of that type." *Bayala v. DHS*, 264 F. Supp. 3d 165, 174 (D.D.C. 2017). As the Circuit has recognized, "that kind of forfeiture rule would encourage agencies to voluntarily release *fewer* documents, a result in tension with FOIA's broad purposes." *Abtew*, 808 F.3d at 900.

Plaintiffs' assertion of inconsistency relies on an alleged seven-year practice from almost two decades ago. For much of that time, DHS did not even exist.[10] The Government may have

---

[10] *History*, Dep't of Homeland Sec. (last visited May 24, 2021), https://www.dhs.gov/history (stating the agency "was established in 2002").

changed its practice for good reason—to allow asylum officers to candidly express their opinions and recommendations. The Court will not punish an agency for learning from past mistakes.

*Finally*, Plaintiffs argue that DHS' release of other "similar" asylum documents "undermines its claim that it will suffer harm if assessments are released in full." Pls.' Opp'n at 20 (cleaned up). But they cite no authority to support their position and, as Plaintiffs acknowledge, these documents relate to different asylum procedures. *See id.* at 20–21.

In sum, the Court determines that the deliberative process privilege applies to the analysis portions of the Assessments.[11] DHS appropriately withheld them under Exemption 5. The Court will therefore grant its motion for summary judgment on this issue.

### B.

Plaintiffs assert that DHS has not released all reasonably segregable information—in particular, the "sources of information" that asylum officers relied on in formulating the Assessments. *Id.* at 23 (cleaned up).

FOIA requires agencies to disclose "[a]ny reasonably segregable portion" of an otherwise exempt record. 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (cleaned up).

---

[11] The Court construes DHS' *Vaughn* index as asserting the work-product privilege as an alternative ground to withhold one section of one Assessment (titled "Focused Legal Analysis"). *See Vaughn* Index at 8. Because the Court finds that the deliberative process privilege shields the analysis portions of the Assessments, the Court need not reach the Government's assertion of the work-product privilege. If the Government relied on the work-product privilege to withhold information that the deliberative process privilege would not otherwise cover, the Court would grant its motion for summary judgment on this issue as conceded, given Plaintiffs' sparse response. *See* Pls.' Opp'n at 11; *Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 11 (D.D.C. 2019) (treating agency's arguments unrefuted by plaintiff as conceded), *aff'd sub nom. Machado Amadis*, 971 F.3d 364.

District courts must "mak[e] an express finding on segregability" before approving of an agency's withholding of exempt documents. *Machado Amadis*, 971 F.3d at 371 (cleaned up).

The Government bears "the burden of demonstrating that no reasonably segregable information exists within documents withheld." *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008) (cleaned up). It "must provide a detailed justification for its non-segregability," but "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up). The Circuit has held that an agency satisfied this burden where it provided "a comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld," along with an affidavit explaining that the agency "conducted a line-by-line review of each document withheld in full and determined that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions." *Id.* (cleaned up). The Circuit has likewise held that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient" to find that the agency complied with its requirement. *Loving*, 550 F.3d at 41. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117.

Here, the *Vaughn* index adequately describes DHS' withholdings within the Assessments and provides the exemption relied on. *See Johnson*, 310 F.3d at 776; *see also Vaughn* Index at 2, 8, 14, 27. DHS' declaration also explains that "it released all segregable material." *Loving*, 550 F.3d at 41. It provides that, as to the material withheld under Exemption 5, "[o]nly predecisional and deliberative material was withheld and all other information was segregated and released." Eggleston Decl. ⁋ 27. It also states more broadly that after the agency reviewed the redactions

18

applied and "considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations," it determined that "no further segregation" was "possible without disclosing information that warrants protection under the law." *Id.* ¶¶ 27, 38. That the agency released the factual portions of the Assessments but withheld the analysis portions is also evidence that it segregated exempt from non-exempt information. *Cf. Bayala*, 264 F. Supp. 3d at 177 (finding that the analysis portion of an Assessment to Refer exempt but the factual portion non-exempt and segregable).

The Court finds that the agency has met its burden on segregability and that Plaintiffs have not submitted evidence to overcome the presumption afforded to the agency.[12] *See Sussman*, 494 F.3d at 1117.

Incidentally, Plaintiffs concede the adequacy of DHS' search. Pls.' Opp'n at 8. In any event, the Court would independently find that the search was adequate. *Cf. Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, 405 F. Supp. 3d 127, 139 (D.D.C. 2019) (explaining that, although the plaintiff did "not challenge the adequacy of the defendants' search . . . the Court has an independent duty to determine whether the government has met its FOIA obligations"). DHS determined that any responsive records "would be located in the [Plaintiffs'] A-Files"—their "Alien File" where "all immigration transactions involving a particular individual are documented and stored." Eggleston Decl. ¶¶ 8, 10. The agency has met its burden

---

[12] Congress added another segregability provision in 2016. *See* 5 U.S.C. § 552(a)(8)(A)(ii) (requiring an agency to "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible" and "take reasonable steps necessary to segregate and release nonexempt information"). But this provision "appears to require no more than" what the Circuit has interpreted 5 U.S.C. § 552(b) to require. *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 115 (D.D.C. 2019). While Plaintiffs argue that having a segregability requirement in two sections "shows that Congress was serious about" it, Pls.' Opp'n at 24, they point to no authority that the provision requires a different standard. Regardless, the Court finds that DHS has satisfied § 552(a)(8)(A)(ii) as well.

to "show that it made a good faith effort to conduct a search for the requested records." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

C.

The Court finally considers the policy-or-practice and negligent training claims.

*First*, Louise Trauma Center's "policy-or-practice" claim. Pls.' Mot. at 9; Pls.' Opp'n at 27. Neither the Complaint nor Plaintiffs' briefs expound on this claim or cite legal authority to support it. As best the Court can tell, Louise Trauma Center challenges the agency's "continued policy and/or pattern and practice of not releasing entire Assessments." Compl. ¶ 309 (explaining "Commonality" as to class allegations). Among other things, the Center asks the Court to "[d]eclare that the policy and practice of defendant of refusing to disclose [the Assessments] violates FOIA." *Id.* at 47.

The Court must first consider whether Louise Trauma Center has standing to bring this claim. "[A] plaintiff seeking to assert a 'policy-or-practice' claim under the FOIA must satisfy constitutional standing requirements, just like any other plaintiff." *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 120 (D.D.C. 2018). A plaintiff can satisfy the injury-in-fact requirement when challenging a policy or practice if it "demonstrates that it will be subjected in the near future to the particular agency policy or practice that it challenges under FOIA." *Id.* (cleaned up).

Thus, "[w]hen a plaintiff seeks injunctive or declaratory relief specifically for the purpose of challenging an alleged policy or practice of a government agency, it must also demonstrate that it is realistically threatened by a repetition of its experience." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 91 (D.D.C. 2013) (cleaned up) (citing *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987)). Article III requires "more than generalized plans to file unspecified requests for information at some uncertain point in the future." *Tipograph v. DOJ*, 146 F. Supp. 3d 169,

20

175 (D.D.C. 2015). "[T]o challenge an agency policy or practice as a violation of FOIA, a plaintiff must establish *likely* future injury that is both concrete and *imminent*." *Id.* (cleaned up). While "general factual allegations of injury" may be enough to show standing at the pleading stage, "the plaintiff can no longer rest on such mere allegations" at summary judgment. *Lujan*, 504 U.S. at 561 (cleaned up). It "must set forth by affidavit or other evidence specific facts." *Id.* (cleaned up).

Louise Trauma Center has not shown that it is likely to suffer a future injury. True, it alleges that it "helps asylum applicants," "has made FOIA request for Assessments of asylum applicants in the past, and will continue to do so in the future." Compl. ¶ 215; *see also id.* ¶ 265 (stating that the Center "relies heavily and frequently on FOIA to conduct work that is essential to the performance of certain of its primary institutional activities"). But mere allegations cannot survive summary judgment. *See Lujan*, 504 U.S. at 561; *see also Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.*, 369 F. Supp. 3d 141, 145 (D.D.C. 2019) (noting plaintiff's burden to show standing grows heavier at each stage of litigation).

The Center submits no evidence showing, for example, that it has other FOIA requests for Assessments pending or that it will submit future requests. *Cf. Gatore v. DHS*, 327 F. Supp. 3d 76, 92 (D.D.C. 2018) (finding an organization had standing where it "assert[ed] that it has several FOIA requests for assessments pending" and where "the record support[ed] [its] assertion that it will continue to make FOIA requests for assessments in the future" because it had, among other things, "made twenty new requests for assessments" after filing its class-certification motion (cleaned up)). When (as here) a plaintiff does not show that it "has any FOIA requests pending that could implicate the alleged . . . policy or practice nor identifies a specific FOIA

29

request that [it] intends to file in the near future" and "claims only that [it] will continue submitting FOIA requests," it lacks standing. *Tipograph*, 146 F. Supp. 3d at 177 (cleaned up).[13]

*Second*, all Plaintiffs argue that DHS has not adequately trained its FOIA processors on the 2016 FOIA amendment. *See* Pls.' Mot. at 8; Pls.' Opp'n at 27; *see also* Compl. at 38–39. They ask the Court to "[o]rder defendant to revamp and improve its training of officers." Compl. at 47. While Plaintiffs do not develop their legal basis for this claim either, the Court construes it as a policy-or-practice claim, as Plaintiffs challenge DHS' alleged policy of not training processors and seek injunctive relief. For the reasons just explained, Plaintiffs lack standing to pursue this claim too. Plaintiffs have submitted no evidence showing that they will be harmed by the allegedly inadequate training in the future.[14] *Cf. Gatore*, 327 F. Supp. 3d at 104 ("[T]he individual plaintiffs have not asserted that they are suffering an ongoing injury or face an immediate threat of injury; rather, they assert only that their FOIA requests for their assessments have been denied, which is a past harm insufficient to establish entitlement to prospective relief.").

---

[13] Louise Trauma Center provides no evidence to support its policy-or-practice claim on the merits either. Because Plaintiffs have not shown that the Government violated FOIA by withholding the analysis portions of the Assessments here, Louise Trauma Center cannot make out its more sweeping claim based on this practice. *Cf. Muckrock*, 300 F. Supp. 3d at 136 (entering summary judgment for the plaintiff when the Court found "there [was] no genuine dispute that the CIA has employed a policy" that "violates the FOIA"); *Gatore*, 327 F. Supp. 3d at 99 (determining that the plaintiff "presented evidence showing that all assessments contain at least some reasonably segregable material, and consequently, that the defendant's challenged policy or practice . . . violates the FOIA").

[14] Even if the Court were to conclude that Plaintiffs had standing, Plaintiffs cite no legal authority showing the agency's training is inadequate under FOIA—the only statute they rely on. More, the Court has already found that DHS complied with the requirements in the 2016 amendment by adequately explaining the harm that would occur if the withheld information were disclosed. *See, e.g.*, Eggleston Decl. ¶ 24.

**IV.**

For all these reasons, Defendant's motion for summary judgment will be granted, and

Plaintiffs' cross-motion for summary judgment will be denied.[15]  A separate Order will issue.

2021.06.03
12:59:50 -04'00'

Dated: June 3, 2021                                     TREVOR N. McFADDEN, U.S.D.J.

---

[15]  Because of this decision, Plaintiffs' Motion for Class Certification, ECF No. 13, will be
denied as moot.  Plaintiffs' Motion for Leave to File a Sur-reply, ECF No. 22, will be granted in
part.  The Court will allow the sur-reply as to Plaintiffs' arguments about the Supreme Court's
recent decision in *Sierra Club*.  But Plaintiffs' motion will otherwise be denied.  Besides *Sierra
Club*, the Government's Notice of Supplemental Authority, ECF No. 21, did not raise issues that
were not already presented in its summary judgment briefing.  A sur-reply is thus not warranted
as to Plaintiffs' other arguments.  *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113
(D.D.C. 2002) ("The standard for granting leave to file a surreply is whether the party making
the motion would be unable to contest matters presented to the court for the first time in the
opposing party's reply." (cleaned up)).  Even if the Court had granted Plaintiffs' motion for leave
to file in its entirety, nothing in their proposed sur-reply would have changed the outcome here.