UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMARA EMUWA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | Civil Action No. 20-1756 (TNM) |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DEREK S. HAMMOND, D.C. Bar # 1017784
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-2511
Derek.Hammond@usdoj.gov

Dated: January 17, 2022              *Attorneys for the United States of America*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

BACKGROUND ............................................................................................................................ 1

        A.     Assessments and USCIS's Adjudication of Asylum Applications ............. 2

        B.     Procedural Posture ........................................................................................ 3

ARGUMENT .................................................................................................................................. 4

        A.     FOIA's Foreseeable Harm Requirement ..................................................... 4

        B.     The Agency Has Demonstrated Foreseeable Harm in this Case. ............... 5

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Cases

*Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*,
  Civ. A. No. 18-0155 (TNM), 2021 WL 4843970 (D.D.C. Oct. 18, 2021) .................................. 7

*Ctr. for Investigative Reporting v. CBP*,
  436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................................................ 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................................................. 6, 7

*Jud. Watch, Inc. v. U.S. Dep't of State*,
  Civ. A. No. 20-0124 (CRC), 2021 WL 3633611 (D.D.C. Aug. 17, 2021) .............................. 8

*Leopold v. Dep't of Just.*,
  Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) ................................ 8

*Machado Amadis v. Department of State*,
  971 F.3d 364 (D.C. Cir. 2020) ............................................................................... 4, 5, 6, 7, 8

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021) ............................................................................................................ 6

Statutes

5 U.S.C. 552(b)(5) ..................................................................................................................... 4

5 U.S.C. § 552(a)(8)(A) ............................................................................................................. 4

This is an action brought by four individuals and an organization under the Freedom of Information Act ("FOIA") in which they seek four "Assessments to Refer" ("Assessments") from the U.S. Department of Homeland Security ("DHS" or "the Government"). Assessments are brief documents containing an asylum officer's impressions after an asylum interview and his recommendation on whether asylum should be granted. While DHS released the factual portions of the Assessments, Plaintiffs seek the analysis portions too. In June 2020, this Court, consistent with binding Circuit precedent, held that DHS had properly withheld those documents under Exemption 5 and the deliberative process privilege. Plaintiffs immediately appealed and, one month later, the D.C. Circuit issued its opinion in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), which clarified FOIA's foreseeable harm requirement. This case was then remanded for further proceedings in light of that decision. DHS now submits this supplemental memorandum to further explain the foreseeable harm associated with releasing the withheld material.

## BACKGROUND

Plaintiff Louise Trauma Center, LLC submitted FOIA requests to U.S. Citizenship and Immigration Services ("USCIS"), a component of DHS, on behalf of plaintiffs Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and FNU Alatanhua. The FOIA requests concern Assessments which are prepared after an asylum interview and recommend whether to grant asylum. If USCIS ultimately determines that the applicant is not eligible for asylum, it sends the individual a "Referral Notice" advising that the agency has made a final decision to refer him to an immigration judge for removal proceedings. USCIS released the requested Assessments in part, but withheld some information pursuant to FOIA Exemption 5 and the deliberative process privilege.

### A.     Assessments and USCIS's Adjudication of Asylum Applications

Assessments are a crucial part of the process by which USCIS adjudicates asylum applications. Suppl. Decl. of Cynthia Munita ("Munita Decl.") ¶ 9. The Assessments at issue here are documents that were prepared by the USCIS asylum officers who interviewed the four asylum-applicant Plaintiffs. *Id.* These Assessments were prepared by the asylum officers for their supervisors and document their candid impressions, opinions, and analyses of the evidence and explain the bases for their initial recommendations that the applications be denied and that the applicants be referred to immigration court for removal proceedings. *Id.* These Assessments were reviewed by the asylum officers' supervisors, who in turn made the ultimate decision on the asylum applications. *Id.* at ¶ 10. Thus, the information withheld in the Assessments did not represent the Agency's final decisions, but were instead only the initial analysis, opinions, deliberations and recommendations of the asylum officers. *Id.*

To ensure that asylum applications are properly adjudicated, it is critical that asylum officers be free to provide candid assessments of the evidence and eligibility criteria to their supervising officials for an ultimate determination. *Id.* at ¶ 11. Asylum officers reasonably expect that the deliberations and initial recommendations that are contained within their Assessments will be viewed only by those within USCIS for purposes of rendering a final decision on asylum applications. *Id.* It is only due to this expectation that these officers are able to render candid opinions and advice in the sensitive context of asylum adjudication to supervising officials. *Id.*

The withheld portions of the four assessments at issue in this case reflect the asylum officer's analysis, opinions, deliberations, and recommendation regarding each applicant's eligibility for asylum. *Id.* at ¶ 12. Specifically, these paragraphs reflect analysis by the asylum officer of testimonial and documentary evidence presented by the applicant and the opinion or recommendation as to whether the evidence satisfies certain eligibility criteria, as well as analysis

of all other factors pertinent to the applicant's eligibility. *Id.* In each case, the withheld information contains the officers' specific rationale for determining whether certain facts have been established or eligibility standards met. *Id.* at ¶ 13. This includes reasons for crediting or discrediting the veracity of the applicants' statements and their assessments of whether the evidence submitted by the applicant is internally consistent and/or consistent with other evidence or information known to the asylum officer. *Id.*

Revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner. *Id.* at ¶ 14. For example, revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses. *Id.*

**B.     Procedural Posture**

In June 2020, this Court, consistent with binding Circuit precedent, held that DHS had properly withheld the deliberative portions of the Assessments under Exemption 5 and the deliberative process privilege. *See* ECF No. 23. Plaintiffs immediately appealed and, one month later, the D.C. Circuit issued its opinion in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), which clarified FOIA's foreseeable harm requirement. This case was then remanded for further proceedings in light of that decision. *See* ECF No. 27. DHS now submits this supplemental memorandum to further explain the foreseeable harm associated with releasing the withheld material.

**ARGUMENT**

**A.     FOIA's Foreseeable Harm Requirement**

Under the FOIA Improvement Act, an agency is permitted to withhold information pursuant to a valid FOIA exemption if "(I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]"  5 U.S.C. § 552(a)(8)(A).  Two recent cases from the D.C. Circuit demonstrate how courts should deal with the foreseeable harm requirement.

In *Machado Amadis v. Department of State*, 971 F.3d 364, 370 (D.C. Cir. 2020), the agency withheld certain recommendations, discussion, and search notes about FOIA processing pursuant to Exemption 5, 5 U.S.C. 552(b)(5), and the deliberative process privilege.  There, the Circuit found both that the privilege applied, and that the foreseeable harm requirement had been met.  *See id.*  The agency's declaration said that disclosure of the forms would discourage candid discussions among line attorneys, thereby hindering "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* at 371 (quoting agency declaration).  The court rejected the plaintiff's counterargument that the agency had provided only "generalized assertions that 'could' chill deliberations." *Id.* (quoting plaintiff's brief).  According to the court, the agency instead had "specifically focused on the information at issue" in the forms and had "concluded that disclosure of that information 'would' chill future discussions." *Id.* (quoting agency declaration). Thus, the agency permissibly withheld the privileged information.

The D.C. Circuit addressed the foreseeable harm requirement again in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021). In that case, the Plaintiff had submitted multiple FOIA requests for records about FBI agents impersonating reporters.  In responding to those requests, the FBI withheld information pertaining to six different categories of records under the deliberative process privilege.  The Court concluded that the FBI's assertion

of foreseeable harm, however, was largely wanting. It faulted the FBI because it "failed to 'specifically focus' its foreseeable harm demonstration 'on the information at issue in the documents under review.'" *Id.* at 370 (cleaned up). Indeed, the "FBI's broad assertion of foreseeable harm from release of the records under its control was contained in just two 'umbrella paragraphs' that purported to sweepingly address '*all* of the deliberative information in the case.'" *Id.* (emphasis in original). And the "assertion of harm in those umbrella paragraphs [was] wholly generalized and conclusory, just mothing the generic rationale for the deliberative process privilege itself." *Id.* Accordingly, the Court held that

> In short, to sustain withholding information under FOIA after *Amadis* and *Reporters Committee*, agencies must make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward." *Id.* "Naturally, this inquiry is context specific." *Id.* This showing can be made on "a category-by-category basis[.]" *Id.* Even without a sufficient explanation from the agency, however, the "context and purpose" of withheld information can support a finding of foreseeable harm. *Id.* at 372. If the foreseeable harm requirement is not met, disclosure is warranted. *See Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) ("In sum, FOIA now requires that an agency release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.") (cleaned up).

B.  **The Agency Has Demonstrated Foreseeable Harm in this Case.**

In this case, DHS has determined that revealing the analysis, opinions, deliberations, and recommendations contained in the Assessments would result in foreseeable harm and therefore its withholdings were appropriate. The deliberative process privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a

potential item of discovery and front page news.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). And, as in *Machado Amadis*, DHS has provided agency declarations that "specifically focused on 'the information at issue' and 'concluded that disclosure of that information would chill future internal discussions.'" *Machado Amadis*, 971 F.3d at 371.

As explained in the Munita Declaration, DHS has determined that "[r]evealing the specific pre-decisional deliberations withheld from the Assessments in this case would interfere with USCIS's ability to make sound judgments on asylum applications." Munita Decl. ¶ 14. USCIS's adjudication of asylum applications is a topic of national concern that is often covered by the media. *See, e.g.*, *id.* at ¶ 8; Harmeet Kaur, CNN, *US Immigration Policies Toward Haitians Have Long Been Racist, Advocates Say* (Oct. 3, 2021) (available at https://www.cnn.com/2021/10/03/us/haitian-migrants-us-immigration-policy-racism-cec/index.html); Hamed Aleaziz, BUZZFEED NEWS, *Biden is Planning to Make Big Changes to How the US Handles Asylum-Seekers at the Border* (May 28, 2021) (available at https://www.buzzfeednews.com/article/hamedaleaziz/biden-new-asylum-process-plan). "Asylum officers reasonably expect that the deliberations and initial recommendations that are contained within their Assessments will be viewed only by those within USCIS for purposes of rendering a final decision on asylum Applications." *Id.* ¶ 11. "It is only due to this expectation that these officers are able to render candid opinions and advice in the sensitive context of asylum adjudication to supervising officials." *Id.*

If the information in this case were revealed, it would "cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum eligibility criteria in an open and frank manner." *Id.* at ¶ 14. Indeed, rather than "focusing on providing cogent analysis, recommendations, and guidance, asylum officers would temper their discussions with the

knowledge that their views and characterizations would be made public." *Id.* And "[b]ecause candid evaluation by asylum officers is so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits, disclosure of the withheld information would seriously impair USCIS's mission in adjudicating those petitions." *Id.* "Asylum adjudications are at their best when officers are able to focus on the substance of the information they are providing and not on whether their initial analyses, impressions, and recommendations may at some point be made publicly available." *Id.*

Moreover, DHS has determined that "revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner." *Id.* at 15. For example, "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." *Id.* The harm associated with disclosing information that could be used for nefarious purposes is certainly sufficient to establish "foreseeable harm" under FOIA. *See Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, Civ. A. No. 18-0155 (TNM), 2021 WL 4843970, at *22 (D.D.C. Oct. 18, 2021) (holding that agency demonstrated foreseeable harm when disclosure of information, including what behaviors trigger a full investigation and how agency uses its summons authority to conduct investigations, "would be a boon to potential criminals"). But disclosure of this information would not only provide would-be bad actors with information that could be used to undermine USCIS's asylum adjudications, it would also "further stifle the free

flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations." Munita Decl. ¶ 15.

In view of the foregoing, DHS has adequately explained why the disclosure of the specific information contained in the four Assessments would result in foreseeable harm. This articulation of the foreseeable harm is on par with that which was approved of in *Machado Amadis*. *See Machado Amadis*, 971 F.3d at 371 ("[The agency's] affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"); *see also Reporters Comm.*, 3 F.4th at 371 (reaffirming that redactions in *Machado Amadis* were justified because "the government directly articulated a link between the specified harm and the specific information contained in the material withheld" (cleaned up)); *Jud. Watch, Inc. v. U.S. Dep't of State*, Civ. A. No. 20-0124 (CRC), 2021 WL 3633611, at *6 (D.D.C. Aug. 17, 2021) (holding disclosure of draft issue paper would cause foreseeable harm by leading officials to "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy"); *Leopold v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866, at *5 (D.D.C. July 23, 2021) (holding agency demonstrated foreseeable harm where agency explained that disclosure of documents "would severely harm the efficient day-to-day workings of the Department, as Department staff engaging in these discussions would no longer feel free to discuss their ideas and strategies among one another, or provide advice to those in decision-making positions").

Because DHS has made "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward," *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th at 370, this Court should find that DHS has met its burden of establishing foreseeable harm.

## CONCLUSION

In light of the foregoing, Defendant respectfully requests that this Court find that it has adequately demonstrated foreseeable harm.

Dated: January 17, 2022
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


By: _____/s/ Derek S. Hammond_____
DEREK S. HAMMOND
D.C. Bar # 1017784
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-2511
Derek.Hammond@usdoj.gov

*Attorneys for the United States of America*