# Exhibit A
# Assessment of Mr. Kapende

ASSESSMENT TO REFER

ALIEN NUMBER: ▓▓▓▓▓▓                ASSESSMENT DATE: 6/12/2017

NAME: KAPENDE ▓▓▓▓▓▓                ASYLUM OFFICER: S. VanderMeer; ZAR474

COUNTRY: Democratic Republic of the Congo   REVIEWING SAO: K. Osuji; ZAR438

LOCATION: ZAR

The applicant indicated that he is a 15-year-old male native and citizen of the Democratic Republic of the Congo, who entered the United States at Washington-Dulles International Airport on September 14, 2015, on a B1/B2 visa valid until December 31, 2016. The applicant is not in lawful status.

The applicant was represented by his attorney, David Cleveland, during the course of his asylum interview. The interview was conducted in English because the applicant was comfortable speaking English with the officer.

The applicant fears he will be kidnapped or killed by unknown government officials in the Democratic Republic of the Congo (DRC) on account of his membership in a particular social group of *Family member of his father*. ▓▓▓▓▓▓

Under the William Wilberforce Trafficking Victims Protection Act of 2008 (TVPRA), USCIS has initial asylum jurisdiction over any asylum application filed by an unaccompanied alien child. An unaccompanied alien child (UAC) is a child who has no lawful immigration status in the United States; has not attained 18 years of age; and has no parent or legal guardian in the United States, or for whom no parent or legal guardian in the United States is available to provide care and physical custody. During the course of the interview, the applicant was determined to be a UAC. The applicant entered the United States under the age of 18 years old, he was also unaccompanied by either his parents or a legal guardian. Furthermore, at the time of filing, the applicant did not have any legal guardian in the United State. As USCIS has determined that the applicant is found to be a UAC, USCIS has jurisdiction to adjudicate the applicant's asylum claim pursuant to the TVPRA. Further, because the applicant is a UAC, his application is not subject to the one year filing deadline.

The applicant testified as follows: On January 23, 2015 the applicant was approached by five individuals with weapons while waiting for the bus in the Democratic Republic of the Congo. The applicant said that these individuals put the gun to the applicant's back and told him to follow them. The applicant was then placed in a car and driven what he said seemed like hours. The applicant was taken to a house and was kept there for three days. During that time, these individuals did not harm the applicant; they only came in to tell the applicant that if they didn't get his father, they were going to beat him. The applicant stated that there were other individuals in different rooms that he could hear being beaten. After three days the applicant was placed back in the car and driven to be dropped off. During this time, he was thrown out of the vehicle and sustained minor injuries. The applicant claimed that after this, his father wanted him to be brought to a hospital to have his blood tested for poison. The applicant learned that he was not poisoned, but was checked for any serious harm. The applicant believes that these individuals who kidnapped him were part of the government because they spoke Swahili, which most people in the government speak. He did not go to the police because they also work for the government and he could be harmed for going. After this, the applicant remained in the DRC for another 8 months prior to coming to the U.S. without being threatened or harmed.

The applicant fears that if he were to return to the DRC, he would be kidnapped again and possibly killed by individuals working for the government. He believes that these individuals would harm him as a way to get to his father. Since leaving, the applicant has not received any threats. The applicant stated that he did not know where his parents were, however during the interview he stated that he speaks to his family every month or so. He stated that they are still in hiding but that his siblings still go to school. He also claimed that they have not been attacked or harmed since he came to the U.S.

The applicant stated that he did not fear anyone else in the Democratic Republic of the Congo. The applicant also stated that no one has mistreated, threatened or harmed him besides the aforementioned.

The credibility of the applicant's testimony was analyzed in accordance with the *Guidelines for Children's Asylum Claims*. Factors such as the applicant's demeanor, ability to articulate his thoughts and provide detail about his experiences, and possible responses to past trauma were all considered in light of the applicant's age and cultural background. His testimony was detailed, consistent, and plausible, and therefore after considering these factors, the applicant's testimony was found credible.

To receive asylum, an asylum-seeker must show past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

The applicant claims to have been harmed on account of his membership in the particular social group of *Family member of his father,* ~~[redacted]~~ This was considered when evaluating past persecution. The BIA has established a three prong test for evaluating whether a group meets the legal definition of a particular social group. First, the group must consist of individuals who share a common, immutable characteristic that is so fundamental to a person that they cannot change it or should not be required to change it. *See Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985). Second, the group must be defined by characteristics that provide a clear benchmark for determining who falls within the group. *See Matter of A-M-E- & J-G-U-*, 24 I&N Dec. 69, 76 (BIA 2007). Third, the group must be recognizable and distinct in society. *See* Matter of C-A, 23 I&N Dec. 951 at 959-961 (BIA 2006).

First, a family unit shares a common, immutable characteristic that individuals of the family cannot change or that they should not be required to change because it is so fundamental to their identity. *Matter of Acosta*, 19 I&N Dec. at 211. Being a member of a family unit is an immutable characteristic that cannot be changed because they are bound together by familial ties.

Second, the family relationship is socially distinct because it is of a nature and degree that would be recognized by society as significant and society would view people related in this way as a distinct, recognizable group. *Matter of C-A*, 23 I&N Dec. 951, 959-961 (BIA 2006). Per *M-E-V-G-*, "a viable particular social group should be perceived within the given society as a sufficiently distinct group. The members of a particular social group will generally understand their own affiliation with the grouping, as will other people in the particular society." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 238 (BIA 2014). The applicant's relationship to his father is of a nature and degree that would be recognized as significant by the DRC society, and thus is socially distinct.

Third, the group must be recognizable and distinct in the society. See Matter of C-A, 23 I&N Dec. 951 at 959-60 (BIA 2006). Essentially, the social distinction element requires that the members of the group possess traits that reflect social distinctions. The court found in *Crespin-Valladares v. Holder*, that "[t]he family unit...possesses boundaries that are at least as 'particular and well-defined' as other groups whose members have qualified for asylum," thus, meeting the particularity requirements per *Matter of M-E-V-G-*. *Crespin-Valladares v. Holder*, 632 F.3d 117, 125-126 (4th Cir. 2011). DRC society clearly recognizes families as distinct social groups.

2

Thus, the particular social group of *Family member of his father, ▓▓▓▓▓▓▓▓▓▓▓* is a cognizable particular social group.

Based off of the applicant's testimony, the applicant was threatened or harmed on account of his membership in the particular social group of *Family member of his father ▓▓▓▓▓▓▓▓▓▓*. The applicant was kidnapped at gunpoint on one occasion and held for three days. Though during this time he was never beaten or harmed, the fact that the applicant was only 12 years old at the time could cause a significant amount of fear for the applicant. During the time the applicant was in the custody of these individuals, they told him that he would be beaten if they did not get his father in return. The applicant's father never came for him and the applicant was not beaten as a result. Three days later the applicant was released, however he was thrown out of a moving vehicle and sustained injuries to his arm. Considering the age of the applicant at the time these events occurred, being twelve years old, being kidnapped at gunpoint, being held for three days and ultimately being threatened if his father did not show, and being thrown from the moving vehicle, this harm is deemed to be severe enough to amount to past persecution.

Having established that he experienced past persecution, it is presumed that applicant has a well-founded fear based on the same claim. A preponderance of the evidence establishes that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution if he were to return. First, the applicant lived in the DRC for eight months after he was kidnapped. During this time no one came to threaten or harm him. The applicant was also never kidnapped again after the first time. Second, the applicant has not been threatened since he left his country. Third, the applicant speaks with his family members on a regular basis and has learned that none of his family members have been harmed or kidnapped since the applicant left his country. If these individuals wanted the applicant or the applicant's family members, why would they not have kidnapped his brothers and sisters since he was not in the country. This shows a lack of inclination on the persecutor's part and shows that they would not kidnap or harm the applicant in the future. Therefore, presumption of well-founded fear has been rebutted.

Although it has been determined that the applicant's fear of future persecution is no longer well-founded, the applicant may be considered for a grant of asylum in the exercise of discretion. This is only if the applicant has demonstrated a compelling reason for being unwilling to return due to the severity of the persecution he suffered or if the applicant established that there is a reasonable possibility that he may suffer other serious harm. In this case, the persecution that applicant suffered in the past was not so severe as to provide compelling reasons of a grant of asylum in the absence of a well-founded fear of persecution. The applicant has also not suffered any other serious harm in the DRC besides the aforementioned. Therefore, the applicant has not shown there is a reasonable possibility of suffering persecution if he were to be returned to the DRC.

There are no mandatory bars or discretionary factors that make the applicant ineligible for asylum. During the course of the interview, the applicant stated that he had lied to a U.S. government official in order to obtain a visa to the United States. The applicant supplied different information on his I-589 and his visa application regarding his family members. On the applicant's I-589, he claimed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were his parents. On the applicant's visa application, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were his parents. The applicant stated that he was told to lie to the official and state that ▓▓▓▓▓▓▓▓▓▓▓ were his biological parents and that they would be travelling with him in order to gain a visa to the U.S.

For the foregoing reasons, the applicant is not eligible for asylum status in the United States.

Assessment is to refer to the Immigration Judge.  3