# EXHIBIT D

Assessment dated April 9, 2014

ASSESSMENT TO REFER

ALIEN NUMBER: A ███████             DATE: April 9, 2014

NAME: T ███████                     ASYLUM OFFICER ███████

COUNTRY: Ethiopia                    REVIEWING SAO: ███████

LOCATION: ZAR

The applicant indicated that she is a 48 year-old female native and citizen of Ethiopia who entered the United States at Washington Dulles airport on ███████ 13, as a B2 visitor for pleasure until November 21, 2013. The applicant is not in lawful status.

The applicant was not represented by an attorney. The interview was conducted with the use of an Amharic interpreter, ███████. The I-589 was prepared with the assistance of ███████

The applicant fears that she will be arrested, detained, and tortured by the Government of Ethiopia on account of her political opinion.

The applicant filed the asylum application on February 3, 2014. The applicant established by clear and convincing evidence that the application was filed within one year after the last date of arrival to the United States. DHS databases and documentary evidence demonstrate that the applicant last arrived on May 22, 2013. Therefore, applicant filed a timely application.

The applicant testified to the following:

The applicant has been involved in political activity since the 2005 elections in Ethiopia. She was an outspoken supporter of the Coalition for Unity and Democracy (CUD). She made financial contributions and provided use of her truck for election campaigns. On election day the applicant served as an observer for the CUD. In 2008 the applicant joined the Unity for Democracy and Justice (UDJ) party. She was also an organizer and board member of the local neighborhood association, or *Eder*. Because she served in this role she was invited to attend a meeting of all local neighborhood associations on March 13, 2010.

The March 13, 2010 neighborhood association meeting was ordered by the central government. The applicant was told that the purpose of the meeting was to develop a 1 to 5 scheme whereby one household would be a "representative" of 5 other households. The applicant testified that the household in charge would act as a spy for the government. She spoke out at the meeting and said that the 2005 rigged election results are still fresh in everyone's mind and that people were arrested and disappeared following protests after the election. The applicant also stated that people don't trust the government, they are suspicious of this 1 to 5 model, and the government should start

recognizing opposition parties. The Chairman of the meeting was angry and threatened her by saying that those who undermine government directives will be punished.

Two days later on Monday, March 15, 2010, four officers came to her home and accused her of selling contraband goods in her clothing boutiques. They put her under arrest and took her to the police station where she remained in detention. She was questioned about her ethnic identity, political affiliations, and the statements she made at the meeting. The applicant testified that she was detained for two and a half months and released on May 31, 2010, just one week after the election. She signed a statement upon release that she would not participate in any anti-government activity. She had to pay a bribe to get her business license back and claimed that security agents were following her and would search her store from time to time.

The applicant secured student visas to send her daughters to the United States to attend school. The applicant fled Ethiopia with her son on May 22, 2013. Since her arrival in the United States, security agents in Ethiopia have been looking for her and warned her sister that the applicant should report to them immediately. The applicant also testified to having been subjected to female genital mutilation at the age of 8.

The Board of Immigration Appeals using the guidance of the REAL ID Act found that credibility should not be viewed as a self-contained body of evidence but rather should be viewed in the light of the "totality of the circumstances." Matter of J-Y-C, 24 I&N Dec. 260, 262 (BIA 2007); INA § 208 (b)(1)(B)(iii). Any inconsistencies need not be material but rather relevant to the claim for asylum. The applicant's testimony was found not credible due to inconsistencies with government records.

The applicant testified that she was arrested on March 15, 2010 and released from detention on May 31, 2010. However, U.S. State Department records confirm that the applicant was at the U.S. Embassy in Ethiopia on May 19, 2010, applying for a non-immigrant visa. She was fingerprinted on this date. When asked how it was possible that she was at the U.S. Embassy on a day that she claims to have been in detention, the applicant attempted to blame it on a date error associated with the Ethiopian-Gregorian calendar conversion. The applicant stated twice that she was released from detention one week after the election, and that she was in detention for two and a half months. The election was held on May 23, 2010. *See* Human Rights Watch, *Ethiopia: Government Repression Undermines Poll*, 24 May 2010, available at: http://www.refworld.org/docid/4c0367b91e.html [accessed 11 April 2014]. Regardless of any issue with calendar conversion, if the applicant was released one week after the election, and had been detained for over two months, it is not possible for her to have appeared at the U.S. Embassy on May 19, 2010. The applicant could not provide an explanation for this discrepancy. This is material because it casts doubt on whether or not the applicant was ever detained and persecuted in Ethiopia. It also shows a propensity to not tell the truth.

The applicant presented a number of documents to corroborate her claim. The applicant presented a personal statement, documentary evidence of FGM, documents showing she

2



visited a medical clinic in Ethiopia for headaches, affidavits from members of her neighborhood association, and copies of her business licenses. These documents do not overcome her non-credible testimony.

The applicant also testified to having been subjected to FGM at the age of 8. She remembers experiencing pain from the procedure and said that it caused her to have complicated child birth. The applicant said that she had to fight her husband and his family to not subject their daughters to the procedure. The applicant does not have a fear of returning to Ethiopia and being forced to undergo further FGM. She testified only that is has caused her to lose interest in sex. In addition, her daughters are currently in the United States attending college. The applicant did not express a fear of returning to Ethiopia because of the possibility of her daughters being subjected to FGM.

As the applicant's testimony was not credible in material respects, she has failed to meet her burden of establishing that she is a refugee as required by 8 C.F.R. 208.13. Consequently, she is ineligible for asylum. For the foregoing reasons, the applicant is not eligible for asylum status in the United States.

For the foregoing reasons, the applicant is not eligible for asylum in the United States.

Assessment is to refer to the Immigration Judge.