UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMARA EMUWA, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>       Defendant. | Civil Action No. 20-1756 (TNM) |

**DEFENDANT'S SUPPLEMENTAL REPLY BRIEF**

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DEREK S. HAMMOND, D.C. Bar # 1017784
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-2511
Derek.Hammond@usdoj.gov

*Attorneys for the United States of America*

Dated: February 14, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

    I.    Plaintiffs' Arguments Regarding DHS' Declarant are Unfounded ........................ 1

    II.    The Agency Has Demonstrated Foreseeable Harm in this Case. ........................... 3

    III.    DHS Has Released All Reasonably Segregable Information. ................................ 8

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

Cases

*Abtew v. U.S. Dep't of Homeland Sec.*,
   808 F.3d 895 (D.C. Cir. 2015) .................................................................................... 7, 8

*ACLU v. CIA*,
   Civ. A. No. 18-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022) ...................... 6

*Armstrong v. Executive Office of the President*,
   97 F.3d 575 (D.C. Cir. 1996) ....................................................................................... 8

*Barnard v. Dep't of Homeland Sec.*,
   598 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................ 1, 3

*Bayala v. Dep't of Homeland Sec.*,
   264 F. Supp. 3d 165 (D.D.C. 2017) ............................................................................ 7

*Canning v. Dep't of Justice*,
   567 F. Supp. 2d 104 (D.D.C. 2008) ........................................................................... 8

*Ecological Rts. Found. v. U.S. Env't Prot. Agency*,
   541 F. Supp. 3d 34 (D.D.C. 2021) ............................................................................. 1

*Hainey v. U.S. Dep't of the Interior*,
   925 F. Supp. 2d 34 (D.D.C. 2013) ............................................................................. 1

*Jud. Watch, Inc. v. U.S. Dep't of State*,
   Civ. A. No. 20-0124 (CRC), 2021 WL 3633611 (D.D.C. Aug. 17, 2021) ................ 6

*Leopold v. Dep't of Just.*,
   Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) .................. 6

*Machado Amadis v. U.S. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ................................................................................ 2, 5

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) .................................................................................... 8

*Pavement Coatings Technology Council v. U.S. Geological Survey*,
   995 F.3d 1014 (D.C. Cir. 2021) .................................................................................. 5

*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*,
   Civ. A. No. 18-0158 (CKK), 2021 WL 5987008 (D.D.C. Dec. 17, 2021) ............... 3

*SafeCard Servs. Inc. v. U.S. Sec. and Exch. Comm'n*,
  926 F.2d 1197 (D.C. Cir. 1991) .......................................................................................... 1, 2

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................................................. 9

Statutes

5 U.S.C. § 552(b) ............................................................................................................................ 8

Rules

Fed. R. Civ. P. 5.2(c)(2) ................................................................................................................. 7

This is an action brought by four individuals and an organization under the Freedom of Information Act ("FOIA") in which they seek four "Assessments to Refer" ("Assessments") from the U.S. Department of Homeland Security ("DHS" or "the Agency"). In its prior supplemental brief, DHS showed that disclosure of the information withheld from the Assessments would result in foreseeable harm and that its withholding of that information was therefore proper. As shown below, Plaintiffs' provide no reason to conclude otherwise.

## ARGUMENT

### I.  Plaintiffs' Arguments Regarding DHS' Declarant are Unfounded

It is well settled that an agency's affidavits are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims[.]" *SafeCard Servs. Inc. v. U.S. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Nevertheless, in an effort to discredit the declaration of Cynthia Munita, Plaintiffs contend that she relies too heavily on hearsay and/or that she lacks the requisite personal knowledge. *See* ECF No. 31 at 12-13, 16-19. But "in this Circuit, agency declarants' testimony based on information obtained in the course of their official duties or from review of agency records is routinely considered when evaluating an agency's invocation of FOIA exemptions." *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 50 (D.D.C. 2021); *see also Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013) ("[I]t is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'" (quoting *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009)). Thus, in *Machado Amadis v. U.S. Department of State*, it was sufficient for the declarant to describe the foreseeable harm that would result from the release of withheld information (*i.e.* discouraging candor among Administrative Appeals Staff attorneys) based on her "personal knowledge, as well as on information acquired by [her] in the course of performing [her] official duties." J.A. at 262, 272, *Machado Amadis v. U.S.*

*Dep't of State*, No. 19-5088 (D.C. Cir); *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (finding declaration adequately established foreseeable harm). That is precisely what Ms. Munita relied upon here. *See* Munita Decl. ¶ 4 ("The Statements contained in this supplemental declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties."). And this Court previously held that a declarant's statement indicating as such is sufficient to satisfy the personal knowledge requirement.[1]

Plaintiffs also attempt to discredit Ms. Munita by arguing that "DHS is inconsistent when it describes assessments." Pls.' Mem. at 30-31. But Plaintiffs do not actually identify anything "inconsistent" about DHS's statements describing the assessments. That they are not carbon-copies of one another does not cast their validity into doubt. Indeed, it is to be expected that "statements in the agency's declaration will change depending on the focus of the litigation." *See* ECF No. 23 at 15 n.8. Here, the litigation is presently focused acutely on the issue of foreseeable harm. It should therefore be no surprise that the Agency has sought to submit a more fulsome explanation of that harm. The Munita declaration provides a more explicit explanation of why USCIS has determined that the assessment portions are properly withheld under the deliberative

---

[1] Plaintiffs also attack Ms. Munita's declaration because, in one paragraph, it erroneously suggests that the Assessments contain the deliberations of both the asylum officer and his or her supervisor, while the remainder of the declaration makes clear that the Assessments contains only the initial opinions and recommendations by the asylum officer. *See* Pl.'s Mem. at 29. But, "[a]gency affidavits are accorded a presumption of good faith," and it is well established that this presumption is not rebutted merely by reference to "trivial matters, such as typographical errors" in those documents. *SafeCard Servs., Inc.*, 926 F.2d at 1200, 1202. Here, the Munita declaration was prepared and submitted in good faith, sworn to and signed by the declarant, and, while paragraph 15 does regrettably contain a typographical error, it is not the kind of error that warrants wholesale disregard of her sworn testimony.

process privilege in light of the foreseeable harm analysis, but one that dovetails with the Agency's previous statements on the issue.  In short, Ms. Munita's declaration fully and adequately explains contents of the documents and the foreseeable harm associated with the release of the withheld information, which are based on personal knowledge and are tailored to the present dispute.  Though Plaintiffs attempt to showcase alleged "inconsistencies," all the statements to which they point, in fact, revolve around the same common themes.

At bottom, Plaintiffs have not rebutted the presumption of good faith to which Ms. Munita's declaration is entitled or provided any other cogent reason for disregarding her testimony.

**II.     The Agency Has Demonstrated Foreseeable Harm in this Case.**

On the issue of foreseeable harm, Plaintiffs argue that DHS's declarant has not adequately shown she considered the "age, content, and character" of each particular Assessment, ECF No. 31 at 13, and suggests that she offers only boilerplate explanation of the harm that would occur should the withheld information in this case be disclosed, *id.* at 19-20.  These arguments are unfounded.

The Munita Declaration has established the requisite foreseeable harm because it describes "how the specific information within the documents relates to a particular risk of harm." *Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, Civ. A. No. 18-0158 (CKK), 2021 WL 5987008, at *11 (D.D.C. Dec. 17, 2021).  Ms. Munita explains that Assessments are a "crucial part of the process by which USCIS adjudicates asylum applications," and in this case represented the asylum officers' initial recommendations to their supervisors "that the asylum applications be denied and that the applicants be referred to immigration court for removal proceedings."[2]  Munita Decl. ¶ 9.

---

[2]     Contrary to Plaintiffs' contention (at 25), Assessments are not like district court decisions because, unlike district court decisions, the Assessments are not final decisions at all.  Munita

"In each case, the withheld information contains the [asylum] officers' specific rationale for determining whether certain facts have been established or eligibility standards met," which "includes the reasons for crediting or discrediting the veracity of the applicants' statements and their assessments of whether the evidence submitted by the applicant is internally consistent and/or consistent with other evidence or information known to the asylum officer." Munita Decl. ¶ 13. And she explains that "[r]evealing the specific pre-decisional deliberations withheld from the Assessments in this case would interfere with USCIS's ability to make sound judgments on asylum applications" as it "would cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum eligibility criteria in an open and frank manner," which is "so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits[.]" *Id.* at ¶ 14.

She further explained that "revealing the internal deliberations and analysis" of the officers "would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner."³ *Id.* at ¶ 15. "Tailoring an application to

---

Decl. ¶¶ 9-10. Rather, they are merely the "initial analysis, opinions, deliberations and recommendations of asylum officers" which were then used by their supervisors to make "the ultimate decision on the asylum applications." *Id.* at ¶ 10

³  Plaintiffs argue that Ms. Munita does not explain "how information in one assessment leads to fraud in a future case," or "how disclosure of sources or authorities cited in assessments would result in harm." Pl.'s Mem. at 23, 26. But, in fact, she does. Ms Munita explains that "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." Munita Decl. ¶ 15. Indeed, Plaintiffs acknowledge that information disclosed here could very well be used by asylum applicants in future cases. *See* Pl.'s Mem. at 26-27 ("The wise asylum applicant would then cite [the sources] himself: if the asylum officer values *The New York Times*, or decisions from the Immigration Tribunal of Canada, then the applicant can cite them himself."). And while Plaintiffs imagine lawful usage of this information, there is nothing that would prevent a bad actor from using it for fraudulent purposes.

tip an asylum officer's decision" is a form of fraud, a problem which USCIS has fought to curb since the release of a report from the United States Government Accountability Office that noted the steep increase in asylum claims made and the agency's limited capacities to detect asylum fraud.  *See* U.S. Gen. Accounting Office, GAO-16-50, *ASYLUM: Additional Actions Needed to Assess and Address Fraud Risk* (2015), *available at* https://www.gao.gov/assets/680/673941.pdf. Thus, disclosure of this information "would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations."[4]  *Id.*

In view of the foregoing, DHS has adequately shown why the disclosure of the information contained in the four Assessments would result in foreseeable harm and has provided, not just boilerplate assertions, but a specific explanation that is consistent with the level of detail found in other cases for which foreseeable harm has been found.  *See Machado Amadis*, 971 F.3d at 371 ("[The agency's] affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and

---

[4]  Plaintiffs argue (at 23) that this further explanation of why USCIS's internal deliberative processes would be harmed is insufficient because they contend Ms. Munita "does not explain how officers would behave differently in the future." Not so. Indeed, as shown above, she explains that revealing information that can potentially be used by bad actors would cause officers to be "less forthcoming in their assessments and recommendations," thereby "stifl[ing] the free flow of information between asylum officers and their supervisors." Munita Decl. ¶ 15. Such explanation is entirely sufficient to describe how the officers would behave differently in the future and harm the agency's deliberative processes. *See Machado Amadis v. Department of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) ("[The agency's] affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"). Contrary to Plaintiff's contentions, this case is not analogous to *Pavement Coatings Technology Council v. U.S. Geological Survey*, 995 F.3d 1014 (D.C. Cir. 2021), because there the holding turned on the fact that the "agency's affidavits contain[ed] no explicit statement that disclosure will harm the agency's decision-making." *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1022 (D.C. Cir. 2021). The same certainly cannot be said of this case.

recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"); *Reporters Comm.*, 3 F.4th at 371 (reaffirming that redactions in *Machado Amadis* were justified because "the government directly articulated a link between the specified harm and the specific information contained in the material withheld" (cleaned up)); *ACLU v. CIA*, Civ. A. No. 18-2784 (CJN), 2022 WL 306360, at *9 (D.D.C. Feb. 2, 2022) (holding that agency established foreseeable harm where declarant stated that "disclosure would 'discourage' employees 'from providing particularly useful knowledge, perspectives, and opinions and prevent the Agency from benefitting from their skill in [] nomination process and future nominations'" and would "'inhibit open and candid discussions'"); *Judicial Watch, Inc. v. U.S. Dep't of State*, Civ. A. No. 20-0124 (CRC), 2021 WL 3633611, at *6 (D.D.C. Aug. 17, 2021) (holding disclosure of draft issue paper would cause foreseeable harm by leading officials to "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy"); *Leopold v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866, at *5 (D.D.C. July 23, 2021) (holding agency demonstrated foreseeable harm where agency explained that disclosure of documents "would severely harm the efficient day-to-day workings of the Department, as Department staff engaging in these discussions would no longer feel free to discuss their ideas and strategies among one another, or provide advice to those in decision-making positions").

Plaintiffs attempt to refute the notion that Asylum officers reasonably believe that their analyses will be maintained within USCIS and not publicly divulged. *See* Pls.' Mem. at 20-21. But Plaintiffs offer no compelling evidence supporting their contention. For example, Plaintiffs point to no evidence demonstrating that USCIS freely discloses the analyses to the public.

Indeed, quite the opposite. They have claimed that, while DHS released Assessments in full between 1998-2005, it has since stopped this practice. *See* Compl. ¶ 96-98, ECF No. 1; ECF No. 18-1 at 5. Thus, the training material *from 2004* cited by Plaintiffs, *see* Pls.' Mem. at 21 (citing ECF No. 18-5), is hardly useful in assessing the reasonable expectations of asylum officers *today*. And the fact that the Affirmative Asylum Procedures Manual states that an Assessment "may be disclosed" to an applicant in response to a FOIA request does not mean that *all of the information* in that Assessment is subject to disclosure. Indeed, even here, DHS disclosed the Assessments in this case to Plaintiffs and withheld only the deliberative portions of the documents. Plaintiffs also point out that Assessments may be included in administrative records relating to appeals from the Board of Immigration Appeals. *See* Pls.' Mem. at 20-21. But, again, the use of those records in a select number of immigration proceedings does not suggest that asylum officers expect their preliminary recommendations and opinions will be widely disseminated to the public. Indeed, even in those cases, the public's access to Assessments is limited. *See* Fed. R. Civ. P. 5.2(c)(2) (providing for limited public access to electronic files "in an action or proceeding relating to an order or removal, to relief from removal, or to immigration benefits or detention").

Lastly, Plaintiffs argue that there could be no harm in this case because USCIS voluntarily released one assessment in a different case. *See* Pl.'s Mem. at 20, 26. But as this Court has already observed "'an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts.'" ECF No. 22 at 16 (quoting *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 900 (D.C. Cir. 2015)). So, while "an agency may waive the deliberative process privilege as to a particular document by releasing it to the public, an agency does not waive the privilege as to an entire class of documents by voluntarily releasing one document of that type." *Bayala v. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 174 (D.D.C. 2017). Indeed, "that kind of forfeiture rule

would encourage agencies to voluntarily release fewer documents, a result in tension with FOIA's broad purposes." *Abtew*, 808 F.3d at 900. Thus, while USCIS may have determined, in its discretion, that voluntary disclosure of the assessment in that single case was warranted, that one decision does not forever establish that there is no foreseeable harm associated with the release of the Assessments at issue here.[5]

### III.     DHS Has Released All Reasonably Segregable Information.

Finally, Plaintiffs restate their prior argument that, in their view, DHS has not released all reasonably segregable information. *Compare* Pls.' Mem. at 34-35 *with* ECF No. 18-1 at 23-24. This Court should again reject this argument for the same reasons it did in its June 3, 2021, Memorandum Opinion. *See* ECF No. 23 at 18-19.

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable

---

[5]     Plaintiffs also recycle their argument from their prior briefs in which they claim that DHS's release of other "similar" asylum documents "undermines its claim that it will suffer harm if assessments are released in full." *Compare* Pls.' Mem. at 31-33 *with* ECF No. 18-1 at 20-22. But this Court has already rejected that argument because "they cite no authority to support their position and, as Plaintiffs acknowledge, these documents relate to different asylum procedures." ECF No. 23 at 17 (citing ECF No. 18-1 at 20-21). Plaintiffs offer no reason to revisit that conclusion here.

material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, as previously demonstrated by the declaration of Jill Eggleston and DHS's *Vaughn* index, ECF Nos. 14-1 & 14-2, DHS examined and processed all of the found records responsive to Plaintiffs' requests. Where exempt information was reasonably segregable from nonexempt information, DHS redacted only the exempt information and produced the rest. Eggleston Decl. ¶¶ 26, 27, 38, 40. Further, the Agency was careful to withhold only that information which would cause foreseeable harm. The "FOIA Office considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations." Munita Decl. ¶ 17. Based on this review of processed records, the agency determined that no further segregation of meaningful information in the withheld documents . . . would be possible without disclosing information that warrants protection under the law." *Id.* Indeed, "[t]he only information withheld from the Plaintiffs is information that is entitled to protection from disclosure that could cause a foreseeable harm to agency operations if released." *Id.* Therefore, all reasonably segregable information has been released by DHS.

For their part, Plaintiffs have offered no "quantum of evidence" demonstrating that DHS failed to disclose reasonably segregable material or any other reason to question the Court's prior finding on the issue of segregability. Thus, Plaintiffs' renewed challenge on this front should be denied.

*    *    *

## CONCLUSION

For all of the reasons stated herein and those in the Defendant's opening brief, Defendant respectfully requests that this Court find that it has adequately demonstrated foreseeable harm and that it has released all nonexempt portions of the records.

Dated: February 14, 2022
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


By:     */s/ Derek S. Hammond*
    DEREK S. HAMMOND
    D.C. Bar # 1017784
    Assistant United States Attorney
    555 Fourth Street, NW
    Washington, DC 20530
    202-252-2511
    Derek.Hammond@usdoj.gov

*Attorneys for the United States of America*