UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMARA EMUWA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Case No. 1:20-cv-01756 (TNM) |

## MEMORANDUM OPINION

Plaintiffs—four individuals and one organization—seek asylum documents called Assessments to Refer from the Department of Homeland Security (DHS). Those documents contain an asylum officer's impressions after an asylum interview and his recommendation on whether asylum should be granted. DHS produced the factual portions but withheld the analytical portions under the deliberative process privilege. In a prior opinion, the Court confirmed the applicability of that privilege to the withheld information and granted summary judgment to the agency. *See Emuwa v. DHS*, No. 20-cv-1756 (TNM), 2021 WL 2255305, at *9 (D.D.C. June 3, 2021). The Court also explained that DHS had shown "why disclosure of the redacted information in the Assessments would cause harm." *Id.* at *8.

Plaintiffs appealed. At the parties' request, the D.C. Circuit remanded the case for further consideration in light of its opinion in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 450 (D.C. Cir. 2021). After supplemental briefing from the parties, the Court finds that

*Reporters Committee* does not mandate a different result. The Court thus will again grant summary judgment to DHS.[1] *See* Order, ECF No. 24.

The Court incorporates by reference the factual recitation and analysis in its prior opinion. This remand is limited to foreseeable harm. The Court accordingly will not reconsider its previous holding that the agency properly invoked the deliberative process privilege.

Some background on foreseeable harm is in order. Under a 2016 amendment to FOIA, an agency may not withhold otherwise exempt information unless "the agency reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

Two recent cases from the D.C. Circuit and one from this Court elucidate the standard for the foreseeable harm requirement. In *Machado Amadis v. Department of State*, 971 F.3d 364 (D.C. Cir. 2020), the agency withheld under the deliberative process privilege some recommendations, discussion, and search notes about FOIA processing. After finding the agency properly invoked the privilege, *see id.* at 370, the court also held that it had met the foreseeable harm requirement, *see id.* at 371. The agency's declaration said that disclosure would discourage candid discussions among line attorneys, thereby hindering "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* (quoting agency declaration). The Circuit denied that the agency had provided only "generalized assertions that 'could' chill deliberations." *Id.* (quoting plaintiff's brief). The agency instead had "specifically focused on the information at issue" in the forms and had

---

[1] The D.C. Circuit did not explicitly vacate the Court's Order granting summary judgment, arguably leaving that judgment intact. *See* Per Curiam Order, No. 21-5131, *Emuwa v. DHS* (D.C. Cir., Nov. 12, 2021). But the Court treats the Circuit's mandate as an implied vacatur because if *Reporters Committee* did change the outcome, the Court would issue a new Order. And the Court could give that new Order only if the Circuit meant to vacate the previous one.

"concluded that disclosure of that information 'would' chill future discussions." *Id.* (quoting agency declaration). Thus, the agency permissibly withheld the privileged information.

The D.C. Circuit returned to the foreseeable harm requirement in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021). There, the plaintiff submitted multiple FOIA requests for records about FBI agents impersonating reporters. *See id.* at 359. The FBI withheld a bevy of information under the deliberative process privilege, including emails between Director Comey and agency officials about a public editorial written by Comey about the incident. *See id.* at 360–61. The Committee challenged those withholdings.

The court held that the agency had not met the foreseeable harm requirement. The agency's declaration had said that disclosure "would have an inhibiting effect upon agency decisionmaking" because it "would chill full and frank discussions" inside the agency. *Id.* at 370. Decisionmakers would be "less candid and more circumspect in expressing their thoughts." *Id.* The court rejected this explanation as an insufficient "perfunctory statement." *Id.* at 372. The agency had merely "mouth[ed] the generic rationale for the deliberative process privilege itself" rather than provide a "focused and concrete" explanation for why disclosure would, "in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. The agency's failure to show a foreseeable harm required disclosure of draft reports, even though the deliberative process privilege covered those reports. *See id.* at 371.

After *Machado Amadis* and *Reporters Committee*, agencies must make two showings. *First*, the agency must, as always, show that a FOIA exemption applies to withheld information. *See Jud. Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 193 (D.D.C. 2011). *Second*, the agency must articulate, in a "focused and concrete" way, the harm that would result from

3

disclosure, including the basis and likelihood of that harm. *Reporters Comm.*, 3 F.4th at 370. Failure to make both showings warrants disclosure. *See Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 105–06 (D.D.C. 2019) ("In sum, FOIA now requires that an agency release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.") (cleaned up).

This Court applied those principles in *Reporters Committee for Freedom of the Press v. U.S. Customs and Border Protection*, — F. Supp. 3d —, No. 18-cv-155 (TNM), 2021 WL 4843970 (D.D.C. Oct. 18, 2021). There, CBP withheld information related to a summons issued to the owner of a Twitter account critical of the agency. *See id.* at *1. On foreseeable harm, the agency asserted that disclosure "would hamper [its] day-to-day operations because employees would not feel comfortable" divulging their views. *Id.* at *7. For other information, the agency said that officials might "not share their views," *id.* at *8, or "voice their ideas or concerns freely," *id.* at *10, if the documents were disclosed. The agency also said that employees "must feel candid" when seeking input from colleagues, *id.* at *9, and that disclosure "would have a chilling effect on communication" between those employees," *id.* at *16.

The Court rejected these assertions as insufficient statements of foreseeable harm. The agency was concerned "only with a lack of candor" and the effect on agency decisions. *Id.* at *9. Nowhere did it link those risks of disclosure to the specific information being withheld. And general statements about candor, without more, merely restated "the generic rationales for the privilege itself." *Id.* at *16 (cleaned up). Because of the agency's "lackluster" showing of foreseeable harm, the Court ordered disclosure of all information withheld under the deliberative process privilege. *Id.* at *17.

\* \* \*

Here, DHS has submitted a supplemental declaration explaining the foreseeable harm from disclosure of the Assessments. *See* Supp. Decl. of Cynthia Munita, ECF No. 30-1 (Munita Decl.). To properly adjudicate asylum applications, asylum officers must feel free "to provide candid assessments of the evidence and eligibility criteria to their supervising officials." *Id.* ¶ 11. Asylum officers therefore expect that "only [ ] those within USCIS" will view the analysis portions of the Assessments. *Id.*

Disclosing that analysis would impact USCIS's "ability to make sound judgments on asylum applications." *Id.* ¶ 14. "[W]ith the knowledge that their views and characterizations would be made public," asylum officers would "temper their discussions." *Id.* That restraint "would seriously impair USCIS's mission in adjudicating those petitions." *Id.* Asylum officers should focus on "the substance of the information they are providing," not whether their impressions "may at some point be made publicly available." *Id.*

More, bad actors could leverage the internal deliberations of asylum officers "to tailor asylum applications and testimony in a favorable, but fraudulent, manner." *Id.* ¶ 15. For example, how asylum officers evaluate an applicant's credibility or determine certain pertinent facts would allow bad actors to "better fabricate evidence or testimony." *Id.* And since asylum officers would know that their own impressions could be disclosed and used that way, they would be "less forthcoming in their assessments and recommendations." *Id.* That would "stifle the free flow of information between asylum officers." *Id.*

Given this detailed explanation, the Court easily rejects Plaintiffs' argument that the declaration is "boilerplate." *See* Pls.' Supp. Br. at 19, ECF No. 31 (Pls.' Br.).[2] Unlike the

---

[2] All page citations refer to the pagination generated by the Court's CM/ECF filing system.

unmoored agency assertions in this Court's *Reporters Committee* case, DHS "specifically focused on the information at issue" in the Assessments and explained how disclosure of that information "would chill future internal discussions." *Machado Amadis*, 971 F.3d at 371 (cleaned up). Specifically, asylum officers would "temper their discussions" of a particular applicant and would focus less on "the substance of the information" in the asylum file. Munita Decl. ¶ 14. And the agency discussed how disclosure would impede agency deliberations in a "specific context," *Reps. Comm.*, 3 F.4th at 370—namely, "the full and proper analysis and fair consideration of [ ] asylum requests on the merits." Munita Decl. ¶ 14. That specificity mirrors the adequate declaration in *Machado Amadis*, where the agency discussed how disclosure would hinder "proper adjudication of administrative appeals." 971 F.3d at 371 (cleaned up).

These robust explanations from DHS carry the agency's burden under the foreseeable harm requirement.

Plaintiffs respond that DHS has released Assessments in recent (and not so recent) cases. *See* Pls.' Br. at 20, 26, 33. The Court rejected this same argument in its prior opinion. *See Emuwa*, 2021 WL 2255305, at *9. An agency does not forfeit or waive a FOIA exemption "as to an entire class of documents by voluntarily releasing one document of that type." *Bayala v. DHS*, 264 F. Supp. 3d 165, 174 (D.D.C. 2017); *see Abtew v. DHS*, 808 F.3d 895, 900 (D.C. Cir. 2015) ("[A]n agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts."). So too an agency does not forfeit its ability to assert foreseeable harm as to documents in that same class. *See Emuwa*, 2021 WL 2255305, at *9.

Likewise, DHS's release of "other similar documents," does not undermine its assertion of harm as to Assessments. Pls.' Br. at 31. As the Court noted, those documents "relate to

6

different asylum procedures" and thus do not affect whether disclosing Assessments will lead to foreseeable harm. *Emuwa*, 2021 WL 2255305, at *9.

Plaintiffs also dismiss DHS's emphasis on potential fraud as an inappropriate assertion of foreseeable harm. They cite the statutory text of the requirement itself, which requires DHS to foresee that disclosure "would harm an interest protected by" a FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). According to Plaintiffs, the harm envisioned in Exemption 5—under which DHS asserts the deliberative process privilege—is a lack of candor within agencies, not fraud by bad actors. *See* Pls.' Br. at 22–23.

The Court disagrees. For one thing, DHS's discussion of the need for candid evaluations, *see* Munita Decl. ¶ 14, is enough to carry the agency's burden without any reference to fraud. More, DHS has expressly tied its fraud concerns to candor inside the agency. As DHS explains, asylum officers will "be less forthcoming in their assessments and recommendations" if they know that bad actors could use those recommendations. Munita Decl. ¶ 15. That type of harm— the "chilling of candid advice"—is "exactly what the privilege seeks to prevent" under Exemption 5. *Machado Amadis*, 971 F.3d at 371. True, DHS mentions fraud, but only because the possibility of fraud would dissuade full and fair deliberation. That is a proper assertion of foreseeable harm under Exemption 5. *See Cause of Action Inst. v. Export-Import Bank*, No. 19-cv-1915 (JEB), 2022 WL 252028, at *9 (D.D.C. Jan. 27, 2022) (upholding assertion of foreseeable harm under Exemption 5 when disclosure would have informed bad actors of agency vulnerabilities, thereby chilling internal agency deliberations).

Plaintiffs' other arguments are unavailing. *First*, Plaintiffs argue that the declarant, Cynthia Munita, lacks personal knowledge and "relies too much on un-sourced hearsay" in her declaration. Pls.' Br. at 16. Not so. In the first place, Munita worked as an immigration services

officer for many years before becoming a FOIA officer.  *See* Munita Decl. ¶ 1.  She has at least some knowledge about how immigration officials conduct their business.  More, "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties."  *Hainey v. DOI*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013) (cleaned up).  That includes information "relayed to [the declarant] by her subordinates."  *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019).  Munita attests that her declaration includes information provided "by other USCIS employees."  Munita Decl. ¶ 4.  That statement is enough.

The Court also affords agency declarations a presumption of good faith rebuttable only by "contradictory evidence in the record or by evidence of the agency's bad faith."  *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017).  Plaintiffs' musings about who told what to Munita, *see* Pls.' Br. at 19, are "speculative claims" incapable of rebutting that presumption.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The same presumption likewise defeats Plaintiffs' argument that a typographical error in the declaration shows Munita's lack of knowledge.  *See* Pls.' Br. at 29.  She suggests in one fragment of one sentence that multiple people write the Assessments.  *See* Munita Decl. ¶ 15 ("Moreover, revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers . . . .").  That suggestion is wrong—only asylum officers write the Assessments.  *See* Def.'s Reply, ECF No. 32 at 6, n.1.  The Court agrees with the agency, however, that this mistake is a "trivial matter" insufficient to rebut the good-faith presumption afforded the declaration, which everywhere else affirms that only asylum officers contribute to Assessments.  *SafeCard*, 926 F.2d at 1202.

*Second*, Plaintiffs argue that Munita nowhere explains "how officers would behave differently in the future" or "how information in one assessment leads to fraud in a future case." Pls.' Br. at 23. Plaintiffs are wrong on both counts. Munita describes how officers would be less forthcoming were their assessments disclosed publicly, thereby harming the agency's mission. *See* Munita Decl. ¶¶ 14–15. That is a sufficient explanation of future officer behavior. *See Machado Amadis*, 971 F.3d at 371 (explaining that disclosure would discourage government actors from "candidly discussing their ideas . . . thus impairing the forthright internal discussions necessary for efficient and proper" agency adjudications (cleaned up)). And Munita clearly explains how disclosure could lead to fraud. Bad actors would "tailor" their applications—such as by "fabricat[ing] evidence or testimony"—to receive asylum "under false pretenses." Munita Decl. ¶ 15.

*Third*, Plaintiffs ding the declaration for not adequately explaining "how disclosure of sources or authorities cited in [A]ssessments would result in harm." Pls.' Br. at 26. The Court easily rejects this argument. DHS has adequately explained what harm would result from disclosure of an asylum officer's "analyses, impressions, and recommendations" of a particular applicant. Munita Decl. ¶ 14. Cited sources are part of that analysis, so DHS's adequate assertion of harm for the documents also applies to the sources cited within.

*Fourth*, Plaintiffs make multiple public policy arguments for why DHS should disclose the Assessments. *See, e.g.*, Pls.' Br. at 27 ("What if a source is unreliable?"); 28 ("Are asylum officers following their instructions?"). Plaintiffs even compare Assessments to district court decisions, implying that disclosure will help transparency in government. *See id.* at 25. These arguments are far afield of foreseeable harm, the only topic for remand. They are therefore irrelevant.

*Finally*, Plaintiffs assert that DHS has not released all reasonably segregable information. *See* Pls.' Br. at 34–35.  Like Plaintiffs' public policy arguments, segregability is outside the scope of this remand.  The Court stands by its segregability analysis in the previous opinion. *See Emuwa*, 2021 WL 2255305, at *10–*11.

*   *   *

In sum, DHS has adequately shown that foreseeable harm would result from disclosure of the Assessments.  *Reporters Committee* does not counsel otherwise.  For the reasons discussed here and in the prior opinion, the Court will grant the agency's motion for summary judgment and will deny Plaintiffs' cross motion.  A separate Order will issue.

Dated: May 9, 2022                                          TREVOR N. McFADDEN, U.S.D.J.